IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

AUG 2 2 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUAN LARIN-ULLOA | * | |
| Petitioner, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. B-02-107 |
| | * | |
| DEPARTMENT OF JUSTICE | * | |
| IMMIGRATION AND | * | |
| NATURALIZATION SERVICE, | * | |
| Respondent. | * | |

## GOVERNMENT'S OPPOSED MOTION TO DISMISS FOR FAILURE TO EXHAUST REMEDIES

Respondent, the Immigration and Naturalization Service ("INS") opposes the petition for habeas corpus on the grounds that the petitioner has failed to exhaust his remedies with respect to his removal. Petitioner opposes this motion.

Petitioner is held in mandatory, pre-order detention under Immigration and Nationality Act ("INA") Section 236(c); 8 U.S.C. § 1226(c). He is asking this Court for a declaratory judgement that Section 236(c) is unconstitutional and injunctive relief, restraining the government from detaining him further. Beyond his articulation of these requests, Petitioner, in his pleadings in this case has made no legal argument that Section 236(c) is unconstitutional. Furthermore, while he alleges that he is a member of the putative class in <u>Reyna-Montoya et. al. v. Trominski</u>, CA B-02-026, he is not a named plaintiff in that case, nor has the class been certified. Accordingly, the government takes the position that the sole issue before the Court is whether Petitioner is removable for having been convicted of an aggravated felony. Nonetheless, the government will present its argument that Section 236(c) is constitutional.

### PERTINENT FACTS

Mr. Larin-Ulloa, a citizen of El Salvador, entered the United States on May 11, 1981 without inspection. A.R. 175[1]. He adjusted status to that of a lawful permanent resident on November 28, 1984. <u>Id</u>.

---

[1] The designation "A.R." refers to that page in the administrative record on file with the Court.

On March 28, 2000 Petitioner was convicted in the District Court of Sedgewick County, Kansas, for the offense of aggravated battery with the use of a firearm in violation of K.S.A. 21-3414. He was sentenced to two years probation and 12 months of confinement. A.R. 54, 57.

On January 24, 2002, a Notice to Appear was issued by the INS, charging Petitioner with removal under INA Section 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony. A.R. 175.

On February 27, 2002, March 14, 2002, April 1, 2002, and May 22, 2002, the Petitioner appeared before the Immigration Judge, with counsel. On March 14, 2002, the Petitioner admitted to the allegations as contained in the Notice to Appear. The charge, however, was denied by the Petitioner. After hearing, the Immigration Judge found that the charge had been sustained by the INS upon presentation of the conviction documents.

On the same date, the Immigration Judge found that he had no jurisdiction to set a bond because the Petitioner had been convicted of an aggravated felony. The Petitioner appealed the Immigration Judge's Decision to deny bond. The Board of Immigration Appeals ("Board" or ("BIA") affirmed the Immigration Judge's Decision to deny bond on June 25, 2002.

On May 22, 2000, the Immigration Judge denied the Petitioner's applications for relief in the form of Withholding of Removal and Relief under the Convention Against Torture Claims. The Petitioner was represented and allowed to present his claim. Petitioner's claim was denied, and Petitioner was ordered removed to El Salvador. The Petitioner's counsel reserved appeal and an appeal was filed to the Board on June 10, 2002. In his appeal, Petitioner argues that he is not convicted of an aggravated felony. See Exhibit C to Petitioner's "Points and Authorities In

Support of Petition For Habeas Corpus" filed by the Petitioner. His appeal before the BIA is still pending.

## ARGUMENT

1. <u>Petitioner has Failed to Exhaust his Remedies.</u>

As is abundantly clear in the record, the merits of petitioner's removal case are before the BIA. Reading Exhibit C to Petitioner's Points and Authorities, Petitioner is making the exact same argument with respect to his removal that he is making in the present habeas corpus petition. Accordingly, because habeas relief is relief of the last resort - after all other avenues are exhausted - this Court may not hear the merits of petitioner's case until the BIA rules on Petitioner's argument. Thus, the respondent moves to dismiss the habeas petition for lack of jurisdiction. <u>Garcia v. Reno</u> 234 F.3d 257 (5th Cir. 2000)(Court did not have habeas jurisdiction over deportation order where petitioner failed to exhaust remedies).

Petitioner opposes this motion.

2. <u>Even If This Court Had Jurisdiction to Hear the Merits of Petitioner's Case, His Argument Lacks Merit Because His Conviction For Aggravated Battery Is A Crime Of Violence and He Remains Removable For Having Been Convicted of an Aggravated Felony</u>

The relevant provisions of the Kansas aggravated battery statute are as follows:

<u>K.S.A. 21-3414 - Aggravated Battery</u>
(a) Aggravated battery is:

(1) (A) Intentionally causing <u>great bodily harm</u> to another person or disfigurement of another person; or

(B) intentionally causing <u>bodily harm</u> to another person <u>with a deadly weapon,</u> or in any manner whereby <u>great bodily harm</u>, disfigurement or death <u>can be inflicted; or</u>

(C) intentionally causing <u>physical contact</u> with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner

-3-

whereby great bodily harm, disfigurement or death can be inflicted; . .

. . .

(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. . .

K.S.A. 21-3414. The conviction documents show that Petitioner was convicted under K.S.A. 21-3414(a)(1)(A), with a severity level of 7[2]. A.R. 54, 57, 58, 60. The executed plea memorandum shows that the Petitioner pled guilty to K.S.A. 21-3414(a)(1)(B), also with a security level of 7 and also a person felony under Kansas law. A.R. 60. There is no reference in the record whatsoever that the Petitioner was charged with, pled to, or convicted of K.S.A. 21-3414(a)(1)(C).

Petitioner's first argument, as outlined in his "First Amended Petition for Habeas Corpus," is that, although he is guilty of "aggravated battery," in that he pled guilty to a statute titled "aggravated battery" appearing at K.S.A. 21-3414, he is not guilty of a crime of violence, because petitioner actually pled to and was convicted of a violation of K.S.A. 21-3414(a)(1)(C). This provision, as the Petitioner's argument goes, is not a crime of violence because it only requires intentional physical contact, which is not the equivalent of actual force.

Petitioner's first argument fails. Petitioner was not convicted under subsection (C). There is no evidence whatsoever that Petitioner was convicted under subsection (C). Every reference in

---

[2] Admittedly, there is an ambiguity in the record, because the record reflects that Petitioner is convicted of subsection (A) which is clearly a severity level 4 offense, but the record also indicates that Petitioner's conviction is a severity level 7 offense. This ambiguity is irrelevant. Petitioner is convicted of violating either subsection (A) or (B) with a firearm, and as is shown below, either is an aggravated felony as a crime of violence involving the use of force.

the administrative record to the statute to which the Petitioner pled guilty refers to subsection (A), with the one exception of the plea agreement, which refers to subsection (B). A.R. 54, 57, 58, 60. Nowhere, except in his pleadings filed with the Court, is there the notion that Petitioner pled guilty to and was convicted of a violation of subsection (C). The record reflects that Petitioner was convicted under subsection (A), which requires intentional infliction of great bodily harm. The record also reflects that a firearm was used in the commission of his offense. Petitioner cannot collaterally attack his conviction now.

Petitioner's second argument, outlined in his "Supplemental Points And Authorities" is that he is not convicted of subsection (A), but rather subsection (B). Even accepting the prospect that Petitioner was convicted under a different statute - K.S.A. 21-3414(a)(1)(B) - the statute clearly shows that a guilty plea under 21-3414(a)(1)(B) is as much a "crime of violence" which is an "aggravated felony" as charged by the INS. Subsection (B) requires the intentional infliction of <u>bodily harm</u>, which, though not "great bodily harm," is bodily harm nonetheless and certainly well beyond the mere "physical contact" which Petitioner alleges he is convicted of.

Petitioner attempts to liken his situation to felony drunk driving, citing the Fifth Circuit's opinion in <u>United States v. Chapa-Garza</u>, 243 F.3d. 921 (5th Cir. 2001) Petitioner misreads <u>Chapa-Garza</u>. In <u>Chapa-Garza</u>, the Fifth Circuit concluded that driving while intoxicated (DWI) is not a crime of violence because the commission of the crime (driving a motor vehicle while intoxicated) does not necessarily involve the use of force against a person in the commission of the crime.

> Accordingly, we. . . hold, consonant with the ordinary meaning of the word "use," that a crime of violence . . . requires recklessness as regards the substantial likelihood that the offender will intentionally employ <u>force</u> against the person or property of another <u>in order to effectuate the commission of the offense.</u>

243 F. 3d at 927 (emphasis added). Chapa Garza did not draw its distinction upon the lack of specific intent to cause harm. Petitioner may argue that, because driving drunk does not *necessarily* entail harming someone else, therefore causing bodily harm (as referred to in K.S.A. 21-3414(a)(1)(B) does not *necessarily* entail the use of force. That is true, if Petitioner poisoned his neighbor or donated HIV-tainted blood. Unfortunately for Petitioner, the reality is that he is convicted of intentionally causing bodily harm and using a firearm in its commission. To argue that this is not a crime of violence because it involves no specific intent is a misreading of Chapa-Garza, the statute, and the record as a whole.

Petitioner also argues in his Supplemental Points and Authorities that the statute of which he is convicted - K.S.A. 21-3414(a)(1)(B) - is divisible, in that it punishes two offenses in the alternative. In this regard, Petitioner notes that the statute to which he pled guilty punishes: 1); those offenses intentionally causing bodily harm, committed with a deadly weapon and, 2); those offenses committed in a manner whereby great bodily harm, disfigurement or death can be inflicted. Petitioner proceeds to argue that "from the language of the interlineated complaint, 'in a manner where by' it is clear that the latter option is involved.'" Petitioner's Supplemental Points And Authorities at 1.

There are several flaws with this argument. To begin with, the *complaint* does not determine which alternative form of the offense the petitioner is convicted of; it is the judgment itself. Looking at the actual records of conviction, it is abundantly obvious that the Petitioner was convicted of the former offense - the use of a deadly weapon - because the record indicates that a firearm was used in the commission of the offense. A.R. 54, 57. To that extent, Petitioner's argument about causing harm without force is erroneous.

Furthermore, if in fact the aggravated battery statute <u>is</u> divisible, the inquiry does not stop upon finding it divisible. Rather, the Court must look beyond the statute itself to determine whether there is evidence in the record to establish that the punished conduct is in fact an aggravated felony. In <u>Taylor v. United States</u>, 495 U.S. 575 (1990), the U.S. Supreme Court articulated the governing analytical model to be used by a court construing a divisible statute. The <u>Taylor</u> analysis is a two-step inquiry. First, the Court must review the statute at issue. If the statute facially punishes conduct that is not an aggravated felony, as well as that which is an aggravated felony, then the next step is to determine whether other judicially noticeable facts exist in the record would nonetheless qualify the punished conduct as an aggravated felony. <u>Taylor, supra</u>; <u>accord</u>, <u>Randhawa v. Ashcroft</u> ___ F.3d. ___, 2002 WL 1837942 (9th Cir. 2002).

Here again the Petitioner's argument fails. A perusal of the record clearly indicates that the Petitioner committed his crime with a firearm. And unlike poisoning a beverage, practicing dentistry with dirty implements, refusing access to lifesaving medicine or driving a vehicle under the influence of alcohol, committing an aggravated battery by intentionally causing bodily harm with a firearm clearly creates a substantial risk that force may be used.

Against this backdrop, it is indeed puzzling how a statute entitled "aggravated battery" to which the Petitioner pled guilty, which involves "intentionally causing <u>bodily harm</u> to another person <u>with a deadly weapon</u>, or in any manner whereby <u>great bodily harm</u>, disfigurement or death <u>can be inflicted</u>" could <u>not</u> be a crime of violence. Petitioner speciously claims that intentionally causing bodily harm (in this case, the record shows the Petitioner used a firearm, A.R. 54, 57, 58), for which the Petitioner was sentenced to pay $3000 restitution to cover

medical expenses on behalf of his victim, A.R. 55, is <u>not</u> a crime of violence. The record simply does not support this novel argument.

Because Petitioner is seeking habeas review of an issue for which he admittedly has not yet exhausted remedies, and because Petitioner's underlying argument with respect to his conviction of an aggravated felony has no support in the law or factual record, Petitioner's contentions are wholly frivolous and should be rejected[3].

3. <u>This Court Has No Jurisdiction to Set Bond.</u>

The Petitioner was convicted of an aggravated felony for immigration purposes on March 28, 2002. The Immigration Judge considered the entire conviction record when finding Petitioner removable as an aggravated felony. Petitioner did not plead guilty to K.S.A. 21-3414(a)(1)(C) as alleged. The conviction document is clear as to what offense the Petitioner was charged with and to what offense he plead, both with the same severity level and both aggravated felonies. Additionally, mandatory detention of aliens who have been convicted of an aggravated felony is required by 8 U.S.C. §1226(c)(1) and there has been no precedent decision within the Fifth Circuit finding such detention unconstitutional.

4. <u>Section 236(c) is Constitutional.</u>

To the extent that Petitioner has properly raised and argued the contention that Section 236(c) is unconstitutional, the government contends that the provision does not run afoul of the Constitution.

---

[3] Furthermore, Petitioner may not argue that the record incorrectly reflects his plea. Such an argument is a collateral attack on his state criminal conviction and may not be heard in a Federal civil court.

Congress enacted Section 236(c) of the Immigration and Nationality Act as a part of legislative reforms under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009 (1996) ("IIRIRA"). The legislative history shows that there were several legitimate purposes underlying Section 236(c): (1) to prevent criminal aliens from absconding so that they can be removed as required by law; (2) to protect the public from the presence of potentially dangerous criminal aliens; (3) to correct the failure of the prior bond procedures, under which more than 20 per cent of criminal aliens absconded prior to their proceedings; and (4) to repair the serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and remove them promptly.[4] The Senate Governmental Affairs Committee, for example, found that criminal aliens "often fail[ed] to appear for their actual deportation" and that in New York during fiscal year 1993, 88% of all aliens who were ordered to surrender for deportation absconded. S. Rep. No. 48, 104th Cong., 1st Sess. 24 (1995); see also id. at 23 (as of 1992, nearly 11,000 aliens convicted of aggravated felonies had failed to appear for their deportation hearings).

Controlling Supreme Court precedent confirms that a reviewing court's inquiry into the constitutionality of an immigration statute like Section 236(c) is limited to determining whether the statute rationally relates to legitimate legislative ends. Carlson v. Landon, 342 U.S. 524, 532-33 (1952); see also Mathews v. Diaz, 426 U.S. 67, 82-83 (1976). Insuring that removable criminal aliens are available during their removal proceedings to facilitate a final administrative

---

[4] See S. Rep. No. 48, 104th Cong., 1st Sess. (1995) (1995 WL 170285 (Leg.Hist.) at 1-6, 9, 18-23).

decision and expeditious removal, and preventing them from absconding or committing further crimes in the interim, are not only legitimate, but substantial and compelling, governmental goals.

Three years after it was passed, the constitutionality of Section 236(c) was sustained by the Seventh Circuit in Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999). In Parra, the Court held that mandatory pre-order detention does not impermissibly infringe on an alien's due process rights under the Fifth Amendment. 172 F.3d at 958. The Seventh Circuit's analysis weighed several critical factors: (1) the Government's compelling interests in lessening the risk of flight by an alien in removal proceedings whose removal was almost certain because of his serious criminal conviction; (2) the alien's diminished legal status as a person who is removable because of his criminal conviction; and (3) the alien's significantly curtailed opportunity to avoid removal because of IIRIRA's legislative reforms, which made discretionary relief from removal largely unavailable for criminal aliens. Id.

The Seventh Circuit ultimately concluded that the balance of these factors favored the Government, and that considering Congress's and the Executive Branch's plenary authority in the immigration arena, longstanding judicial precedent upholding the Attorney General's authority to detain aliens pending deportation proceedings, and Congress's express intent to expedite the removal of criminal aliens under the 1996 legislative reforms, Section 236(c) is constitutional. Id.

The Seventh Circuit also analyzed the constitutionality of Section 236(c) under the Mathews v. Eldridge due process standard. 424 U.S. 319 (1976). "The due process calculus . . . requires the court to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, <u>with a thumb on the scale in favor of the statute's constitutionality</u>." Parra at 958

(emphasis added). The Seventh Circuit resolved this issue in the Government's favor. The Court described the private interest not as liberty in the abstract, but as liberty to remain "in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in his native land . . . ." Accordingly, the Court concluded that Section 236(c) is constitutional.

To date, three Circuit Courts of Appeals have held Section 236(c) unconstitutional, and in two of these cases – dealing with lawful permanent residents – the Supreme Court has granted certiorari. In Kim v. Ziglar, 276 F.3d 523 (9th Cir. 2002), the petition for certiorari filed April 9, 2002 was granted by the Supreme Court. Demore v. Kim, — S.Ct. —, 2002 WL 704365, 70 USLW 704365 (U.S. Jun. 28, 2002) (No. 01-1491). Hoang v. Greene, 282 F.3d 1247 (10th Cir. 2002), petition for cert. filed, 70 USLW 3698 (U.S. May 03, 2002) (NO. 01-1616), was considered in conference by the Supreme Court on June 27, 2002, with Demore v. Kim, and further action on the petition for a writ of certiorari was withheld pending disposition of Demore v. Kim. Radoncic v. Zemski, 2001 WL 1681643 (3d Cir. Jan. 4, 2001) petition for cert. filed, 70 USLW 3642 (U.S. Apr. 4, 2002) (No. 01-1459) was considered in conference by the Supreme Court on June 27, 2002, with Demore v. Kim, and further action on the petition for a writ of certiorari was withheld pending disposition of Demore v. Kim.

The issue of Section 236(c)'s constitutionality is currently pending in the Fifth Circuit. Serrano v. Estrada, 2002 WL 1067452 (N.D. Tex. May 13, 2002) is on appeal to the Fifth Circuit, USCA Case No. 02-10737. The government's brief is currently due on September 9. The Serrano Court declined to follow a decision in the Northern District of Texas which found Section 236(c) constitutional. Okeke v. Pasquarell, 80 F.Supp. 2d 635 (W.D. Tex. 2000).

## CONCLUSION

Petitioner has failed to exhaust his remedies, and the Court, therefore, has no jurisdiction over this Habeas Petition. Thus, respondent moves the Court to dismiss the habeas petition.

                Respectfully submitted,

                ROBERT D. McCALLUM, Jr.
                Assistant Attorney General
                Civil Division

                RICHARD M. EVANS
                Assistant Director

                *for* PAUL FIORINO, Attorney
                Office of Immigration Litigation
                Civil Division
                U.S. Department of Justice
                P.O. Box 878
                Ben Franklin Station
                Washington, D.C. 20044
                (202) 353-9986

Dated: August 22, 2002

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing Motion To Dismiss was mailed to Lisa Brodyaga, Attorney at Law, Landrum Park, San Benito, TX 78586 via Certified Mail, Return-Receipt Requested on August 22, 2002.

                                                  *[signature]*
                                                  fo/ PAUL FIORINO
                                                      Attorney