United States District Court
Southern District of Texas
FILED

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SEP 0 3 2002

Michael N. Milby
Clerk of Court

JUAN LARIN-ULLOA,        )
                         )
v.                       )       C.A. B-02-107
                         )
JOHN ASHCROFT et al.     )
_____)

**PETITIONER'S OPPOSITION TO, AND (OPPOSED) MOTION TO STRIKE, AS FRIVOLOUS, RESPONDENTS' MOTION TO DISMISS "FOR FAILURE TO EXHAUST REMEDIES" AND TO DEEM RESPONDENTS TO BE IN DEFAULT,
OR, IN THE ALTERNATIVE, TO CONSTRUE SAID MOTION AS RESPONDENTS' RETURN HEREIN, AND TO GRANT THE INSTANT PETITION,
OR, IN THE FURTHER ALTERNATIVE, RENEWED REQUEST FOR THE ISSUANCE OF ORDER TO SHOW CAUSE WHY THE WRIT SHOULD NOT BE GRANTED**

Petitioner, through counsel, opposes the "Government's Opposed Motion To Dismiss For Failure To Exhaust Remedies," herein cited as (INS2:__), and referenced as the "INS' Motion to Dismiss." [1]

Simultaneously, Petitioner files the instant opposed motion to strike, as frivolous, INS' Motion to Dismiss, and to deem Respondents to be in default. In the alternative, Petitioner urges that INS' Motion to Dismiss be construed as constituting their Return herein. In either event, Petitioner would request that the instant petition be granted, and this Court either set a reasonable bond, or remand with instructions that a bond hearing be promptly conducted, at which Petitioner's eligibility be determined solely on the basis of whether he is a flight risk, or danger to the community, and without regard to 8 U.S.C. §1226(c)(1).

In the further alternative, Petitioner would re-urge his prior request that an Order to Show Cause why his petition should not be granted issue, in accordance with 28 U.S.C. §2243, and that his petition be given the expedited treatment contemplated thereby.

---

[1] Consistent with prior designations, the "Preliminary Statement Of the Government Pursuant to Court's Status Conference Request," filed July 23, 2002, will be referenced as the Respondents' "Preliminary Statement," and cited as (INS:__).

## I. OPPOSED MOTION TO STRIKE, AS FRIVOLOUS, INS' MOTION TO DISMISS

The instant case challenges the fact that Petitioner is being held without possibility of bond, allegedly pursuant to 8 U.S.C. §1226(c)(1). He claims that said provisions do not apply to him, because the offense of which he was convicted is not an aggravated felony, and he is therefore not among the class of persons described therein. In the alternative, he urges that said statute is unconstitutional as applied to him, a lawful permanent resident.

The issue of whether he has exhausted his administrative remedies was addressed at the Status Conference on July 23, 2002. It was noted that the instant petition challenges only the issue of bond, and that, by virtue of the BIA's dismissal of his bond appeal, he has exhausted his administrative remedies with respect thereto. [2] Counsel for Respondents did not contest this representation, either at the hearing, or in their Preliminary Statement filed July 23, 2002. To the contrary, said Statement acknowledged, (INS:2), that:

> [T]he Immigration Judge found that he had no jurisdiction to set a bond because the Petitioner had been convicted of an aggravated felony. The Petitioner appealed the Immigration Judge's Decision to deny bond; the BIA affirmed the Immigration Judge's Decision to deny bond on June 25, 2002.

In fact, this statement is repeated verbatim in Respondents' Motion to Dismiss. (INS2:2). Yet Respondents urge, (INS2:3), that:

> ... Petitioner is making the exact same argument with respect to his removal that he is making in the present habeas corpus petition. Accordingly, because habeas relief is relief of the last resort - after all other avenues are exhausted - this Court may not hear the merits of petitioner's case until the BIA rules on Petitioner's argument. Thus, the respondent moves to

---

[2] The Immigration Judge denied bond for lack of jurisdiction. Mr. Larin appealed to the BIA, which summarily dismissed his appeal on June 25, 2002. *See,* Petitioner's Exhibit B.

> dismiss the habeas petition for lack of jurisdiction. *Garcia v. Reno*, 234 F.3d 256 (5th Cir. 2000) (Court did not have habeas jurisdiction over deportation order where petitioner failed to exhaust remedies).

Notably, Respondents make no *argument* under *Garcia v. Reno*. They just *cite* it. Not only do the issues in said case bear no relation to the one at bar, but it is no longer good law. In *Garcia*, *id.* at 259, the petitioner challenged a final order of removal in habeas corpus, although the issue raised would have been cognizable in a petition for review to the Fifth Circuit, and he had failed to perfect an appeal before the BIA. In that context, the Court held that he was barred from raising the issue by virtue of 8 U.S.C. §1252(a)(2)(C), unless it fell "within the scope of the constitutionally-protected writ." In concluding that it did not, the Fifth Circuit relied on *Max-George v. Reno*, 205 F.3d 194 (5th Cir. 2000). However, the Supreme Court overruled *Max-George* in *INS v. St. Cyr*, 121 S.Ct. 2271 (2001), and it was later vacated, *Max-George v. Ashcroft*, 121 S.Ct. 2585 (2001). *See also, Cano-Miranda v. Ashcroft*, 262 F.3d 477, 478 (5th Cir. 2001):

> In *INS v. St. Cyr*, ... however, the Supreme Court held that the permanent rules of the IIRIRA do not divest federal courts of habeas jurisdiction. .. Moreover, the relevant Fifth Circuit case, *Max-George v. Reno*, ... has been vacated by the Supreme Court and remanded for further proceedings in light of *St. Cyr*. ...
>
> Accordingly, following *St. Cyr*, we hold that the district court erred in dismissing Cano-Miranda's appeal for want of habeas jurisdiction.

Nor does INS cite any authority for its claim that where the same issue is involved in the bond and removal proceedings, Mr. Larin has not exhausted his remedies in the bond proceedings until the issue is resolved in the underlying removal proceedings. Indeed, there is significant authority to the contrary, which could be

3

called "black letter law."[3] Respondents do not even mention this authority, much less make the type of argument contemplated by Rule 11, Federal Rules of Civil Procedure, to show that the pleading is not filed "to cause unnecessary delay,"[4] and that:

> [The] ... legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

The undersigned has located no cases where INS previously argued that someone challenging denial of bond under 8 U.S.C. §1226(c) had not exhausted his or her remedies because the underlying removal case was still ongoing. Rather, INS argues exhaustion where the person failed to do precisely to what Mr. Larin did herein: appeal the denial of bond to the BIA. *See, e.g., Hoang v. Comfort*, 282 F.3d 1247,1254 (10th Cir. 2002) ("The government contends that comprehensive administrative procedures are available under Title 8 of the Code of Federal Regulations for aliens to dispute that § 236(c) applies to them and to seek bond. *See* 8 C.F.R. §§3.19 and 236.1"); and *Danesh v. Jenifer*, 2001 WL 558223, *3 (E.D.Mich.2001):

---

[3] *See, for example, Matter of Joseph*, Interim Decision 3398 (BIA 1999) (an LPR is not properly included in a mandatory detention category if the IJ or BIA finds "on the basis of the bond record as a whole, that it is substantially unlikely" that INS will prevail on a charge of removability specified therein). A copy of said decision is attached hereto.

[4] When the undersigned conferred with Respondents' counsel about the instant motion, attempting to explain that release on bond during removal proceedings is different from winning the underlying case, which may go on for years, counsel responded that Mr. Larin **could** get out: by accepting deportation. This, plus the obvious lack of merit to the claim that he has not exhausted his administrative remedies, indicate that the Motion to Dismiss was indeed filed for the purpose of causing "unnecessary delay," as part of Respondents' strategy of prolonging the instant case until the Petitioner becomes desperate, gives up the struggle to retain his status as a lawful permanent resident, and accepts deportation.

4

Respondents argue that the Petition should be dismissed because Petitioner has failed to exhaust his available administrative remedies under the pertinent regulations and the Act. 8 C.F.R. §§ 3.19 and 236.1, 8 U.S.C. § 1236(c). Petitioner may make a written or oral request for bond to the INS district director. 8 C.F.R. §§ 3.19(a), (b) and 236.1(c)(10) (1999). An individual in custody under section 236(c) may also seek a redetermination from the immigration judge in order to dispute Petitioner's inclusion within a category of aliens covered by the detention requirement of section 236(c). *Id.* at §§ 3.19(h)(2)(i)(D), (h)(2)(ii) and 236.1(d)(1). An alien may appeal any adverse decision by an immigration judge regarding inclusion within 236(c) to the Board of Immigration Appeals ("BIA"). *Id.*

In *Ramos-Serrano v. Estrada*, 201 F.Supp.2d 714,718,n.10 (N.D.Tx.2002), INS appears to have argued that one of the petitioners might not actually be subject to mandatory detention, and that a hearing was to be held on that point. The Judge disposed of this claim with the observation that, since INS was treating him as a mandatory detainee, so would the Court:

> In each case before the Court, § 236(c) and its mandatory detention provision applied because the permanent resident aliens pled guilty to "aggravated felonies," within the meaning of the INA, or, in the case of Mendoza, pled guilty to a firearms offense, a listed offense under § 236(c). [FN10] An "aggravated felony" is broadly defined under 8 U.S.C. § 1101(a)(43), to include, among other things, crimes of violence, and offenses related to theft and fraud. The crimes committed by Serrano, Molina, and Mendoza all trigger mandatory detention under § 236(c).
>
> FN10. At the hearing in this matter, the government stated that the issue of whether Mendoza falls within the definition of an "aggravated felon" will be determined by an Immigration Judge on May 24, 2002. This contention does not alter the Court's analysis given that the offense referenced in the Notice for Mendoza to Appear triggered § 236(c), even if it is not an aggravated felony. For purposes of this opinion, since the government is treating Molina as a "criminal alien"

5

>subject to the mandatory detention mandate of § 236(c), the Court will regard him as such.

Further, exhaustion is not statutorily required under 28 U.S.C. §2241. Thus, even in the immigration context, failure to exhaust is not a jurisdictional defect, and would therefore not be the proper subject of a motion to dismiss. *See, U.S. ex rel Marcello v. INS*, 634 F.2d 964,971 (5th Cir.1981), cited with approval in *INS v. St. Cyr, supra* at 2284-85.

It is therefore urged that Respondents' claim that this Court lacks jurisdiction herein, because Mr. Larin allegedly failed to exhaust administrative remedies does not pass the threshold requirements of Rule 11. Rather, its only function is to cause unnecessary delay, and it should be stricken as frivolous.

## II. RESPONDENTS' ARGUMENTS ON THE MERITS ALSO FAIL, PARTICULARLY IN LIGHT OF RECENT FIFTH CIRCUIT CASE LAW.

Respondents fare no better on the merits. They take issue with Mr. Larin's claim that the instant case is covered by the reasoning of *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001) (INS:5-6). However, they fail to note that the reasoning thereof was recently applied, and extended, to a conviction very similar to the case at bar, to wit, that of injury to a child, in violation of TPC 22.04(a). *See, U.S. v. Gracia-Cantu*, __ F.3d __ (5th Cir. 8/9/02), 2002 WL 1827802. The Court therein reiterated, *id.* at #3, that, in deciding whether the defendant's prior felony conviction qualified as a "crime of violence," as required for it to constitute an "aggravated felony," the Court uses a categorical approach, focusing only on offense as defined under relevant state or federal law and not on the particular facts of defendant's conviction. In *Gracia-Cantu*, the Court explained that "results oriented" offenses often cover offenses which do not involve the use of force:

> Because the offense of injury to a child is results-oriented, many convictions for this offense involve an omission rather than an intentional use of force. See Chapa-Garza, 243 F.3d at 926 (noting that "a parent who leaves a young child unattended near a pool may risk serious injury to the child, but the action does not involve an intent to use force or otherwise harm the child") (internal citation and quotation omitted). ... As these examples illustrate, in many cases the offense of injury to a child does not involve the substantial likelihood of an intentional use of force. Thus, the offense is not, "by its nature," a crime of violence under 18 U.S.C. § 16(b). See Velazquez-Overa, 100 F.3d at 420-21. Accordingly, the district court's sixteen-level enhancement of Gracia-Cantu's offense level constitutes clear and obvious error.

The offense at bar is also "results-oriented." Regardless of what other ambiguities exist in the record, there is no ambiguity about the fact that he was not, as Respondents urge, (INS2:3), convicted of "intentionally causing bodily harm to another person with a deadly weapon." At worst, he was convicted of intentionally taking some specified action, or failing to take some action, "in a manner whereby great bodily harm [could] be inflicted." See, Petitioner's Exhibit A, filed with Mr. Larin's First Amended Petition For Writ of Habeas Corpus. Said Exhibit shows that the Complaint/Information to which he pled, alleged that he did "unlawfully, intentionally in a manner whereby [he?] could have [unintelligible] cause[d] great bodily harm [to] another person, to wit, Isarael Rosas."

INS would have the Court ignore the charging document, (INS2:6):

> To begin with, the *complaint* does not determine which alternative form of the offense the petitioner is convicted of; it is the <u>judgment</u> itself. Looking at the actual records of conviction, it is abundantly clear that the Petitioner was convicted of the former offense - the use of a deadly weapon - because the record indicates that a firearm was used in the commission of the offense.

However, there is no "judgment" which contradicts the Complaint/

Information. INS' argument also betrays a fundamental misconception of the nature of criminal law. When one pleads guilty, one pleads to a specific offense that has been properly charged; by complaint, information, or indictment. One does not plead guilty to a specific section of law in the abstract. Absent proof that there was some superceding charging document, the offense of which Mr. Larin was convicted is that alleged in the Complaint/Information.

Here, the Complaint/Information does not specify *what* Mr. Larin did. It does not charge that he actually *caused bodily harm*. Rather, it asserts only that he took some unspecified action, or failed to act in some unspecified manner, which *could have resulted in great bodily harm to Isarael Rosas*, and that whatever he did, or did not do, was done, or not done, unlawfully and intentionally.

Therefore, the fact that a weapon may have been involved does not mean that Mr. Larin was *convicted* of the use of a weapon. There is nothing in the conviction record, *i.e.*, the charging document, and judgment, involving use of a weapon. Rather, the weapon figured only in the sentencing phase. The *Taylor* analysis would only enter into consideration if the charging document permitted an interpretation that the use of the weapon was an element of the offense under which he was convicted. Here, it does not.

There is no subsection of the Kansas statute which incorporates **both** the use of a deadly weapon, **and** an allegation that the manner in which the offense was committed could have caused great bodily harm, etc. In both subsection (B) and (C), those possibilities are listed in the alternative. Since it is clear from the Complaint/Information that Mr. Larin was charged with doing (or not doing) something which *could have caused great bodily harm, etc..*, *then* it is equally clear that he was not *convicted* under a subsection which contained, as an element, the use of a weapon.

Under the wording of the charge to which he pled, Mr. Larin could have intentionally thrown a weapon on the ground, in a manner which could have caused it to fire. He could have intentionally failed to take a loaded weapon away from a child under his control. Neither would constitute a crime of violence under *Gracia-Cantu*.

It is not the written plea agreement, much less the considerations which enter into determining a sentence, which control the specifics of an offense under which one is convicted. Most pre-sentence investigation reports include the defendant's criminal record, whether or not he uses drugs, his financial capabilities, and even family history. The discussion of these factors in a PSI does not mean that the defendant was *convicted* of these matters.

To the contrary, it is the actual Complaint/Information to which Mr. Larin pled. The Complaint/Information, as interlineated, does not charge a "crime of violence," under 18 U.S.C. §16. Mr. Larin therefore has not been convicted of an aggravated felony, and is not subject to the provisions of 8 U.S.C. §1226(c).

### III. CERTIFICATE OF CONSULTATION

On August 23, 2002, the undersigned conferred with Paul Fiorino, about Respondents' position that, because the issue of whether he is subject to removal as charged is also an issue in the bond proceedings, he has not "exhausted his remedies" on the bond issue until the underlying removal case is resolved. No agreement was reached with respect thereto. During that conversation, Mr. Fiorino stated that he would oppose the instant motion to strike.

### IV. CONCLUSION

In conclusion, Mr. Larin urges that the BIA erred in summarily dismissing his appeal from the denial of bond, and in not giving any consideration, much less meaningful consideration, to his arguments on appeal. Although he acknowledges that he has found no

Fifth Circuit authority permitting this Court to set a bond, Respondents have likewise cited none that would preclude it. And, as previously indicated, there is authority from other circuits holding that the Court does possess such inherent authority.

Furthermore, Mr. Larin has already been unlawfully detained since January. The transcript in the underlying appeal has not even been prepared. It will be months, if not years, before the issue is finally resolved. Forcing him to remain in detention, without any possibility of bond, under such circumstances is simply unconscionable, particularly where Respondents are utilizing every means at their disposal to cause the case to linger.

In the alternative, there is absolutely no reason why this Court cannot order Respondents to grant Mr. Larin a prompt bond hearing, limited to the issues of whether he presents a danger to society, and/or a risk of absconding. He is entitled to no less.

Respectfully Submitted,

*[signature]*

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID. 1178
Texas Bar 03052800

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2002, a copy of the foregoing and attachment were mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878 Ben Franklin Sta., Washington, D.C. 20044.

*[signature]*

**Matter of Samuel JOSEPH, Respondent**
**File A90 562 326 - York**
**Board of Immigration Appeals**
**20 Immig. Rptr. B1-217; Interim Decision No. 3398**
**May 28, 1999**

**Editorial information: index**

Index: Detention of aliens (Generally)

**Editorial information: summary**

## SUMMARY OF ISSUES

BOND: 8 U.S.C. § 1226 (Supp. II 1996), INA § 236; 8 C.F.R. § 3.19(h)(2)(ii) (1999); an LPR will not be considered ``properly included" in a mandatory detention category when an IJ or the BIA finds, on the basis of the bond record as a whole, that it is substantially unlikely that the INS will prevail on a charge of removability specified in INA § 236(c)(1).

**Editorial information: syllabus**

## BIA SYLLABUS

(1) For purposes of determining the custody conditions of a lawful permanent resident under section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226 (Supp. II 1996), and 8 C.F.R. § 3.19(h) (2) (ii) (1999), a lawful permanent resident will not be considered ``properly included" in a mandatory detention category when an Immigration Judge or the Board of Immigration Appeals finds, on the basis of the bond record as a whole, that it is substantially unlikely that the Immigration and Naturalization Service will prevail on a charge of removability specified in section 236(c) (1) of the Act.

(2) Although a conviction document may provide the Service with sufficient reason to believe that an alien is removable under one of the mandatory detention grounds for purposes of charging the alien and making an initial custody determination, neither the Immigration Judge nor the Board is bound by the Service's decisions in that regard when determining whether an alien is properly included within one of the regulatory provisions that would deprive the Immigration Judge and the Board of jurisdiction to redetermine the custody conditions imposed on the alien by the Service. *Matter of Joseph*; Interim Decision 3387 (BIA 1999), clarified.

(3) When an Immigration Judge's removal decision precedes the determination, pursuant to 8 C.F.R. § 3.19(h) (2) (ii), whether an alien is ``properly included" in a mandatory detention category, the removal decision may properly form the basis for that determination.

(4) An automatic stay of an Immigration Judge's release order that has been invoked by the Service pursuant to 8 C.F.R. § 3.19(i) (2) is extinguished by the Board's decision in the Service's bond appeal from that release order.

**Editorial information: cross-ref**

**CROSS-REFERENCES**

Immigration Law and Procedure chaps. 1, 62.

**Counsel**

Sandra L. Greene, Esquire, Philadelphia, Pennsylvania, for respondent.
Jeffrey T. Bubier, Assistant District Counsel, for the Immigration and Naturalization Service.

**Judges**

Before: Board En Banc: DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, SCIALABBA, and MOSCATO, Board Members. Concurring and Dissenting Opinion: SCHMIDT, Chairman; joined by VACCA, VILLAGELIU, ROSENBERG, and GUENDELSBERGER, Board Members.

**Opinion**


**Opinion by**

FILPPU, Board Member:

**Opinion**

On May 19, 1999, the Board issued an order which dismissed the Immigration and Naturalization Service's appeal from the Immigration Judge's January 20 and 22, 1999, bond orders releasing the respondent on his own recognizance. Our order informed the parties that this decision explaining the reasons for the order would be forthcoming.

I. THE ISSUES AND SUMMARY

Our jurisdiction in this timely Service appeal is pursuant to 8 C.F.R. § 3.1(b) (7) (1999). *See also Matter of Joseph,* Interim Decision 3387, at 13-14 (BIA 1999); 8 C.F.R. §§ 3.19(h) (2) (ii), 236.1(c) (11), (d) (3) (1999). Today, we explain the import of our ruling in *Matter of Joseph, supra,* in light of the Service's arguments in this bond appeal. We also address the question of when an Immigration Judge will have jurisdiction to set bond for a lawful permanent resident who has been charged by the Service with a ground of removability that would otherwise require the alien's mandatory detention pending an administratively final order of removal.

As explained below, the Immigration Judge may make a determination on whether a lawful permanent resident ``is not properly included'' in a mandatory detention category, in accordance with 8 C.F.R. § 3.19(h) (2) (ii), either before or after the conclusion of the underlying removal case. If this threshold bond decision is made after the Immigration Judge's resolution of the removal case, the Immigration Judge may rely on that underlying merits determination.

If the Immigration Judge addresses whether the permanent resident is properly included in a mandatory detention category prior to completion of the case in chief, the Immigration Judge must have very substantial grounds to override the Service's decision to charge the alien with a ground that subjects the alien to detention. Thus, in this context, a lawful permanent resident will not be considered properly included in a mandatory detention category only when an Immigration Judge is convinced that the Service is substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory detention.

Copyright 2002 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

In either situation, the Immigration Judge's bond ruling as to whether the alien is ``properly included'' in a mandatory detention category is subject to the Service's invocation of the ``automatic stay'' discussed in our prior ruling in this case.

## II. FACTS AND PROCEDURAL HISTORY

The respondent, a native and citizen of Haiti, was admitted as a lawful permanent resident in 1989. The respondent was convicted of the offense of ``obstructing and hindering,'' a crime under the common law of Maryland. The charge to which the respondent pleaded guilty asserts that he ``did intentionally and knowingly obstruct and hinder a police officer... in the performance of the [police officer] victim's duties.'' The respondent received a 1-year sentence. A statement appended to the criminal charging document asserts that the respondent, after departing his residence in a vehicle, was chased by a police officer and was finally apprehended in Delaware after jumping from his moving vehicle. It is not clear why the respondent was being pursued.

It appears that the respondent was taken into Service custody and removal proceedings were commenced in November 1998, charging that he was subject to removal under section 237(a) (2) (A) (iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a) (2) (A) (iii) (Supp. II 1996), as an alien who has been convicted of an aggravated felony as defined in section 101(a) (43) (S) of the Act, 8 U.S.C. § 1101(a) (43) (S) (Supp. II 1996) (obstruction of justice). The Immigration Judge, however, terminated the underlying removal proceedings on January 20, 1999, after deciding that the respondent's conviction does not qualify as an aggravated felony.

That same day the Immigration Judge issued an oral order in bond proceedings releasing the respondent from custody. The Immigration Judge followed his January 20, 1999, oral order with a written release order, dated January 22, 1999. The Service timely appealed both the Immigration Judge's decision terminating the respondent's removal proceedings and the Immigration Judge's order releasing the respondent on his own recognizance. The Service obtained an automatic stay of the release order during the pendency of its bond appeal, in accordance with our earlier ruling in this case. *Matter of Joseph, supra.* At present, we only address the Service's appeal from the Immigration Judge's release order and thereby resolve the bond appeal.

## III. THE SERVICE'S POSITION

The Service maintains that the respondent's conviction is for an aggravated felony, that he is therefore ineligible for release, and that the Immigration Judge lacked jurisdiction to redetermine the custody conditions imposed by the Service. The Service further argues that the Immigration Judge's decision in the respondent's removal proceedings, finding that the respondent is not an aggravated felon, is an improper basis for making a bond determination. The Service points out that it has timely appealed the Immigration Judge's removal decision and that it could prevail in its merits appeal. It argues that releasing an alien charged as an aggravated felon would be inconsistent with congressional intent in such circumstances.

Nevertheless, the Service has only provided a brief overview of its arguments on the underlying merits of the removal case, and it declines to ``burden these bond proceedings with a complete exposition of its position on the merits.'' According to the Service, the respondent remains ineligible for release because his conviction record provided the requisite ``reason to believe'' that he is removable as an aggravated felon, in accordance with our earlier ruling in this case. See *Matter of Joseph, supra,* at 10 (discussing the ``reason to believe'' language contained in the regulatory history of the current bond regulations).

## IV. THE GOVERNING LAW

The provisions governing the respondent's detention, pending an administratively final order in removal proceedings, are section 236 of the Act, 8 U.S.C. § 1226 (Supp. II 1996), and the regulations in 8

C.F.R. §§ 3.19 and 236.1. The statute prescribes mandatory detention for certain aliens, including those who are deportable by reason of having committed aggravated felonies. Section 236(c) (1) (B) of the Act. An exception, pertaining to cases involving witness protection, does not apply here. Section 236(c) (2) of the Act.

The regulations generally do not confer jurisdiction on Immigration Judges over custody or bond determinations respecting those aliens subject to mandatory detention, such as aggravated felons. 8 C.F.R. § 3.19(h) (2) (i) (D). The regulations, nevertheless, specifically allow an alien to seek a determination from an Immigration Judge ``that the alien is not properly included within" certain of the regulatory provisions which would deprive the Immigration Judge of bond jurisdiction, including the one at issue here. 8 C.F.R. § 3.19(h) (2) (ii). We must examine the import of this latter provision given the present posture of this case. [1.]

In a case such as this, the structure of the bond regulations means that the Immigration Judge's jurisdiction over custody issues is dependent on the answer to the very same question that underlies the charge of removability in the case in chief. In other words, if the respondent is removable as an aggravated felon, the Immigration Judge lacks any bond jurisdiction. Conversely, the Immigration Judge would have authority to redetermine custody conditions if the respondent is not removable as an aggravated felon.

### V. THE REMOVAL DECISION MAY BE A BASIS FOR THE BOND RULING

Given the regulatory scheme, we find no basis to the Service's contention that the Immigration Judge should not be able to use his ruling on the underlying merits of the removal proceedings as the basis for his finding of jurisdiction over the respondent's bond claim. Nothing in the regulations prohibits such action by the Immigration Judge, and the regulatory structure would actually seem to encourage the approach taken by the Immigration Judge, because the essential question is identical in both contexts.

The Immigration Judge could have made a threshold assessment in the bond context of whether the respondent's conviction was properly classified by the Service as an aggravated felony. However, the Immigration Judge elected first to complete the removal hearing. The Immigration Judge found that the respondent had not been convicted of an aggravated felony, the only charge of removability, and terminated the removal proceedings in the respondent's favor. Relying on his removal finding, the Immigration Judge then made a determination in bond proceedings that the respondent was not subject to mandatory detention and ordered his release. Nothing in this sequence of events violates the structure or spirit of the regulations, given that the Service's appeal of the removal order meant that there was no final order in place. *See* 8 C.F.R. § 236.1(d) (``Once a removal order becomes administratively final, determinations regarding custody and bond are made by the district director").

### VI. *MATTER OF JOSEPH* EXPLAINED

We also reject the Service's contention that the same basis for its initial charge of removability, which we found sufficient for purposes of the automatic stay as well, is adequate in this case to provide the needed ``reason to believe" that the respondent is an aggravated felon when we reach the substance of the bond appeal. In this respect, the Service's reading of our decision in *Matter of Joseph, supra,* is erroneous.

What was decided in *Matter of Joseph, supra,* was the question whether an alien remains ``subject to" section 236(c) (1) *for automatic stay purposes* after the Immigration Judge has decided that he is not subject to mandatory detention. 8 C.F.R. § 3.19(i) (2). The Service quotes language from that decision stating that ``the respondent's conviction record provided the Service with the requisite `reason to believe' that the respondent was removable as an aggravated felon, and the respondent thus became `subject to' section 236(c) (1) of the Act when charged with removability under section 237(a) (2) (A) (iii)." *Id.* at 10. The Service appears to argue that the ``reason to believe" which led it to bring the aggravated felony charge against the respondent is sufficient to control for bond purposes until the final resolution of the underlying removal case. While the Service's position may often be correct as a practical matter in other cases, this is

Copyright 2002 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

because the nature of many convictions quite clearly make aliens subject to mandatory detention. But that will not be true in all cases, and we do not find it to be true here.

To clarify what we said in *Matter of Joseph, supra,* the respondent's conviction record provided the Service with the requisite ``reason to believe'' that he had been convicted of an aggravated felony for purposes of charging and making the initial custody determination. However, the Service's decision in that regard is not unreviewable by the Immigration Judge or the Board in either the bond or the removal context. We found in *Joseph* that the automatic stay regulation was intended as a means for the Service to preserve the ``status quo'' of the district director's determination that the respondent must be detained, but only until we decide the Service's appeal from the Immigration Judge's release order. *Matter of Joseph, supra,* at 16.

The Service evidently misunderstands the discussion in our earlier decision of the regulatory history of the automatic stay provision, which provides that the Board retains full authority to accept or reject the Service's contentions in its bond appeal. *See* Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,447 (1998); *Matter of Joseph, supra,* at 12. The Service's position fails to recognize either the Immigration Judge's or the Board's role in the detention review process, apparently viewing our authority as being confined to looking only to whether the Service had a basis for charging the respondent with removability under one of the grounds listed in section 236(c) (1) of the Act.

Our role in this appeal is, instead, to determine whether the Immigration Judge correctly found that the respondent was not properly included in the mandatory detention scheme. This requires consideration of the evidence and argument offered during the bond proceedings on this question and of the force of the Immigration Judge's reasoning. It is more than just a perfunctory review and ratification of the fact that the Service may have had a ``reason to believe'' the respondent was an aggravated felon at the time it began the proceedings.

## VII. THE INTERPRETATION OF 8 C.F.R. § 3.19(h) (2) (ii)

Our construction of the regulation at issue here flows directly from what we said in *Matter of Joseph.* Any presumption that the respondent is an aggravated felon based on his conviction record and the charge brought by the Service is insufficient, by itself, to control the outcome of the bond appeal if the record as a whole shows otherwise. In this regard, we understand that the very purpose of the regulation, 8 C.F.R. § 3.19(h) (2) (ii), is to provide an alien, such as the respondent, with the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention.

Here, the Immigration Judge was convinced by the respondent's arguments that his Maryland common law ``obstructing and hindering'' charge is not an aggravated felony. The Immigration Judge compared the Maryland case law argued by the respondent to federal law and agreed with the respondent that the elements of the crime, and the types of conduct which it includes, are not analogous to ``obstruction of justice'' as contemplated by the aggravated felony definition at section 101(a) (43) (S) of the Act.

The Service argues, however, that it has appealed the merits decision terminating removal proceedings. And it contends the following in its appeal brief: ``If the Service turns out to be right, absent the Board's sustaining of the instant bond appeal, the respondent, an aggravated felon subject to mandatory custody, will have been released from custody. That is not the disposition envisioned by Congress in enacting the mandatory custody provision of section 236(c).''

But this case involves a lawful permanent resident who has been charged with only one ground of removability. Under our laws, the respondent would be allowed to reside and work in the United States, but for the pendency of the aggravated felony charge brought by the Service. And, as noted above, the bond regulations specifically accord a level of protection for aliens charged with grounds that would require mandatory detention. Those regulations allow for an independent assessment by an Immigration Judge

and the Board, in the preliminary bond context, of whether the alien is ``properly included'' in a category subject to mandatory detention.

The mere fact that the Service has appealed in the underlying removal case, and in theory could prevail, cannot be sufficient, by itself, to require the reversal of the Immigration Judge in this bond appeal. If it were, there would seem to be little or no point to the regulatory provision that allows the Immigration Judge, and the Board on appeal, to make a determination on whether the alien is ``properly included'' in a mandatory detention category.

A determination in favor of an alien on this issue does not lead to automatic release. It simply allows an Immigration Judge to consider the question of bond under the custody standards of section 236(a) of the Act. Yet, under the Service's approach, an alien such as the respondent would seem to have no recourse to that ordinary bond provision, even in cases where the Service is wrong in its charge and will lose on appeal. As we explained in connection with our discussion of *Matter of Joseph* above, the regulation must have meaning beyond simply allowing for a perfunctory review of the basis for the Service's charge. Indeed, the regulatory history indicates that this rule was intended to provide ``for an individualized hearing on whether an alien in custody *actually* falls within a category of aliens subject to mandatory detention.'' 63 Fed. Reg. at 27,444 (emphasis added).

This, however, is a case of first impression, and the regulations do not spell out the precise role of an Immigration Judge or the Board in assessing, in the bond context, whether an alien is ``properly included'' in a mandatory detention category. Yet, this case also involves a lawful permanent resident. And, as we explain below, we find that the Service is substantially unlikely to establish the charge of deportability in its appeal of the underlying removal case. Under such circumstances, we find it inappropriate to continue to treat the respondent as an alien who is subject to mandatory detention, if we are to give meaningful life to the regulations allowing for an examination by Immigration Judges and the Board of this question. Thus, subject to the automatic stay provision, we determine that a lawful permanent resident will not be considered ``properly included'' in a mandatory detention category when an Immigration Judge or the Board is convinced that the Service is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention.

The Immigration Judge here issued his bond ruling after the conclusion of the removal case. As indicated above, the Immigration Judge was entitled to rely on that merits decision in making the related bond determination that the respondent was not properly included in a mandatory detention category.

The regulations, however, allow this determination to be made by the Immigration Judge at a very early stage of the overall proceedings. The Service is, of course, entitled to bring any charge it deems warranted in a given case. Importantly, as the Service points out, the statutory scheme envisions the detention of aliens subject to grounds such as the aggravated felony charge here. Consequently, the Immigration Judge must have very substantial grounds to override the custodial effect of the Service's charge in those cases where the Immigration Judge addresses whether the permanent resident is properly included in a mandatory detention category prior to completion of the merits hearing.

It follows from what we said in *Matter of Joseph, supra,* at 10, that the ``reason to believe'' that the alien ``falls within a category barred from release,'' which led the Service to bring a particular charge, can often be expected to suffice until the Immigration Judge resolves the merits of the removal case, a resolution that frequently occurs speedily in cases involving detained criminal aliens. 63 Fed. Reg. at 27,444-45. But the Immigration Judge is able to examine the basis for that charge and make an independent determination whether the alien ``actually falls within a category of aliens subject to mandatory detention.'' *Id.* at 27, 444. In requiring that the Immigration Judge be convinced that the Service is substantially unlikely to prevail on its charge, when making this determination before the resolution of the underlying case, we provide both significant weight to the Service's ``reason to believe'' that led to the charge and genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue.

In addition, we note that the bond regulations generally allow for great flexibility in making rulings on

Copyright 2002 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

custody issues. For example, 8 C.F.R. § 3.19(d) provides in part: ``The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."

Further, in assessing whether an alien is ``properly included" in a mandatory detention category during a bond hearing taking place early in the removal process, the Immigration Judge must necessarily look forward to what is likely to be shown during the hearing on the underlying removal case. Thus, for example, the failure of the Service to possess a certified copy of a conviction record shortly after taking an alien into custody would not necessarily be indicative of its ability to produce such a record at the merits hearing. And the same could be true of evidence tendered by the alien during an early bond hearing.

### VIII. THE SERVICE'S PROSPECT FOR SUCCESS IN THE REMOVAL CASE

Turning to the bond record in this case, we do have evidence respecting the respondent's conviction for ``obstructing and hindering" under Maryland law. We agree with the Immigration Judge that this evidence strongly indicates that the respondent's conviction resulted from his actions to obstruct or hinder his own arrest.

The Maryland case law relied upon by the Immigration Judge, *Cover v. State,* 466 A.2d 1276 (Md. 1983), reflects that the crime of obstructing and hindering encompasses three types of offenses: (1) positive direct obstruction (i.e. resisting one's own arrest), (2) passive direct obstruction (where a subject refuses or fails to act as directed by a police officer), and (3) positive indirect obstruction (where the police are not acting directly against the subject, but are acting indirectly against another who has committed, or may commit, a criminal offense, and the subject does an act which obstructs them in their general duty to prevent or detect crime, intending to frustrate them in the performance of that duty).

At least in this bond case, the Service has provided little to challenge the Immigration Judge's determination that the respondent's offense is not correctly classified as an aggravated felony. The Service cites to *Matter of Batista-Hernandez,* Interim Decision 3321 (BIA 1997), as support for its position. However, we agree with the Immigration Judge that, unlike *Batista-Hernandez,* the respondent in the present case was seeking to evade his own arrest, rather than obstructing the arrest of another. The Service's reliance on *United States v. John,* 935 F.2d 644 (4th Cir. 1991), is likewise unpersuasive. This sentence enhancement case indicates that mere flight from an arresting officer is not sufficient, in itself, to warrant an adjustment of a defendant's offense level under the obstruction of justice provision in the United States Sentencing Guidelines in U.S.S.G. § 3C1.1 (1990). *See* 18 U.S.C.A. ch. 3, § 3C.1. 1 (West 1996). The Service has also not addressed the Immigration Judge's reliance on the Supreme Court's decision in *United States v. Aguilar,* 515 U.S. 593, 599 (1995), for the proposition that an ``intent to influence judicial or grand jury proceedings" is more the sort of activity constituting an ``obstruction of justice" under the Act than is the respondent's conviction for obstructing or hindering his own arrest in a manner that does not appear to have endangered the officer.

We do not purport to make a final ruling on whether the respondent's conviction falls within the aggravated felony provision of section 101(a) (43) (S). The possibility remains that the Service might offer some convincing argument in its merits appeal. However, it opted not to do so here. On the basis of this bond record, it appears that Maryland's ``obstructing and hindering" law is divisible, encompassing the conduct of resisting one's own arrest. Even if some of the other categories of activities included in this crime might potentially be construed as obstruction of justice, we find that it is substantially unlikely that the offense of simply obstructing or hindering one's own arrest will be viewed as an obstruction of justice aggravated felony under section 101(a) (43) (S) of the Act for removal purposes. Consequently, we agree with the Immigration Judge that the respondent is not ``properly included" in the category of aliens subject to mandatory detention for bond or custody purposes. 8 C.F.R. § 3.19(h) (2) (ii).

### IX. THE RELEASE ORDER

Our determination, in agreement with the Immigration Judge, that the respondent is not properly

Copyright 2002 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

included in a mandatory detention category would not ordinarily end the bond inquiry. It simply means that the lawful permanent resident could be considered by the Immigration Judge for release under the general bond provisions of section 236(a) of the Act. In this case, however, the Service has not challenged the specific terms of the Immigration Judge's release order in its appeal brief.

Consequently, for the foregoing reasons, on May 19, 1999, we entered an order which extinguished the automatic stay that had attached upon the tendering of the Form EOIR-43 (Notice of INS Intent to Appeal Custody Redetermination) by the Service in this case. We now repeat that order for the sake of clarity.

ORDER: The appeal taken by the Service is dismissed.

FURTHER ORDER: The respondent shall be released pursuant to the terms of the Immigration Judge's January 22, 1999, bond order.

**Concur by**

CONCURRING AND DISSENTING OPINION: Paul W. Schmidt, Chairman; in which Fred W. Vacca, Gustavo D. Villageliu, Lory D. Rosenberg, and John Guendelsberger, Board Members, joined

**Concur**

I respectfully concur in part and dissent in part.

I join entirely in the majority's rejection of the Immigration and Naturalization Service's appellate arguments and in the unanimous conclusion that, on this record, the Service is substantially unlikely to prevail on the merits of the aggravated felony charge. Therefore, I agree that the respondent is not properly included in the category of aliens subject to mandatory detention for bond or custody purposes.

However, I do not share the majority's view that the proper standard in a mandatory detention case involving a lawful permanent resident alien is that the Service is ``substantially unlikely to prevail'' on its charge. *Matter of Joseph,* Interim Decision 3398, at 10 (BIA 1999). Rather, the standard in a case such as the one before us should be whether the Service has demonstrated a likelihood of success on the merits of its charge that the respondent is removable because of an aggravated felony.

Mandatory detention of a lawful permanent resident alien is a drastic step that implicates constitutionally-protected liberty interests. Where the lawful permanent resident respondent has made a colorable showing in custody proceedings that he or she is not subject to mandatory detention, the Service should be required to show a likelihood of success on the merits of its charge to continue mandatory detention. To enable the Immigration Judge to make the necessary independent determination in such a case, the Service should provide evidence of the applicable state or federal law under which the respondent was convicted and whatever proof of conviction that is available at the time of the Immigration Judge's inquiry.

The majority's enunciated standard of ``substantially unlikely to prevail'' is inappropriately deferential to the Service, the prosecutor in this matter. Requiring the Service to demonstrate a likelihood of success on the merits of its charge would not unduly burden the Service and would give more appropriate weight to the liberty interests of the lawful permanent resident alien. Such a standard also would provide more ``genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue,'' as referenced by the majority. *Matter of Joseph, supra,* at 10.

The Service's failure to establish a likelihood of success on the merits would not result in the release of a lawful permanent resident who poses a threat to society. Continued custody of such an alien

Copyright 2002 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved.

would still be warranted under the discretionary criteria for detention.

In conclusion, mandatory detention should not be authorized where the Service has failed to demonstrate a likelihood of success on the merits of its charge. Consequently, while I am in complete agreement with the decision to release this lawful permanent resident alien, and I agree fully that the Service is substantially unlikely to prevail on the merits of this aggravated felony charge, I respectfully dissent from the majority's enunciation of ``substantially unlikely to prevail" as the standard to be applied in all future cases involving mandatory detention of lawful permanent resident aliens.