IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 1 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUAN LARIN-ULLOA | * | |
| Petitioner, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. B-02-107 |
| | * | |
| DEPARTMENT OF JUSTICE | * | |
| IMMIGRATION AND | * | |
| NATURALIZATION SERVICE, | * | |
| Respondent. | * | |

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTIONS TO STRIKE[1] AND NON-OPPOSITION TO CONSTRUING THE GOVERNMENT'S MOTION TO DISMISS AS ITS HABEAS RETURN**

Respondent, the Immigration and Naturalization Service ("INS") opposes the motion to strike the certified administrative record ("A.R.") because it contains relevant information critical to the court in resolving the case. The Respondent also opposes the petitioner's motion to strike the government's motion to dismiss, on the grounds that the government's motion to dismiss is not at all frivolous. The government continues to maintain that the petitioner has failed to exhaust his remedies and such argument has been previously discussed and is incorporated by reference. Furthermore, to the extent that the government has addressed all issues currently raised in its motion to dismiss, the government does not oppose the Court deeming its motion to dismiss as its habeas return.

**THE ADMINISTRATIVE RECORD IS RELEVANT AND SHOULD NOT BE STRICKEN, NOR IS THE GOVERNMENT'S ARGUMENT WITH RESPECT TO EXHAUSTION FRIVOLOUS.**

The petitioner argues the administrative record filed "is the record to date, of the pending removal proceedings and as such, is irrelevant to the instant case." Petitioner's Motion to Strike

---

[1] To avoid confusion, the instant document is the government's response to Petitioner's most recent pleadings which appear as docket entries 18 and 19, the titles of which are too long and cumbersome to repeat. The fact that the Government in this pleading does not address each and every one of Petitioner's arguments and prayers for relief shall **not** be deemed as joinder, waiver, agreement, concession, or acquiescence to any of the arguments or averments the petitioner may make in those two documents.

at 2. Petitioner is incorrect. The record is not irrelevant to the instant case. It contains documents relevant to the status of the petitioner as an aggravated felon - including his conviction records. As the petitioner concedes, his removal case is still pending before the Board. Accordingly, he has not exhausted his remedies with respect to that issue, and the administrative record illustrates this.

Petitioner has essentially painted himself into a corner. He is simultaneously challenging his denial of bond in the instant case, while pursing his application for relief from removal before the BIA - a lower tribunal. He contends that he is not challenging his removal in the instant case; rather, he is only challenging his denial of bond. And he concedes that his removal case is pending before the BIA. The record for that case is the subject of the petitioner's motion to strike.

In the pending BIA case, the petitioner is applying for withholding of removal and relief under the convention against torture ("CAT") - two forms of relief which remain available to aggravated felons[2]. Petitioner apparently has conceded before the Immigration Judge that he is convicted of an aggravated felony. A.R. 78 ("Respondent arguably was convicted of an aggravated felony."). And in other proceedings before this Court, petitioner contends that he has exhausted his remedies with respect to the issue of his aggravated felon status[3]. The only way this can be remotely true is if he is somehow conceding his removal and only pursuing relief from removal in the currently pending BIA case.

However, in the present case he challenges that very concession that he is an aggravated felon. He continues to argue that he is not an aggravated felon. Assuming, arguendo, that he prevails in the present case while his unchallenged aggravated felon status remains undisturbed at

---

[2] It is interesting to note that in his pending removal case, the petitioner is applying for withholding of removal but is not applying for asylum - which is unavailable to aggravated felons. A.R. 4. This would make sense if he is conceding his status as an aggravated felon in that proceeding. But if that is so, he may not challenge it here.

[3] "The INS' statement also incorrectly claims that Mr. Larin has not yet exhausted his administrative remedies." Page 1 of Petitioner's Response to the Government's preliminary statement pursuant to the Court's Status Conference Request, ("Response") filed with the Court on July 25, 2002 (emphasis added).

the BIA - and this Court finds that he is <u>not</u> an aggravated felon, what will be the result when the BIA rules on his CAT/withholding application - which, according to the petitioner, will <u>not</u> disturb the Immigration Judge's finding that he yet remains removable as an aggravated felon? The petitioner will have essentially "leap-frogged" the BIA by obtaining a reversal of the Immigration Judge's finding without the BIA ruling on it one way or another. Moreover, if the BIA finds that petitioner has been convicted of an aggravated felony, appeal on that issue should lie in the 5th Circuit Court of Appeals.

The point of indulging this logical dilemma is simply to underscore why the doctrine of exhaustion of remedies makes a lot of sense, especially here. In order for the petitioner to prevail, this Court must accept the absurd notion that the petitioner is <u>not</u> an aggravated felon for the purposes of <u>bond</u>, but is an aggravated felon for the purpose of removal, as he apparently concedes. Petitioner's untenable position is internally inconsistent, legally inapposite and logically nonsensical. This is why the doctrine of exhaustion of remedies exists. It prevents absurd situations like the one at bar[4].

Petitioner cites <u>Matter of Joseph</u>, Interim Decision 3398 (BIA 1999) in support of his position. <u>Matter of Joseph</u> is not relevant to this case. In <u>Joseph</u>, the BIA held that a lawful permanent resident is not properly included in a mandatory detention category if the Immigration Judge or BIA finds on the basis of the <u>bond</u> record that it is unlikely that the INS will prevail on a charge of removability. True; <u>Joseph</u> does contemplate that one can challenge one's aggravated felon status in removal proceedings and also in bond proceedings. But it does <u>not</u> stand for the proposition that one can challenge aggravated felon status in <u>habeas</u> proceedings while removal proceedings are ongoing at the BIA. Nor does it stand for the proposition that a Federal District Court in habeas proceedings can foreclose a finding of removability to the BIA before the BIA has ruled on the issue. Petitioner cites no authority for that novel proposition.

---

[4] The government cites <u>Garcia v. Reno</u> 234 F.3d 257 (5th Cir. 2000) for the mere principle that a Court does not have habeas jurisdiction over deportation order where petitioner failed to exhaust remedies. That is all. Though aspects of <u>Garcia</u> may be inapposite here, the case is merely cited for the basic principle that a Court may not exercise habeas jurisdiction where the petitioner has failed to exhaust remedies.

Ramos Serrano v. Estrada, 201 F Supp. 2d 714 (N.D. Tex. 2002), cited by the petitioner, actually supports the government in this regard. Ramos Serrano is not completely on point for the government, because none of the plaintiffs in that case were simultaneously challenging removal before the BIA and their bond denial in a habeas before a District Court. In Ramos, the Court heard arguments only on the constitutionality of Section 236(c) as a provision, and not the separate issue of bond. Thus, the Court in footnote 10 noted that the merits of whether the petitioners were aggravated felons was currently pending before the lower tribunal. Because of that fact, the Court observed: "For purposes of this opinion, since the government is treating Molina as a 'criminal alien' subject to the mandatory detention mandate of § 236(c), the Court will regard him as such." Id. at 718, N. 10. In other words, the Court observed that it could NOT disturb the finding that the petitioner was an aggravated felon, for the purpose of Section 236(c), because that issue was pending before a lower tribunal. And the Court did not find the petitioners in that case to be non-criminal aliens. It merely found that, assuming the petitioners are criminal aliens, mandatory detention under Section 236(c) is unconstitutional. Furthermore, the Ramos Court did not find the petitioners eligible for bond because, as that Court noted and as the Petitioner fails to acknowledge, a person held under Section 236(c) is not entitled to bond[5]. In the present case, this Court should follow suit.

Taking the government's position to its logical conclusion, the petitioner may not challenge the denial of bond under Section 236(c) in a habeas proceeding. The government argues that this is consistent with the will of Congress because there is no bond provision at all in Section 236(c). Petitioner may still obtain judicial review of the constitutionality of Section 236(c), as the issue is currently pending before the Supreme Court. Demore v. Kim, — S.Ct. —, 2002 WL 704365, 70 USLW 704365 (U.S. Jun. 28, 2002) (No. 01-1491).

**IN THE EVENT THAT THE COURT FINDS IT RETAINS JURISDICTION OVER THIS HABEAS PETITION, THE PETITIONER IS AN AGGRAVATED FELON**

In the alternative, the government continues to maintain that the petitioner is an aggravated felon and is properly removable as such. This is not a frivolous position.

---

[5] Petitioner continues to argue in support of bond, as settled as that issue is against him. And in the same breath he condemns the government's arguments as frivolous.

Petitioner in this case has argued and continues to argue forcefully that he is not an aggravated felon. The record contains vital information relevant to that very issue. It contains conclusive proof that petitioner pled to and was convicted of aggravated battery, in violation of K.S.A. Sec. 21-3414. A.R. 54-57. It contains conclusive proof that the petitioner committed this offense with a firearm. A.R. 54, 57, 60. It contains conclusive proof that petitioner's violent felony resulted in injuries to his victim, resulting in his having to pay restitution to the medical clinic that treated the wounds he caused. A.R. 55. In short, the record contains all known documents about the Petitioner's conviction history. That the petitioner's conviction history is relevant to his status as an aggravated felon is beyond cavil. That the petitioner's status as an aggravated felon is relevant in bond proceedings is also beyond cavil.

Petitioner's reasoning - that he is not an aggravated felon because his crime may be committed by omission rather than commission - is flawed for the same reasons that he misreads United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001). Citing recent Fifth Circuit law in the case of United States v. Gracia-Cantu, ___ F. 3d ___ ( No. 01-41029, 5th Cir. August 9, 2002), Petitioner again confuses the issue by speculating that his crime is not a crime of violence and cites to instances where aggravated battery can be committed without the use of force. In this instance, petitioner attempts to equate his Kansas conviction of aggravated battery with the Texas offense of injury to a child. Petitioner's argument in this regard is premised on the unsupported assumption that aggravated battery under Kansas criminal law is a "results-oriented" crime.

The Texas statute under which Gracia-Cantu was convicted for injury to a child provides in relevant part:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:
> (1) serious bodily injury;
> (2) serious mental deficiency, impairment, or injury; or
> (3) bodily injury.

Tex. Penal Code Ann. § 22.04(a) (Vernon 2002). On its face, it is clear that the statute[6] punishes conduct which involves negligence and omission. There is no such provision in K.S.A. § 21-3414(A) or (B), which, again, involves the <u>intentional</u> infliction of bodily harm. The court then observes that "because an offense of injury to a child often stems from an omission rather than an intentional use of force, such offense is not, by its nature, a crime of violence within the meaning of 18 U.S.C. § 16(b). We agree." <u>Id.</u> at *3. The Court then goes on to cite <u>Chapa Garza</u>, which, as the government has argued earlier, is inapposite given the fact that drunk driving does not necessarily entail the use of force. The petitioner may not agree. However, this does not make the government's argument frivolous.

If there is information in the record that Petitioner feels is irrelevant, the petitioner may move to strike portions of it. Petitioner has cited no such specific document. Alternately, the Petitioner, Respondent, and even the Court may simply ignore those portions of the record that are not dispositive of the issue at hand. Furthermore, if there are any other documents that Petitioner feels is vital to the litigation of this case, the Petitioner remains free to move to supplement the record.

The government remains opposed to the motion to strike the administrative record. It contains vital information critical to resolution of the issues at bar. To strike the record in its entirety would necessarily entail ensuing motions to re-enter the very documents which are dispositive of the petitioner's status as an aggravated felon. Any such motions would have to be considered and ruled upon by the Court, further delaying the resolution of this issue.

Petitioner's motion is reminiscent of the frantic plea of the Great Oz to "pay no attention to that man behind the curtain." Like Dorothy in that classic movie, the Petitioner is no longer in Kansas anymore, having been convicted of a violent felony within that state. However, this Court must not turn a blind eye to the facts which conclusively establish that the petitioner is an aggravated felon. Accordingly, to strike the record would be counterproductive.

---

[6] In this regard, it is important to note that the Court, as the government, derived its analysis from the face of the statute itself and not, as the petitioner argues, the complaint.

**PETITIONER'S ALLEGATIONS OF GOVERNMENTAL DILATORY TACTICS ARE PATENTLY FALSE AND INAPPROPRIATE**

The government takes umbrage with the inflammatory allegations that the government is intentionally delaying this lawsuit. In this regard, the petitioner makes the following statement: "Forcing him to remain in detention, without any possibility of bond, under such circumstances is simply unconscionable, <u>particularly where Respondents are utilizing every means at their disposal to cause the case to linger</u>." Docket item #19 at 10 (emphasis added). There is no support whatsoever for this assertion.

Elsewhere the petitioner makes another allegation, that the government is intentionally delaying the lawsuit so that petitioner will forgo his litigation and accept deportation:

> When the undersigned conferred with Respondent's counsel about the instant motion. . .counsel responded that Mr. Larin **could** get out; by accepting deportation. This, plus the obvious lack of merit to the claim that he has not exhausted his administrative remedies, indicate that the Motion To Dismiss was indeed filed for the purpose of causing "unnecessarily delay," <u>as part of the respondent's strategy of prolonging the instant case until the Petitioner becomes desperate, gives up his struggle to retain his status as a lawful permanent resident, and accepts deportation</u>.

<u>Id</u>. at 4. fn. 4 (underline added). To begin with, this excerpt from a telephone conversation is wholly inappropriate in a court pleading, as its intent is to portray the government as nefarious and cruel. Conversations between attorneys for the purpose of resolving an issue should be kept between attorneys and not become the subject of snitches to the Court.

Most importantly, the notion that petitioner can obtain freedom by obtaining deportation is absolutely true. And this is not the bidding of the Department of Justice, it is the will of Congress which passed the laws forming the basis of the petitioner's predicament. As the Seventh Circuit said in <u>Parra v. Perryman</u>, 172 F.3d 954 (7th Cir. 1999):

> Before the IIRIRA bail was available to persons in Parra's position as a corollary to the possibility of discretionary relief from deportation; now that this possibility is so remote, so too is any reason for release pending removal. Parra's legal right to remain in the United States has come to an end. <u>An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at</u>

<u>large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs</u>.

Id. at 958 (emphasis added).

## CONCLUSION

It is likely at this point that the judge reading these pleadings is scratching his or her head trying to sort out the complex issues presented. That very fact supports the notion that there are real issues involved and it certainly belies the assertion that the government's position is frivolous.

The fact that the government stands behind its position does not make the government's position frivolous. The fact that the government makes arguments that the petitioner disagrees with does not mean that the government's arguments are in bad faith. It is clear that petitioner would be happier if the government filed a habeas return instead of a motion to dismiss, but the fact that the petitioner did not get what he wants does not mean that the government's pleadings should be stricken. The fact that the parties to this point have both argued very forcefully in support of their positions clearly indicates that there are legitimate issues to be resolved and the Court should hear them.

                    Respectfully submitted,

                    ROBERT D. McCALLUM, Jr.
                    Assistant Attorney General
                    Civil Division

                    RICHARD M. EVANS
                    Assistant Director

                    for PAUL FIORINO, Attorney
                    Office of Immigration Litigation
                    Civil Division
                    U.S. Department of Justice
                    P.O. Box 878
                    Ben Franklin Station
                    Washington, D.C. 20044
                    (202) 353-9986

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the true and foregoing Response was mailed to Lisa Brodyaga, Attorney at Law, Landrum Park, San Benito, TX 78586 via Certified Mail, Return-Receipt Requested on September 11, 2002.

                                              for PAUL FIORINO
                                              Attorney