2ɭ

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 3 0 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUAN LARIN-ULLOA | * | |
| Petitioner, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. B-02-107 |
| | * | |
| DEPARTMENT OF JUSTICE | * | |
| IMMIGRATION AND | * | |
| NATURALIZATION SERVICE, | * | |
| Respondent. | * | |

**GOVERNMENT'S MOTION TO STRIKE PETITIONER'S UNTIMELY OPPOSITION
TO RESPONDENT'S MOTION TO HOLD THE INSTANT CASE IN ABEYANCE**

Respondent, the Immigration and Naturalization Service ("INS") moves to strike the

petitioner's two-week late opposition to a motion which the Court has already granted in favor

of the government. The Court granted the motion on October 7; the petitioner filed his

opposition two weeks later.

The Petitioner seeks to continue to litigate statutory claims while the constitutional

claims are pending before the Fifth Circuit. Petitioner should have raised this argument while

the government's motion to hold in abeyance was still pending before this Court. Petitioner

had a chance to state his opposition in a timely filed opposition to the motion and did not.

Accordingly, the petitioner's opposition is out of time. It should not be heard and should be

stricken.[1]

---

[1] As this is a motion to strike made under FRCP 12(f), it need not contain a certificate
of consultation, in accordance with local rule 7.1D and thus it contains none.

## CONCLUSION

For the foregoing reasons, the Respondent respectfully requests the Court to strike the

petitioner's untimely opposition.

Respectfully submitted,

ROBERT D. McCALLUM, Jr.
Assistant Attorney General
Civil Division

RICHARD M. EVANS
Assistant Director

*for* *Chin F. Jones, Assistant District Counsel, U.S.I.M.S.*
PAUL FIORINO, Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044
(202) 353-9986

-2-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing Response was mailed to Lisa Brodyaga, Attorney at Law, 17891 Landrum Park, San Benito, TX 78586 via Certified Mail, Return-Receipt Requested on October 30, 2002

PAUL FIORINO
Attorney

-4-

**United States District Court**
**Southern District of Texas**
**FILED**

**JUL 2 1 2003**

**Michael N. Milby**
**Clerk of Court**

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

JUAN LARIN-ULLOA,               )
   Petitioner,              )
                    )
v.                              )     C.A. B-02-107
                    )
JOHN ASHCROFT, et al.           )
————————————————————)

### EXHIBIT "I" IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS

Pages 7 through 12 of the removal hearing, conducted March 14, 2002, wherein prior counsel "admitted" that Mr. Larin had been convicted under K.S.A. §21-3414(a)(1)(A), but denied that it was a crime of violence, and therefore, an aggravated felony, on the grounds that by denying the legal consequences of his admission, he thought he could thereby preserve Mr. Larin's eligibility for relief in the form of Temporary Protected Status.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226                  Fed. ID.  1178
(956) 421-3423 (fax)            Texas Bar 03052800

### CERTIFICATE OF SERVICE

I certify that on July 21, 2003, a copy of the foregoing, with attachment was mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044.

U.S. Department of Justice
Executive Office for Immigration Review
Immigration Court

Matter of                                    File No.:  A 92 800 131

                                    )
JUAN LARIN-ULLOA,                   )          IN REMOVAL PROCEEDINGS
                                    )
         Respondent                 )          Transcript of Hearing
                                    )

Before ELEAZAR TOVAR, Immigration Judge

Date: March 14, 2002                   Place: Los Fresnos, Texas

Transcribed by DEPOSITION SERVICES, INC. At Rockville, Maryland

Official Interpreter: Noelia Jenkins

Language: Spanish

Appearances:

        For the Immigration and      For the Respondent:
        Naturalization Service:

                                     James S. Phillips, Jr.,
                                Esquire

bjs

1    JUDGE FOR THE RECORD

2           Today's date is March 14, 2002.  It's Immigration Judge

3    Eleazar Tovar in Los Fresnos, Texas presiding over the matter of

4    Juan Larin-Ulloa, file A 92 800 131.

5    JUDGE TO MR. LARIN

6           Q.   Mr. Larin, what language do you understand and

7    speak the best, sir?

8           A.   Spanish.

9    JUDGE FOR THE RECORD

10          Therefore, we'll proceed with the benefit of the EOIR

11   Spanish interpreter.

12   JUDGE TO INTERPRETER

13          Q.   Whose name is?

14          A.   Noelia Jenkins.

15   JUDGE TO MR. PHILLIPS

16          Q.   Representing the respondent?

17          A.   James S. Phillips, Jr., for the respondent.

18   JUDGE TO INS ATTORNEY

19          Q.   And for the Service?

20          A.   (Indiscernible.)

21   JUDGE TO MR. PHILLIPS

22          Q.   Mr. Phillips, is the respondent ready to pled to

23   the charges on the Notice to Appear?

24          A.   He's ready to go ahead with this hearing, Your

25   Honor, yes.

A 92 800 131                    7                    March 14, 2002

ɔjs

1          Q.    How does he plead to the six factual allegations?

2     Let's go down --

3          A.    All right, as to number 1 that is agreed to.

4          Q.    He's not a citizen or national of the United

5     States?

6          A.    Right.

7          Q.    He's a native of El Salvador, citizen of El

8     Salvador?

9          A.    Yes, that is admitted.

10         Q.    And did he entered the United States at or near El

11    Paso, Texas on or May 11, 1981?

12         A.    That is admitted.

13         Q.    At that time, is it true that he entered without

14    inspection?

15         A.    That is admitted.

16         Q.    And number 5, is it true that he was adjusted to a

17    lawful permanent resident on November 20, 1989, under 245(a) of

18    the Act?

19         A.    Yes, that is admitted.

20         Q.    Okay.  And was he on March 20, 2000, convicted in

21    the District Court of Sedgwick County at Wichita, Kansas for the

22    offense of aggravated battery in violation of KSA21-3414A1A for

23    which a 12-month sentence was imposed?

24         A.    That is admitted.

25         Q.    Okay.  And does respondent concede that pursuant

bjs

1    to Section to 237(a)(2)(A)(iii) of the Immigration and

2    Nationality Act, as amended, in that at any time after admission

3    he's been convicted of an aggravated felony as defined in Section

4    101(a)(43)(F) of the Act and, therefore, he's subject to removal?

5              A.    He's going to deny that, Your Honor.

6              Q.    Okay.  The Service has submitted to the Court

7    conviction documents, and those are marked as Exhibit 2.  Any

8    objection to the conviction documents, Mr. --

9              A.    I have reviewed it, Your Honor, it appears to be a

10   certified copy --

11             Q.    Yes.  And --

12             A.    -- (indiscernible).

13             Q.    And I paginated them at the last hearing, 1

14   through 15, any objection to the documents in Exhibit 2?

15             A.    What's that, Your Honor?

16             Q.    Any objection to its admission?

17             A.    No objection.

18   JUDGE FOR THE RECORD

19             So Exhibit 2, pages 1 through 15, are hereby admitted

20   into the record.

21   JUDGE TO MR. PHILLIPS

22             Q.    Now the issue is is this conviction an aggravated

23   felony as respondent is denying that it's an aggravated felony.

24   And the basis for that Mr. --

25             A.    Well, our argument, Your Honor, is that, one

ɔjs

1   reason we don't want to make this admission is because, one

2   argument we want to make is that he may be eligible for TPS,

3   temporary protective status, since he's from El Salvador.

4          Q.   Presently he's a permanent resident.

5          A.   Yes, I understand.  But I mean, he also may be

6   eligible for TPS even if he's deportable.  That's our position.

7          Q.   Okay.

8          A.   Even if he would be deported or removed or have a

9   removal order --

10         A.   Okay.

11         Q.   -- that he's eligible for TPS.  Now we recognize

12  as the grant of TPS refers to felonies, it applies the asylum

13  standards for pretty serious exception, pretty serious offense,

14  and it's our position that whether this was constituted pretty

15  serious offense maybe depend on the particular facts because this

16  was a sentence less than five years.  He was given --

17         A.   (Indiscernible.)  Right now what we're dealing

18  with, I understand you're talking about relief, and right now

19  we're --

20         Q.   Well --

21         A.   I'm putting the cart before the horse, we haven't

22  gotten to whether or not he's subject to removal.

23         Q.   Well, I understand.  I'm just arguing that

24  although the felony itself may be evidence of a pretty serious

25  crime --

bjs

1          A.   Well, right now what I'm dealing with, later on we

2     can deal with whether or not it's particularly serious crime or

3     not.  Right now what we're dealing with is is this or not an

4     aggravated felony and does it fit within the definition of an

5     aggravated felony.  I believe the Service is proceeding under

6     101(a)(43)(F) which is --

7     JUDGE TO INS ATTORNEY

8          Q.   Is that a crime of violence, Ms. --

9          A.   I believe so, Your Honor.

10    JUDGE TO MR. PHILLIPS

11         Q.   It's a crime of violence.  So they're proceeding

12    under a crime of violence, aggravated battery, is that a crime of

13    violence because it fits within that category.  And so,

14    therefore, I was asking what's your argument as to why it's not a

15    crime of violence under 101(a)(43)(F)?

16         A.   Well, as I say, I don't really want to make that

17    admission because I'm not sure he would be eligible to make that

18    argument for TPS if he makes that admission.

19    JUDGE FOR THE RECORD

20         Hold on, let me go get my (indiscernible).  Off the

21    record.

22                         (OFF THE RECORD)

23                         (ON THE RECORD)

24    JUDGE FOR THE RECORD

25         Back on the record.

A 92 800 131                    11              March 14, 2002

bjs

1          The 101(a)(43)(F) is a crime of violence

2     (indiscernible) is it or is it not a crime of violence then.  I

3     think based on what I'm reading here that the documents submitted

4     which are Exhibit 2, unless there's something that I'm seeing,

5     I'm going to find that it is a crime of violence, Mr. Phillips.

6     MR. PHILLIPS TO JUDGE

7          Q.   All right.

8          A.   So, therefore --

9     JUDGE FOR THE RECORD

10         Off the record.

11                         (OFF THE RECORD)

12                         (ON THE RECORD)

13    JUDGE FOR THE RECORD

14         Based on Exhibit 2, the Court finds the respondent is

15    subject to removal as the respondent has been convicted with

16    aggravated battery which is a crime of violence.

17    JUDGE TO MR. PHILLIPS

18         Q.   Does your client wish to designate a country for

19    removal in case it becomes necessary?

20         A.   He'll decline, Your Honor.

21         Q.   Okay.

22    JUDGE FOR THE RECORD

23         Therefore, the Court will designate El Salvador if

24    removal is necessary.

25    JUDGE TO MR. PHILLIPS

A 92 800 131                    12                  March 14, 2002

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 1 2003

Michael N. Milby
Clerk of Court

JUAN LARIN-ULLOA,          )
    Petitioner,            )
                           )
v.                         )          C.A. B-02-107
                           )
JOHN ASHCROFT, et al.      )
_____)

EXHIBIT "J" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Pleadings relating to Mr. Larin's request for a *Joseph* bond hearing, based on the ineffective assistance of prior counsel.

Attached are: 1. Request for hearing, dated May 19, 2003; 2. Points and Authorities in support thereof, filed May 19, 2003; including the alleged conviction documents, pertinent Kansas cases. Although not attached hereto, the filing also included a copy of Mr. Larin's brief on the merits to the BIA, with documentation showing compliance with *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), in or to show likelihood of success on the merits; 3. Judge's denial of bond, and memorandum in support of denial; 4. Appeal from denial of bond, and brief in support thereof.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I certify that on July 21, 2003, a copy of the foregoing, with attachments was mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE IMMIGRATION JUDGE

In re

JUAN LARIN-ULLOA
A92 800 131

RESPONDENT'S MOTION FOR JOSEPH BOND HEARING

Respondent, through counsel, hereby requests a bond hearing, in accordance with *Demore v. Kim*, 123 S.Ct. 1708 (2003). At said hearing, Respondent would show that the purported conviction upon which the Government relies is void under Kansas law, as the Information fails to state the necessary elements of the offense. Copies of the Complaint/Information, the pertinent statutes, and decisional law, are attached for the Court's convenience.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing, with attachments, was personally delivered to the DHS District Counsel, 1709 Zoy St, Harlingen, Texas, on May 19, 2003.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE IMMIGRATION JUDGE

In re

JUAN LARIN-ULLOA
A92 800 131

POINTS AND AUTHORITIES IN SUPPORT OF
RESPONDENT'S MOTION FOR JOSEPH BOND HEARING

Respondent, through counsel, hereby files the instant points and
authorities in support of his request for a bond hearing, in
accordance with *Demore v. Kim*, 123 S.Ct. 1708 (2003).


As seen from the Notice to Appear as found in the record of
proceedings, with the notes made by the Immigration Judge as to how
Respondent pled to the allegations, (all of which were admitted),
prior counsel made an extremely important error, one which was also
overlooked by the Immigration Judge.   Counsel "admitted" that
Respondent's conviction was under Kansas Statutes Annotated 21-
3414(a)(1)(A), and the Immigration Judge followed that erroneous
admission, finding that the Respondent had been convicted of an
aggravated felony. This is incorrect.  The Complaint showed on its
face that it had been redacted by interlineation, and the offense
to which Respondent pled guilty was **not** K.S.A. 21-3414(a)(1)(A). To
the contrary, the redacted Complaint fails to charge an offense.


The redacted Complaint/Information, reads in its entirety:

> **COMES NOW** MARGARET A. MCINTIRE, a duly appointed,
> qualified and acting Assistant District Attorney of the
> 18th Judicial District of the State of Kansas, and for
> and on behalf of said State gives the court to understand
> and be informed that in the County of Sedgwick, and State
> of Kansas, and on or about the 22nd day of August, 1999,
> A.D., one JUAN * LARIN did then and there unlawfully,
> intentionally, in a manner whereby [he] could have [?]
> cause great bodily harm or disfigurement to another
> person, to wit, Isarael Rosas;

Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 7, Person Felony.

K.S. 21-3414 provides, in totality, as follows:

21-3414. Aggravated battery.
(a) Aggravated battery is:
(1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or -
(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or
(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.
(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

Even though the statutory section of the printed form was not amended, when the Complaint is viewed in the context of Kansas Statutes 21-3414, it is clear that while it initially charged a violation of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a level 4 offense), it was amended, by interlineation, in an attempt to charge a level 7 offense. However, the language of the Complaint, as amended, is a grammatical non sequitur. It has no verb, and does not say **what** it was that the Respondent did, "in a manner which could have... cause[d] greatly bodily harm or disfigurement" to Mr. Rosas, and is fatally defective.

As amended, the Information not only fails to charge the offense of which Mr. Larin was "convicted," it fails to charge **anything.** No degree of liberal construction can save it.  As held in *Kansas v. Hall,* 793 P.2d 737, 764 (S.Ct.Kans 1990) (emphasis added):

> Tardily challenged informations are to be construed liberally in favor of validity.  The validity of an information is to be tested by reading the information as a whole.  The elements of the offense may be gleaned from the information as a whole.  **An information not challenged before verdict or finding of guilty or pursuant to K.S.A. 22-3502 by a motion for arrest of judgment will be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.** *United States v. Watkins,* 709 F.2d at 478.

Even more to the point is *Kansas v. Howell,* 601 P.2d 1141, 1143 (S.Ct.Kan. 1979) (emphasis added):

> In a felony action, the indictment or information is the jurisdictional instrument upon which the accused stands trial. *State v. Minor,* 197 Kan. 296, Syl. para. 5, 416 P.2d 724 (1966).
>
> **A conviction based upon an information which does not sufficiently charge the offense for which the person is convicted is void.** *State v. Daniels,* 223 Kan. 266, Syl. para. 4, 573 P.2d 607 (1977); *State v. Minor,* 197 Kan. 296.
>
> If the facts alleged in a complaint or information do not constitute an offense in the terms and meaning of the statute upon which it is based, a complaint or information is fatally defective.

It is hornbook law that the Immigration Court cannot go behind a conviction, unless that conviction is void on its face.  *See, e.g., Matter of Rodriguez-Carrillo,* 22 I. & N. Dec. 1031 (BIA 1999) (emphasis added):

3

> [I]t is clear that an Immigration Judge and the Board
> cannot entertain a collateral attack on a judgment of
> conviction, **unless that judgment is void on its face**, and
> cannot go behind the judicial record to determine the
> guilt or innocence of an alien. See Matter of Madrigal,
> Interim Decision 3274 (BIA 1996).

It is respectfully submitted that the case at bar is one of the few instances where that test is met. The Complaint/Information is fatally defective. It fails to charge *anything*, much less an offense under KSA 21-3414. Pursuant to *Kansas v. Howell, supra,* it is void. And since it is void, on its face, it cannot support the charge of removability, even though Mr. Larin has not previously challenged it in Kansas. Therefore, Mr. Larin should be released forthwith, pursuant to *Demore v. Kim, supra,* and *Matter of Joseph,* 22 I&N Dec. 799 (BIA 1999).

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was personally delivered to the DHS District Counsel, 1709 Zoy St, Harlingen, Texas, on May 19, 2003.

4

IN THE DISTRICT COURT OF KANSAS
EIGHTEENTH JUDICIAL DISTRICT
SEDGWICK COUNTY, CRIMINAL DEPARTMENT

THE STATE OF KANSAS )
                        *Plaintiff,* )
                             )
                             )
vs.                          )
                             )
                             )
JUAN * LARIN,                )
H/M, DOB: 05/15/55,          )
SSN: 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,            )
                        *Defendant.* )
_____)

Case No. **99CR2312**

## COMPLAINT/INFORMATION
### COUNT ONE

     **COMES NOW** MARGARET A. MCINTIRE, a duly appointed, qualified and acting Assistant District Attorney of the 18th Judicial District of the State of Kansas, and for and on behalf of said State gives the court to understand and be informed that in the County of Sedgwick, and State of Kansas, and on or about the 22nd day of August, 1999, A.D., one JUAN * LARIN did then and there unlawfully, intentionally *in a manner which he could have caused* cause great bodily harm or disfigurement to another person, to-wit: Isarael Rosas;

*Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 4,*
*Person Felony*

000066

13

all of the said acts then and there committed being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Kansas.

99CR2312

_Margaret A. McIntire_
MARGARET A. McINTIRE, #13207
Assistant District Attorney

*State Of Kansas*     )
                  ) ss:
*Sedgwick County*   )

M. E. SILVA, being first duly sworn, states that I have read the above and foregoing Complaint/Information and know the contents thereof, and that the same is true in substance and in fact.

_Michael E. Silva_ 1389
M. E. SILVA
Complaining Witness

SUBSCRIBED AND SWORN to before me on this 24th day of _August_, 1999

DONNA J. MONAREZ
NOTARY PUBLIC
STATE OF Kansas
My Appt. Exp. 1-9-2000

_Donna J. Monarez_
NOTARY PUBLIC

*State Of Kansas*     )
                  ) ss:
*Sedgwick County*   )

MARGARET A. McINTIRE, Assistant District Attorney for the 18th Judicial District of Kansas, within and for said State, being first duly sworn states that I have read the above and foregoing Complaint/Information and know the content thereof, and that the same is true in substance and in fact to my best information and belief.

_Margaret A. McIntire_
MARGARET A. McINTIRE, #13207
Assistant District Attorney

SUBSCRIBED AND SWORN to before me on this 24 day of _Aug_, 1999.

_[signature]_
JUDGE OF THE DISTRICT COURT

STATE WITNESSES:
CW: DET. M. E. SILVA, #1389, WPD (99C78280)

[STATE'S WITNESS LIST CONTINUED]

SEAL

Certificate of Clerk of the District Court. The above is a true and correct copy of the original instrument which is on file or of record in this court.
Dated this _____ day of _January_ 2002
CLERK OF THE DISTRICT COURT
18th JUDICIAL DISTRICT
SEDGWICK COUNTY, KANSAS
By _____

000067

14

99CR2312

STATE'S WITNESS LIST - LARIN - 99C78280

Off. J. Barrier, #1625, WPD
Off. E. Padron, #1722, WPD
Off. P. Marshall, #1773, WPD
Off. D. Halverson, #1611, WPD
Off. Tejeda, #1782, WPD
Lab. Inv. Siwek, #V0967, WPD
Dr. Fakhani
Records Custodian,                    DUCES TECUM
   Wesley Medical Center
Isarael R. Rosas
Tracy R. Wiebe
Hope M. Grim

djm/MAM/WPD
08/24/99

K.S. 21-3414 provides, in totality, as follows:

    21-3414. Aggravated battery.
    (a) Aggravated battery is:
    (1) (A) Intentionally causing great bodily harm to
another person or disfigurement of another person; or
    (B) intentionally causing bodily harm to another person
with a deadly weapon, or in any manner whereby great
bodily harm, disfigurement or death can be inflicted; or
    (C) intentionally causing physical contact with another
person when done in a rude, insulting or angry manner
with a deadly weapon, or in any manner whereby great
bodily harm, disfigurement or death can be inflicted; or
    (2) (A) recklessly causing great bodily harm to another
person or disfigurement of another person; or
    (B) recklessly causing bodily harm to another person with
a deadly weapon, or in any manner whereby great bodily
harm, disfigurement or death can be inflicted.
    (b) Aggravated battery as described in subsection
(a)(1)(A) is a severity level 4, person felony.
Aggravated battery as described in subsections (a)(1)(B)
and (a)(1)(C) is a severity level 7, person felony.
Aggravated battery as described in subsection (a)(2)(A)
is a severity level 5, person felony. Aggravated battery
as described in subsection (a)(2)(B) is a severity level
8, person felony. A person convicted of aggravated
battery shall be subject to the provisions of subsection
(h) of K.S.A. 21-4704 and amendments thereto.

---

*226 Kan. 511, \*; 601 P.2d 1141, \*\*;*
*1979 Kan. LEXIS 347, \*\*\**

---

State of Kansas, Appellee, v. Gary E. Howell and Gary J. Taylor,
Appellants

No. 50,723

Supreme Court of Kansas

226 Kan. 511; 601 P.2d 1141; 1979 Kan. LEXIS 347

October 27, 1979, Opinion Filed
**PRIOR HISTORY:** [\*\*\*1]
Appeal from Ford District Court; Jay Don Reynolds, Associate
Judge.

**DISPOSITION:** Affirmed in part and reversed in part.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants sought review of the
judgment of the Ford District Court (Kansas), which
convicted defendants of aggravated assault on a law
enforcement officer in violation of Kan. Stat. Ann. §§ 21-
3411 and aggravated robbery in violation of Kan. Stat.
Ann. §§ 21-3427.

**OVERVIEW:** On appeal, defendants contended that the trial
court erred in overruling defendants' motion to quash the
aggravated robbery count in the information. The trial
court held that the count pursuant to Kan. Stat. Ann. §§
22-3201(4) (Supp. 1978) was legally sufficient in that it
alleged that the taking of property occurred while
defendants were armed with a dangerous weapon. Defendants
contended that count two of the indictment was
jurisdictionally defective as an element on the crime was
wholly absent. The court found that the information was
fatally defective, and the trial court lacked jurisdiction
to try defendants for aggravated robbery. The court found
that the failure of the information charging defendants
with taking property from the victim while armed with a
dangerous weapon to charge that the taking was by force
was fatally defective. The court reversed defendants'
convictions of aggravated robbery. The court affirmed
defendants convictions of aggravated assault of a law

enforcement officer because the firing at the officer was
a sufficient communicated intent to inflict physical harm
to constitute a threat under Kan. Stat. Ann. §§ 21-
3110(24) (Supp. 1978)

**OUTCOME:** The court affirmed the trial court's judgment as
to defendants' convictions of aggravated assault on a law
enforcement officer. The court reversed the trial court's
judgment as to defendants' convictions of aggravated
robbery.

OPINIONBY: McFARLAND

**OPINION:** [*511] [**1142] This is a direct appeal by defendants
Gary E. Howell and Gary J. Taylor from their convictions of
aggravated assault on a law enforcement officer ( K.S.A. 21-3411)
and aggravated robbery ( K.S.A. 21-3427). Each defendant was also
convicted of unlawful restraint ( K.S.A. 21-3424), but said
convictions are not before us on appeal.

The case involves a complex factual situation. By virtue of the
narrow issues raised on appeal, only such facts as are necessary
for their determination will be included herein.

The first point on appeal is whether the trial [***3] court erred
in overruling the defendants' motion to quash the aggravated
robbery count in the information. This count (Count Two) reads as
follows:

[*512] "That on or about the 20th day of June, 1978, the said
Gary E. Howell & Gary J. Taylor, within the above and within
named County and State, then and there being, did then and there
contrary to the statutes of the State of Kansas unlawfully
feloniously and willfully take property, to-wit: a 1975 Dodge
Van, red and black in color, license tag #FO8759, from the person
of Gene Swarz, while the said Gary E. Howell & Gary J. Taylor
were armed with a dangerous weapon, to-wit: a pistol in violation
of K.S.A. 21-3427. Aggravated Robbery is a Class B felony
pursuant to K.S.A. 21-4501(b)."

After the State rested its case defendants moved to quash Count
Two on the ground that it alleged no crime, as the element of
aggravated robbery, requiring the taking to be by force or threat
of bodily harm, was absent.

The State did not request amendment of the count pursuant to

K.S.A. 1978 Supp. 22-3201(4) and took the position that the count
was legally sufficient. The trial court overruled the motion,
holding the count to be legally sufficient [***4] in that it
alleged the taking of property occurred while the defendants were
armed with a dangerous weapon.

The statutes or relevant parts thereof are as follows:

K.S.A. 21-3426. Robbery.

"Robbery is the taking of property from the person or presence of
another by threat of bodily harm to his person or the person of
another or by force."

K.S.A. 21-3427. Aggravated robbery.

[**1143] "Aggravated robbery is a robbery committed by a person
who is armed with a dangerous weapon or who inflicts bodily harm
upon any person in the course of such robbery."

K.S.A. 1978 Supp. 22-3201. The charge.

"(2) The complaint, information or indictment shall be a plain
and concise written statement of the essential facts constituting
the crime charged, which complaint, information or indictment,
drawn in the language of the statute, shall be deemed
sufficient."

Defendants contend Count Two is jurisdictionally defective, as an
element of the crime is wholly absent. The State contends the
information was legally sufficient because:

    1. K.S.A. 21-3427, by requiring the use of either a weapon
    or great bodily harm, relieves the State of the requirement
    of specifically setting forth in the information [***5] that
    any threats were used or force applied in the taking of
    property. The allegation that defendants had a deadly weapon
    was sufficient to convey the meaning that the taking of the
    property from the [*513] person of another was accomplished
    by force or threat of bodily harm.
    2. Count Two follows the format prescribed by the Kansas
    County and District Attorneys Association, *Prosecutor's Desk
    Manual* (rev. 1976).

In the case before us the jury was properly instructed on the
elements of aggravated robbery, including the element missing
from the information.

3

A similar question was raised in *United States v. Denmon,* 483
F.2d 1093 (8th Cir. 1973). The Eighth Circuit reversed a
conviction of selling stolen property for failure to allege in
the indictment that the defendant acted knowingly, unlawfully and
willfully, and rejected the government's argument that proper
instructions remedied the defect. The court held, 483 F.2d at
1095:

"However, the failure of the indictment to charge that the
defendant acted knowingly, unlawfully, and wilfully is fatally
defective to the Government's prosecution of this indictment.
Morisette v. United States, 342 U.S. 246, 72 S. Ct. 240, [***6]
96 L. Ed. 288 (1952), holds that a criminal intent is an
essential element of an offense under §§ 641. Despite this fact,
the Government contends that the trial court's proper instruction
requiring a finding of criminal intent has remedied the defect in
the indictment. We think a defect of the type present in this
case is more than a matter of mere form or technical pleading and
constitutes a substantive defect in the indictment. It is
elementary in American jurisprudence that an indictment must set
forth the essential elements of the offense charged, and if it
does not, a conviction based thereon is fatally defective."

*Denmon* is in accord with Kansas case law.

In a felony action, the indictment or information is the
jurisdictional instrument upon which the accused stands trial.
*State v. Minor,* 197 Kan. 296, Syl. para. 5, 416 P.2d 724 (1966).

A conviction based upon an information which does not
sufficiently charge the offense for which the person is convicted
is void. *State v. Daniels,* 223 Kan. 266, Syl. para. 4, 573 P.2d
607 (1977); *State v. Minor,* 197 Kan. 296.

If the facts alleged in a complaint or information do not
constitute an offense in the terms [***7] and meaning of the
statute upon which it is based, a complaint or information is
fatally defective. *State v. Doyen,* 224 Kan. 482, 488, 580 P.2d
1351 (1978); *State v. Bishop,* 215 Kan. 481, Syl. para. 1, 524
P.2d 712 (1974).

A governing rule is that if the allegations of an information may
be true and the defendant still is innocent of the offense
defined [*514] by the statute the information is jurisdictionally

defective. *State v. Jamieson,* 206 Kan. 491, Syl. para. 2, 480 P.2d 87 (1971).

If the information is fatally defective the district court lacked jurisdiction to try defendants for aggravated robbery and their convictions for same are void. The evidence introduced at trial to show commission [**1144] of the crime sought to have been charged and the jury instructions thereon have no bearing on this question.

The failure of the information charging defendants with taking property from the person of Gene Swarz while armed with a dangerous weapon to charge that the taking was by force or by threat of bodily harm, was fatally defective to the State's prosecution of the information. The taking could have been lawful. It is not a crime to take property while [***8] armed with a dangerous weapon. The additional element of taking by force or by threat of bodily harm is an essential element of the crime.

The defendants' convictions of aggravated robbery are reversed. Inasmuch as the statute of limitations has not run, the county attorney may, in his discretion, commence a new prosecution for this offense on proper complaint and information.

The second point on appeal is whether the trial court erred in overruling defendants' motion for dismissal or for a directed verdict on the charge of aggravated assault on a law enforcement officer.

The relevant facts are as follows: A state highway patrol trooper observed a van exceeding the speed limit on Highway 50 near Dodge City. As he was turning around to pursue the vehicle he received a radio transmission describing the stolen Swarz vehicle. He pulled close enough to the van to observe the license tags. At that point a person on the passenger's side commenced firing at him. The trooper pursued the vehicle. Ultimately, the vehicle stopped and both its occupants fired at the officer. The chase then resumed with defendants eventually stopping and surrendering.

Defendants were charged in Count [***9] One as follows:

"That on or about the 20th day of June, 1978, the said Gary E. Howell & Gary J. Taylor, within the above and within named County and State, then and there being, did then and there contrary to the statutes of the State of Kansas unlawfully feloniously,

5

willfully and intentionally threaten to do bodily harm to a
properly identified State Law Enforcement Officer, to-wit: Arlyn
Salmans while said officer was engaged in the performance of his
duty, with a deadly weapon, to-wit: a pistol which resulted in
the immediate apprehension of bodily harm to the said person of
Arlyn Salmans, in violation of K.S.A. 21-3411. Aggravated Assault
on a Law Enforcement Officer is a Class C felony pursuant to
K.S.A. 21-4501(c)."

[*515] The statutes involved, in relevant part, are as follows:

K.S.A. 21-3408. Assault.

"An assault is an intentional threat or attempt to do bodily harm
to another coupled with apparent ability and resulting in
immediate apprehension of bodily harm. No bodily contact is
necessary."

K.S.A. 21-3410. Aggravated assault.

"Aggravated assault is:

"(a) Unlawfully assaulting or striking at another with a deadly
weapon; or

"(b) Committing assault [***10] by threatening or menacing
another while disguised in any manner designed to conceal
identity; or

"(c) Willfully and intentionally assaulting another with intent
to commit any felony."

K.S.A. 21-3411. Aggravated assault on a law enforcement officer.

"Aggravated assault of a law enforcement officer is an aggravated
assault, as defined in section 21-3410, committed against a
uniformed or properly identified state, county or city law
enforcement officer while such officer is engaged in the
performance of his duty."

The information charges the defendants "did . . . threaten to do
bodily harm."

"Threat" is defined by K.S.A. 1978 Supp. 21-3110 (24) as a
"communicated intent to inflict physical or other harm on any
person or on property" and the jury was so instructed. Defendants
contend "communicated intent" is restricted to verbal

communication. Black's Law Dictionary 349 (4th ed. rev. 1968) defines "communicate" as "to bestow, convey, make known, recount, impart; to give by way of information."

[**1145] Under the circumstances herein defendants could have been charged in the language of an "attempt to do bodily harm" or "striking at another with a deadly weapon." The firing [***11] at the officer, however, was a sufficient communicated intent to inflict physical harm to constitute a threat as defined by K.S.A. 1978 Supp. 21-3110 (24).

No error is shown in the convictions of aggravated assault on a law enforcement officer.

The judgment is affirmed as to defendants' convictions of aggravated assault on a law enforcement officer and reversed as to defendants' convictions of aggravated robbery.

---

7

Kansas Statutes

§22-3201. The charge; delayed identification of certain witnesses.

(a) Prosecutions in the district court shall be upon complaint, indictment or information.

(b) The complaint, information or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, drawn in the language of the statute, shall be deemed sufficient. The precise time of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense. An indictment shall be signed by the presiding juror of the grand jury. An information shall be signed by the county attorney, the attorney general or any legally appointed assistant or deputy of either. A complaint shall be signed by some person with knowledge of the facts. Allegations made in one count may be incorporated by reference in another count. The complaint, information or indictment shall state for each count the official or customary citation of the statute, rule and regulation or other provision of law which the defendant is alleged to have violated. Error in the citation or its omission shall be not ground for dismissal of the complaint, information or indictment or for reversal of a conviction if the error or omission did not prejudice the defendant.

(c) When relevant, the complaint, information or indictment shall also allege facts sufficient to constitute a crime or specific crime subcategory in the crime seriousness scale.

(d) The court may strike surplusage from the complaint, information or indictment.

(e) The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.

(f) When a complaint, information or indictment charges a crime but fails to specify the particulars of the crime sufficiently to enable the defendant to prepare a defense the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial the state's evidence shall be confined to the particulars of the bill.

(g) Except as otherwise provided, the prosecuting attorney shall endorse the names of all witnesses known to the prosecuting

attorney upon the complaint, information and indictment at the time of filing it. Except as otherwise provided, the prosecuting attorney may endorse on it the names of other witnesses that may afterward become known to the prosecuting attorney, at times that the court may by rule or otherwise prescribe. If any witness is to testify and the prosecuting attorney believes the witness who has provided information is in danger of intimidation or retaliation, the prosecuting attorney may delay identifying such informant witness until such informant witness actually testifies but in no event shall identification of a witness be delayed beyond arraignment without further order of the court after hearing and an opportunity of the defendant to be heard.

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

LEXSEE 1990 Kan. LEXIS 124

State of Kansas, Appellee, v. Gary Lee Hall, Appellant

No. 61,955

Supreme Court of Kansas

246 Kan. 728; 793 P.2d 737; 1990 Kan. LEXIS 124

May 31, 1990, Opinion Filed

**PRIOR HISTORY:**
 [***1]
Appeal from Scott district court; J. Stephen Nyswonger, judge.

**DISPOSITION:**
   Affirmed in part and reversed in part.

**SYLLABUS:**

   SYLLABUS BY THE COURT

1. EVIDENCE -- *Other Crimes Evidence -- Admissibility.*   Admissibility of
evidence of other crimes under K.S.A. 60-455 is to be determined by the trial
judge prior to the trial and outside the presence of the jury.  In ruling on the
admissibility of the proffered evidence, the trial court must: (1) determine it
is relevant to prove one of the facts specified in the statute; (2) determine
that fact is a disputed, material fact; and (3) balance the probative value of
the prior crimes evidence against its tendency to prejudice the jury.

2. EVIDENCE -- *Other Crimes Evidence -- Limiting Instruction -- Timing of Giving
Instruction Left to Trial Court Discretion.*   The timing of any limiting
instruction to be given upon the admission of K.S.A. 60-455 testimony is best
left to the discretion of the trial court.

3. EVIDENCE -- *Rebuttal Evidence.*   Rebuttal evidence is that which contradicts
evidence introduced by an opposing party.  It may be offered to corroborate
evidence of a party who first presented evidence on the particular issue, or it
may refute [***2]  or deny some affirmative fact which an opposing party has
attempted to prove.

4. EVIDENCE -- *Character Trait as Proof of Conduct -- When Testimony of Accused
or Other Witness for Defense Goes beyond Bounds Protected by K.S.A. 60-447.*
Where the accused testifies on his or her own behalf, the biographical data will
naturally be more extensive than that of an ordinary witness.  A defendant is
entitled, like any other witness, to let the jury know who he or she is so it
may properly fit defendant into the pattern of events brought out at the trial.
When the testimony of either the defendant or any other witness for the defense

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

goes beyond those bounds and attempts to characterize the defendant's past life
as blemish-free, or makes reference to specific prior incidents, defendant
foregoes, to that extent, the protection of K.S.A. 60-447(b).

5. EVIDENCE -- *Credibility of Witness -- Evidence of Prior Drug Offenses May Not
Be Used to Impeach Credibility.*   Drug offenses are not crimes involving
dishonesty and, therefore, cannot be admitted for the purpose of impeaching the
credibility of a witness.

6. CRIMINAL LAW -- *Felony Murder -- Felony Theft as Underlying Felony Sufficient*
[***3]   *to Sustain Conviction for Felony Murder.*   Felony theft by obtaining or
exerting unauthorized control over property, K.S.A. 21-3701(a), and obtaining by
threat control over property, K.S.A. 21-3701(c), when considered in the
abstract, are felonies inherently dangerous to human life and will sustain a
conviction for murder in the first degree under the felony-murder rule.

7. CRIMINAL LAW -- *Theft -- Unlawful Deprivation of Property Not Lesser Included
Offense When No Evidence of Defendant's Intent to Restore.*   In a prosecution for
theft, it is not error for the trial court to fail to instruct on unlawful
deprivation of property as a lesser included offense where the record presented
contains no evidence of any intent of defendant to restore the property to its
owner.

8. TRIAL -- *Jury's Request for Supplemental Instruction -- Trial Court
Discretion -- Counsels' Agreement as to Court's Response.*   A trial court's
response to a jury's request for supplemental instructions is not an abuse of
discretion when both counsel agreed to such response.

9. APPEAL AND ERROR -- *Ineffective Assistance of Counsel.*   The allegation that
the defendant had ineffective counsel will not [***4]   be considered for the
first time on appeal.

10. CRIMINAL LAW -- *Indictment or Information -- Defective Information --
Failure of Information to Include Word "Permanently" in Charging Theft.*   An
information which omits the word "permanently" in charging theft in violation of
K.S.A. 21-3701(a) has omitted an essential element of the crime and is fatally
defective.   Reversal of a conviction on that offense is required under the case
law existing at the time of the trial of the instant case.

11. INDICTMENT AND INFORMATION -- *Defective Information -- Appellate Review.*
The frequency with which the Kansas appellate courts are required to consider
questions of possible prejudice to defendants arising out of claimed defects in
complaints, informations, or indictments reveals the need on the part of some
prosecutors to exercise more care in the initial preparation of the charging
document.

12. INDICTMENT AND INFORMATION -- *Defective Information -- Issue Raised for
First Time on Appeal -- Prospective Rule for Appellate Review.*   Prospectively,
for all informations filed after the date of this opinion, we adopt the
following rule: Information defect challenges raised for the [***5]   first time
on appeal shall be reviewed by applying (1) the reasoning of K.S.A. 22-3201(4)
complaint/information/indictment amendment cases as expressed in *State v.
Switzer*, 244 Kan. 449, 769 P.2d 645 (1989), *State v. Nunn*, 244 Kan. 207, 768
P.2d 268 (1988), and *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988), as

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

that reasoning relates to jurisdiction and the substantial rights of the
defendant; (2) the "common-sense" test of *State v. Wade*, 244 Kan. 136, 766 P.2d
811 (1989), and *State v. Micheaux*, 242 Kan. 192, 747 P.2d 784 (1987); and (3)
the rationale of *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert.
denied* 429 U.S. 1099 (1977). Of paramount importance, we shall look to whether
the claimed defect in the information has: (a) prejudiced the defendant in the
preparation of his or her defense; (b) impaired in any way defendant's ability
to plead the conviction in any subsequent prosecution; or (c) limited in any way
defendant's substantial rights to a fair trial **[***6]** under the guarantees of
the Sixth Amendment to the United States Constitution and the Kansas
Constitution Bill of Rights, § 10. If a defendant is able to establish a claim
under either (a), (b), or (c), the defective information claim, raised for the
first time on appeal, will be allowed. All prior cases decided contrary to this
rule are overruled.

13. INDICTMENT AND INFORMATION -- *Defective Information* -- *Issue Raised for
First Time on Appeal* -- *Appellate Review*. When an information filed in the
trial court after the date of this opinion is claimed for the first time on
appeal to be defective:

(a) The sufficiency of the information should be determined on the basis of
practical rather than technical considerations. Common sense is a better guide
than arbitrary and artificial rules.

(b) The information is sufficient, even if an essential averment is faulty in
form, if by a fair construction the essential averment may be found within the
text. All parts of the pleading must be looked to in determining its
sufficiency.

(c) Defects in the institution of the prosecution or in the information,
other than lack of jurisdiction or the failure to charge a crime, are waived if
not **[***7]** raised by motion prior to trial.

(d) K.S.A. 1989 Supp. 22-3208(3) states that lack of jurisdiction or the
failure of the information to charge a crime shall be noticed by the court at
any time during the pendency of the proceedings.

(e) After the verdict or finding of guilty or after a plea of guilty or nolo
contendere, the proper procedure for a defendant who contends either that the
information does not charge a crime or that the court was without jurisdiction
of the crime charged is to utilize the statutory remedy extended by the
legislature for these two specific situations -- a K.S.A. 22-3502 motion for
arrest of judgment.

(f) K.S.A. 22-3503 authorizes the trial court to arrest judgment without
motion whenever the trial court becomes aware of the existence of grounds which
would require that a motion for arrest of judgment be sustained, if filed.

(g) If a defendant fails to challenge the sufficiency of the information or
the jurisdiction of the trial court by motion for arrest of judgment pursuant to
K.S.A. 22-3502, the issue may be raised in the appellate court for the first
time, subject to the rule announced in Syl. para. 12 and corresponding parts of
this opinion.

(h) The **[***8]** orderly resolution of criminal law issues requires the timely
raising of claims relating to the validity of an information. Tardily
challenged informations are to be construed liberally in favor of validity. The
validity of an information is to be tested by reading the information as a

Page 4

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

whole. The information is sufficient, first, if it alleges the elements of the offense charged and fairly informs the defendant of the charge and, second, if a judgment thereon will safeguard the accused from a subsequent prosecution for the same offense. The elements of the offense may be gleaned from the information as a whole. An information not challenged before verdict or finding of guilty or pursuant to K.S.A. 22-3502 by a motion for arrest of judgment will be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.

**COUNSEL:**

*B. Kay Huff*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Gary Lee Hall*, appellant, was on the brief pro se.

*John Shirley*, county attorney, argued the cause, and *Robert T. Stephan*, attorney [***9] general, was with him on the brief for appellee.

**JUDGES:**

The opinion of the court was delivered by Six, J.

**OPINIONBY:**

SIX

**OPINION:**

[*731]   [**743]  Gary Lee Hall appeals from his convictions of firstdegree murder and two counts of theft.

The issues considered in the context of this criminal appeal are: (1) Was the information defective?  (2) Did the trial court err in admitting evidence of Hall's prior crimes and bad character?  (3) Did the trial court err in limiting cross-examination of the State's major witness (Hall's ex-wife)?  (4) Did the trial court err in failing to instruct the jury on unlawful deprivation of property and in giving supplementary instructions on a question raised during deliberations?  (5) Was defendant denied effective assistance of counsel?  We have considered the defendant's pro se brief as well as the briefs filed by counsel for defendant and for the State.

We reverse Count II, the theft of cattle, because we find the State's failure to allege that Hall intended permanent deprivation resulted in the omission of an essential element of the crime from the information. We affirm all other issues. We also address in some detail, in the later portion of the opinion, the question of defective [***10]  information claims and establish a new prospective rule for testing such claims when raised for the first time on appeal.

Facts

On February 4, 1984, Delbert Angleton was assigned to haul a load of cattle to Leoti, Kansas. He was driving a Kenworth tractor and an American Livestock trailer belonging to his employer, Star-Kan Truck Lines. A fellow truck driver encountered Angleton in the early morning hours of February 5, 1984, on Highway 54 approximately [**744]  25 miles west of Wichita. He and [*732]  Angleton spoke on the citizens' band (CB) radio. Angleton was going west. The usual

246 Kan. 728, *; 793 P.2d 737, **;

1990 Kan. LEXIS 124, ***

route to Leoti was west from Wichita on Highway 54. Angleton did not arrive in
Leoti on February 5, as had been anticipated.

Ten or twelve days later, the rig that Angleton had been driving was found in
Cheyenne, Wyoming. A fellow employee was sent to pick it up. The employee
suspected that someone other than Angleton had driven the truck because the
clutch was "roughed up," the cab had been cleaned up, and the radio was set on a
country western station. Angleton never listened to country western music; he
enjoyed "acid rock." The trailer had been "dollied down" (unhooked from the
truck) while [***11] it was still loaded, causing damage to the trailer. Cattle
trailers are not built to withstand such treatment. It is unusual to dolly down
a loaded cattle trailer.

Gary Lee "Blue" Hall, the defendant, had lived on a ranch in Oregon since
1979. Prior to purchasing the Oregon ranch, Hall had lived in Gove County,
Kansas.

James Woodward was a neighbor of Hall's in Oregon. In 1982, Woodward's
daughter Roberta began working for Hall. Hall's wife, Judy, left on a trip to
visit relatives in Kansas. During the time Judy was gone, Hall began an affair
with Roberta. Upon Judy's return, the Halls were divorced. Roberta moved into
the ranch house, married Hall in the summer of 1983, and gave birth to a baby
girl in August 1983. Roberta and Hall were divorced in 1985.

James Woodward testified that in February 1987 Roberta confessed to him that
she and Hall had stolen a load of cattle in Kansas. Roberta told her father
that Hall had killed the trucker hauling the cattle and buried him on the Oregon
ranch. According to Woodward, Roberta begged her father not to go to the
authorities because she said that Hall would kill her. Woodward subsequently
contacted an attorney, who arranged a [***12] meeting for Woodward and Roberta
with the Oregon authorities. Roberta was given immunity in exchange for her
cooperation with the police.

Roberta Woodward's Story

Roberta accompanied Hall on a trucking trip to Houston, Texas, in 1984. On
their way to Texas, they stopped in Kansas and visited Hall's friends, the
Yales.

[*733]  Judy Yale testified that Roberta and Hall did visit them in Kansas
sometime in 1984. Yale also testified that Roberta, during the visit, had given
her a picture of Heather, Roberta's and Hall's daughter. Judy produced the
photograph, which was inscribed on the back, "Heather Lee, seven and a half
months, April 1984." Later testimony, however, indicated that Hall could not
have visited the Yales in April 1984 because his truck had been confiscated in
March 1984 and he did not purchase a new truck until August 1984.

The State produced documents indicating that Hall had unloaded apples in
Houston, Texas, on January 31, 1984. Roberta identified Hall's signature on the
bill of lading and her own handwriting on a document for Hall's broker. After
unloading in Texas, Hall was unsuccessful in attempting to find a return load.
They drifted around for a few [***13] days, following other trucks in the
attempt to find a load.

On the evening of February 4, 1984, the two spent the night in the truck in
Dodge City, Kansas. The next morning, Hall told Roberta that he had found a
load (a cattle truck) that "looked good" and he was going to follow it.

246 Kan. 728, *; 793 P.2d 737, **;

1990 Kan. LEXIS 124, ***

After they passed Garden City, Hall asked Roberta to drive and to overtake the cattle truck. She began talking on the CB radio to the driver of the cattle truck, whose CB name was "Hangnail." Delbert Angleton's CB name was "Hangnail." Hall told Roberta to stop the other trucker. She asked Angleton if he would like to "smoke one" (meaning smoke some marijuana). Both trucks pulled into an abandoned refinery near Scott City, Kansas. Angleton joined Roberta in the cab of Hall's truck and smoked marijuana with her. Hall was in the sleeper and began acting like he was waking up. Roberta **[\*\*745]** said that she saw a pistol come out of the sleeper and, as she turned her head away, two shots were fired. Angleton died immediately. Roberta suffered some loss of hearing due to the gun discharging so close to her head.

Hall pushed Angleton's body down in the seat and put a sleeping bag over it. Hall told Roberta **[\*\*\*14]** that they had to get out of there. Hall drove the cattle truck, and Roberta followed him in Hall's truck. The two later stopped on a dirt road north of the Smoky Hill River and put Angleton's body in Hall's reefer trailer. They stopped for gas a couple of times and ended up at a truck **[\*734]** stop in Cheyenne, Wyoming. Hall removed the trailer from his tractor and hitched Angleton's cattle trailer on the back of Hall's tractor. Roberta covered the holes in Hall's trailer so that no one could see Angleton's body. That trailer and the truck which had pulled the cattle trailer were left at the truck stop, and Hall and Roberta headed for Oregon.

As soon as they arrived back at the ranch in Oregon, Hall began unloading the cattle off Angleton's trailer. They spent the night at home, showered, and then drove back to Cheyenne. The trailers were switched again and they returned to Oregon, leaving the empty cattle truck/trailer at the truck stop. The next day, Hall called a neighbor and asked him to come dig a hole in which to bury some dead cows. The cattle were dumped in the hole. Hall then transported Angleton's body to the hole and dumped it in. Hall instructed Roberta to **[\*\*\*15]** cover the body so that the neighbor would not see it when the hole was filled. Hall went down the road to make sure nobody came while Roberta shoveled dirt over the body.

Hall's Story

Hall drove straight through from Oregon to Houston. He was drinking whiskey and taking amphetamines to stay awake. Roberta frequently smoked marijuana during the trip. After dropping off the load of apples in Houston, he attempted, during the next two days, to locate a return load either in Houston or Dallas, but was not successful. Roberta continued to smoke marijuana.

The couple drove to Oklahoma City, arriving in the early morning hours of February 3. Failing to find a return load in Oklahoma City, they headed toward Dodge City, Kansas. In Dodge City, Hall again checked for a load to haul to the Northwest. From Dodge City, the couple traveled to Oakley, where Hall saw an acquaintance who had secured a load out of Garden City. Hall had planned to visit his mother in Quinter, Kansas, but changed his plans when he and Roberta fought about the visit. They returned to Dodge City in the early morning hours of February 4.

They stayed at the Dodge City truck stop throughout the day on February **[\*\*\*16]** 4, because Hall had information that he could have a load on Monday. According to Hall, he and Roberta had another **[\*735]** fight that evening. She wanted to go out and "party," but he would not go. That night, he slept in the driver's seat of the truck and Roberta slept in the sleeper.

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

At some point in the middle of the night, Roberta woke Hall and told him to follow her. She entered another truck, which then pulled out of the truck stop, going west. Hall testified that the other truck was a "bull wagon." He had no idea why his wife entered the other truck and wanted him to follow the truck. He followed the other truck through Garden City and north toward Scott City. Both trucks then stopped at an abandoned refinery, and Roberta, Hall, and "Hangnail" (Angleton) sat in Hall's truck and talked. Roberta told Angleton that Hall was thinking of hiring a driver, and Angleton said he was interested in working for him. Roberta then lit up some marijuana. Angleton admired Hall's truck, and Roberta asked Hall if he would let Angleton drive it.

When they left the refinery, Angleton was driving Hall's truck with Roberta as a passenger and Hall was driving Angleton's truck. They **[***17]** stopped again north of Scott City near a John Deere dealership. Angleton said that he wanted to visit with Hall. Hall rode with Angleton in Angleton's truck and Roberta followed in Hall's truck. **[**746]** They next stopped at the Gove/Orion road. During the drive, Angleton had asked Hall if Hall could pasture the cattle for him.

Roberta and Angleton were planning to take Angleton's load of cattle to Oregon, but Hall advised against it. As the three of them were standing and talking on the Orion road, a car passed by. Angleton and Roberta decided to go in Hall's truck so they could plan what they were going to do, and Hall followed in Angleton's truck. They next stopped at a truck stop in Goodland, Kansas. At this time, Hall told Angleton that Angleton could take Highway 27 south to Leoti and to forget all about the plan with Roberta, but Roberta told Hall to stay out of it. When they left the truck stop, Hall was driving Angleton's truck again and Angleton was driving Hall's truck.

They stopped one more time to transfer fuel from Hall's truck into Angleton's truck, then headed north toward the Nebraska state line. After that stop, Roberta was driving Hall's truck. Hall followed in **[***18]** Angleton's truck. Roberta moved way ahead of Hall and he didn't see them again for about 30 miles. The next time **[*736]** Hall saw his truck, it was parked at a highway rest area in Nebraska. Hall drove on by because they had agreed to meet at a truck stop on the Wyoming/Nebraska border. When he arrived at the Wyoming truck stop, he went to sleep in the truck. Some time later, he was awakened by Roberta, who was crying and "high."

Hall went to his truck, opened the driver's door, and discovered Angleton's body on the passenger side covered with a sleeping bag. Hall became ill. When he asked Roberta what had happened, she said that she had done it for him and that it would not have happened if he had not left.

Roberta told Hall that, if he would take the cattle and cover up the killing, she would promise to give up drugs and be a better wife and mother. Hall said that he and Roberta had fought many times about her drug use. Hall then moved Angleton's body to the back of his reefer trailer and tried to clean up the cab of his truck. He said that Roberta had to help him move the body because he could not lift it by himself.

Hall's testimony as to what occurred later was substantially **[***19]** similar to Roberta's version of the facts. At the Cheyenne truck stop, they traded trailers and took the cattle to the Oregon ranch. Hall testified that, as they were driving from Cheyenne to Oregon, Roberta produced Angleton's wallet and gave him the money out of it.

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

Hall testified that he called a neighbor to dig the hole. He and Roberta took Angleton's body from the reefer trailer and put it in the trunk of their car. According to Hall, he made Roberta take the body to the hole and bury it by herself because, "It wasn't my deal. It made me sick to even be around it." After Roberta had disposed of the body in the hole and covered it with dirt, Hall and the neighbor dumped the dead cattle in the hole and filled it back in.

Both the State and the defense had stipulated that the body exhumed on the Hall ranch was the body of Delbert Angleton. On cross-examination of Hall, the State produced a transcript of Hall's original statement after his arrest. Several statements made by Hall at the time of his arrest conflicted with statements made at trial.

[*737] A witness testified that he was driving down the Gove/Orion road on the morning of Sunday, February 5, 1984. He said [***20] he saw two trucks parked on the road. One was a Kenworth cabover with a cattle trailer and the other was a cab-over with a dry box. Angleton's truck was a Kenworth cab-over, but Hall's truck was a conventional, not a cab-over, and had a refrigeration unit, not a dry box. The witness testified that he remembered the incident because he used to drive a truck and although cattle trucks were common in the area, one rarely saw freight trucks. He also testified that it was unusual to see a "freight box" and a "bull wagon" traveling together. The witness saw two men standing by the trailer, and he thought he saw a third person step behind one of the trucks as he drove by. He was absolutely sure the two he saw were men. The witness' [**747] testimony was corroborated by a passenger in the witness' car.

A second passenger in the car testified that the two men were cleanshaven. Both Angleton and Hall had full beards in February 1984. None of the three passengers in the car saw the third person described by the driver. The four witnesses were in agreement that the two persons were definitely cleanshaven men and that both trucks were cab-overs.

The testimony of medical experts indicated that [***21] Angleton suffered two bullet wounds from an Amadio-Rossi .38 caliber revolver. Hall had previously owned such a revolver and had kept it in the sleeper of his truck for protection. Woodward testified that his daughter is a good shot. The testimony of the physician who performed the autopsy indicated that Angleton had been shot twice in rapid succession while sitting down and that the shots had been fired from behind and slightly above him.

The State called an acquaintance of Hall, who had accompanied him on long trips. The defense moved in limine to preclude any testimony by the acquaintance as to Hall's prior criminal activity. The court allowed both parties to question the acquaintance outside the presence of the jurors in order to make a determination of the admissibility of his testimony. The acquaintance testified to an incident in Georgia in which Hall followed another truck with the stated intention of killing the driver and stealing his truck. The acquaintance also testified as to an incident in which he, Hall, and another individual went to Nevada and stole a [*738] truck. The truck which was stolen was the one that Hall was driving at the time of Angleton's murder [***22] and which was subsequently confiscated in Missouri as stolen.

The trial court ruled that the testimony as to the theft of the truck in Nevada was to be excluded as having no bearing on the case. The court did, however, allow testimony as to the incident in Georgia because the incident was illustrative of some sort of plan, intent, design, or organization. The defense

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

requested that a limiting instruction be given to the jury at the time of the
acquaintance's testimony.   The trial court stated that such an instruction
should be given at the close of all the evidence but that to give the
instruction at the time of the testimony would call undue attention to that
particular testimony.

The testimony of other witnesses will be described as necessary for a
discussion of the issues raised in this appeal.

Prior Crimes

Hall contends that the trial court erred in allowing testimony regarding the
incident in Georgia.  If the testimony was properly admitted, Hall claims the
trial court should have given a contemporaneous limiting instruction at the time
of the testimony.  In addition, Hall argues that testimony regarding the fact
that he was driving a stolen truck at the time of the crime [***23]   and
testimony indicating that he had stolen cattle in the past was unduly
prejudicial and requires reversal.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil
wrong on a specified occasion, is inadmissible to prove his or her disposition
to commit crime or civil wrong as the basis for an inference that the person
committed another crime or civil wrong on another specified occasion but,
subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to
prove  some  other  material  fact  including  motive,  opportunity,  intent,
preparation, plan, knowledge, identity or absence of mistake or accident."

Keith Malaney, an acquaintance who was a fellow trucker, testified that he
and Hall were driving from Atlanta, Georgia, to North Carolina to pick up a load
in November 1983.  At some point during the drive, a new model International
truck passed them. According to Malaney, both he and Hall commented that it was
an attractive truck. The driver of the new truck spoke on  [*739]  the CB radio
and told Hall and Malaney that he would like someone to drive for him for awhile
so he could sleep as he had driven straight through from [***24]   the West
Coast.

[**748]   According to Malaney, Hall wanted to "eliminate" the driver of the
new truck and take the truck back to Oregon.  Malaney testified that Hall
attempted to catch up with the truck, but that Malaney wanted to stop and use
the restroom.   Hall argued about that but eventually stopped so that Malaney
could relieve himself.  After they had stopped, Malaney said that Hall drove at
an excessive speed trying to catch up with the other truck. Malaney testified
that Hall had a shotgun and a pistol in the truck.

The State moved to have the testimony at issue introduced pursuant to K.S.A.
60-455. Hall filed a motion in limine to preclude any testimony by Malaney as
to Hall's prior criminal activity or actions.   The defense did not renew its
objection to the testimony at the time that Malaney testified before the jury.
"When a motion in limine is denied, the moving party must object to the evidence
at trial to preserve the issue on appeal." *Douglas v. Lombardino*, 236 Kan. 471,
Syl. para. 2, 693 P.2d 1138 (1985).

"Admissibility of other crimes under 60-455 is to be determined by the trial
judge prior to the trial and outside the presence of the  [***25]   jury.
[Citation omitted.] In ruling on the admissibility of the proffered evidence,
the trial court must: (1) determine it is relevant to prove one of the facts

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

specified in the statute; (2) determine that fact is a disputed, material fact;
and (3) balance the probative value of the prior conviction evidence against its
tendency to prejudice the jury." *State v. Breazeale*, 238 Kan. 714, 719, 714 P.2d
1356, *cert. denied* 479 U.S. 846 (1986).

In *Breazeale*, the defendant had been convicted of similar crimes in Colorado.
It should be noted, however, that K.S.A. 60-455 does not require that the
defendant be convicted of the crime or civil wrong at issue. The State contends
that the testimony regarding the incident in Georgia was relevant to prove that
Hall had a plan to kill a truck driver and steal his load. This was a disputed,
material fact, as Roberta testified that Hall was driving around Kansas with
such a plan in mind, whereas Hall asserted that he was driving around attempting
to find a legal load to haul back to the Northwest.

Both parties cite *State v. Marquez*, 222 Kan. 441, 446-47, 565 P.2d 245
(1977):
[***26]

[*740] "Plan refers to an antecedent mental condition that points to the doing
of the offense or offenses planned. The purpose in showing a common scheme or
plan is to establish, circumstantially, the commission of the act charged and
the intent with which it was committed. Strictly speaking, the exception is
limited to evidence which shows some causal connection between the two offenses,
so that proof of the prior offense could be said to evidence a preexisting
design, plan or scheme directed toward the doing of the offense charged."

Roberta testified that Hall spotted Angleton's truck and instructed her to
follow it; that Hall told her to engage Angleton in conversation on the CB radio
and to get him to pull over somehow. Malaney testified that Hall spotted the
International truck, began following it, and talked to the driver on the CB.
The opportunity to have the driver pull over presented itself when the driver
said that he would like someone to drive for him for awhile. The incident in
Georgia, therefore, appeared to be relevant to the issue of plan. See Slough,
*Other Vices, Other Crimes: Kansas Statutes Annotated Section 60-455 Revisited*,
26 Kan. L. Rev. 161, [***27] 165 (1978).

The trial court did not abuse its discretion in determining that testimony
regarding the incident in Georgia was admissible for the purpose of showing a
plan on the part of Hall. See *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124
(1988).

The Limiting Instruction

Hall contends that the court erred in not giving the limiting instruction
contemporaneously with Malaney's testimony. The court did give a limiting
instruction in accordance with PIK Crim. 2d 52.06 at the close of the trial.
PIK Crim. 2d 52.06 was approved by this court in *State v. Williams*, 234 Kan.
233, Syl. para. 2, 670 P.2d 1348 [**749] (1983). The *Williams* opinion did not
specify whether the instruction was given contemporaneously or at the close of
all the evidence.

Hall cites two cases in which a limiting instruction was given
contemporaneously with the K.S.A. 60-455 evidence. *State v. Clements*, 241 Kan.
77, 85, 734 P.2d 1096 (1987); *State v. Gourley*, 224 Kan. 167, 169, 578 P.2d 713
(1978). Neither of these cases, however, mandates that the instruction is to be
given contemporaneously. [***28] Although there are numerous cases construing
K.S.A. 60-455, we have not adopted a rule that a limiting [*741] instruction

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

must be given contemporaneously with the evidence at issue. The comments to PIK Crim. 2d 52.06 are silent as to this issue.

In *State v. Morris*, 244 Kan. 22, 23, 765 P.2d 1120 (1988), we stated:

"Jury instructions are to be considered together and read as a whole, without isolating any one instruction. [Citation omitted.] If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous."

We believe the timing of any limiting instruction is best left to the discretion of the trial court.

The Other Crimes

Hall contends that the trial court erred in allowing the State to elicit testimony that Hall was driving a stolen truck and that Hall had stolen cattle from his neighbors.

In the State's case in chief, Roberta testified that she and Hall had stopped to visit the Yales on the way to Houston in January 1984. The defense attempted [***29] to erode Roberta's credibility by showing that the visit to the Yales occurred in April 1984, not January. Loren Porter testified that it would have been impossible for Hall to have visited the Yales in Hall's truck in April because the truck had been confiscated as stolen in March 1984. This testimony was given the second time Porter testified and, at that time, the defense did not object to the testimony.

Porter, however, had previously testified that in March 1984 he was hauling a load for Hall when Porter was stopped in Oak Grove, Missouri. Hall's truck was confiscated as stolen. This testimony was heard after Judy Yale had testified regarding the photograph of Hall's daughter with the April 1984 date. At that time, the defense strongly objected to the line of questioning. The court ruled:

"Well, I'm going to find at this time that there is no evidence that it's even trying to come in under 60-455. That this witness is testifying as to his relationship with that truck, and his relationship with Mr. Hall as an employer. And, at this time that that's proper over the objection of the [defendant]. And, I'm going to call the jury back in and permit Mr. Porter to testify." [***30]

[*742]    The State also presented a Missouri state trooper as a rebuttal witness. The trooper testified that on March 14, 1984, he was dispatched to a weigh station to investigate a stolen truck. The trooper identified the driver as Porter. At no time did the trooper testify that Hall actually stole the truck, merely that the truck was confiscated as stolen. Hall later testified that Porter called him from Missouri and told him that at least one other truck had been detained in Missouri and that Hall was never summoned to Missouri on the matter.

Hall contends that the admission of this testimony violated the rules set forth in *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974). *Bly*, however, was a case interpreting K.S.A. 60-455. The trial court in Hall's case specifically stated that the testimony was not coming in under K.S.A. 60-455. Hall opened the door to the testimony regarding confiscation of the truck by attempting to

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

impeach Roberta's testimony that they had visited the Yales on the same trip in which Angleton was killed. Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may be offered to corroborate [***31] evidence of a party who first presented evidence on the particular issue, or it may refute or deny [**750] some affirmative fact which an opposing party has attempted to prove. *State v. Weigel*, 228 Kan. 194, Syl. para. 9, 612 P.2d 636 (1980).

Hall next asserts that the admission of testimony that he had stolen cattle from his neighbors was highly prejudicial and erroneous. The State contends that Hall opened the door to this line of questioning.

Hall called his sister, Denise, to testify on his behalf. Denise testified as to the good relationship Hall had with his daughter. Denise testified that, shortly after Christmas 1985, Hall had a blind heifer which he took to Roberta's house for Roberta to take care of. The heifer was intended as a gift to Hall's daughter, Heather. The defense also recalled Roberta as a defense witness and elicited testimony from her regarding the gift of the blind heifer. Defense counsel asked Roberta if the blind heifer was one of the ones from Angleton's truck. On cross-examination, the State elicited Roberta's story of "at least five" other cattle that Hall had "gathered up" from the neighbor and said he would give to [*743]    [***32] Heather; however, Hall sold them. "When the defendant opens a subject on direct or cross-examination, the State may develop and explore various phases of that subject." *State v. Chatmon*, 234 Kan. 197, 203, 671 P.2d 531 (1983).

Defense counsel made no objection to the testimony concerning the "gathered up" cattle.

Hall's Bad Character

Hall testified at length concerning his background, education, employment, family, marriages, and his ranching operations. He testified that: (1) his brother is a former sheriff of Gove County, Kansas; (2) his mother, grandmother, aunt, uncle, brother, and sister were all present at the trial; (3) his mother hand-makes all his shirts; and (4) his ranch was a profitable operation of a certain size with a certain number of cattle. We agree with the State's contention that Hall went beyond basic biographical information. He attempted to portray himself as a good Kansas farm boy, a family man, and a successful rancher.

We interpreted K.S.A. 60-447(b) in *State v. Stokes*, 215 Kan. 5, 7, 523 P.2d 364 (1974). We recognized that, where the accused testifies on his or her own behalf, the [***33] biographical data will naturally be more extensive than that of an ordinary witness. We stated:

"He is entitled, like any other witness, to let the jury know who he is so that it may properly fit him into the pattern of events brought out at the trial. Of course, when the testimony of either the defendant or any other witness for the defense goes beyond those bounds and attempts to characterize the defendant's past life as blemish-free, or makes reference to specific prior incidents, he foregoes to that extent the protection of the statute." 215 Kan. at 7.

Hall specifically objects to evidence presented by the State that his first wife had an abortion prior to their marriage and that she divorced him out of fear because he shot her dog and beat a cow to death. Although the testimony about the abortion is prejudicial and not relevant to the issues in this case,

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

it should be noted that the defense did not object to this question. The defense did object when the State asked Hall if his first wife was pregnant at the time of their marriage. The court overruled the objection when the State pointed out that defense counsel had spent several hours going **[***34]** over Hall's background. The defense also did not **[*744]** object to the cross-examination of Hall regarding the beating of cattle and the shooting of his first wife's dog. Hall admitted that his first wife left him, partly because he shot her dog with a .44 magnum pistol.

Cross-Examination of the State's Major Witness

Hall next contends that the trial court erred in limiting the testimony regarding Roberta's drug use. Hall asserts that this information was vital for the purposes of impeaching Roberta's credibility, establishing a motive on her part for the theft and murder, and establishing a motive for Hall **[**751]** to conceal the crime. The State had moved in limine to prohibit the defense from inquiring into Roberta's drug use or any indebtedness she had to any drug dealers. The trial court ruled:

"[U]nless inquired into by plaintiff, the use, sale, possession, consumption of illegal drugs by Roberta Woodward shall not be the subject of cross examination by defendant. Defendant is prohibited from cross examining Roberta Woodward about her use, possession or consumption of marijuana and other illegal substance except as to matters disclosed by the plaintiff's direct examination. **[***35]** This order in no way limits or restrains defendant's right to call Roberta Woodward as a defense witness and examine her accordingly as to any matter providing the matter is within the Kansas Rules of Evidence as provided in K.S.A. 60-401 et seq."

A. Credibility

It has long been the rule in this state that drug offenses are not crimes involving dishonesty and, therefore, cannot be admitted for the purpose of impeaching the credibility of a witness. *State v. Crowley*, 220 Kan. 532, 552 P.2d 971 (1976). During direct examination, Roberta testified that she had smoked marijuana with Angleton prior to the murder. On cross-examination, the defense questioned her at length concerning the use of marijuana. Hall was permitted to testify that Roberta smoked marijuana frequently on the haul to Houston and that she purchased more marijuana in Denton, Texas. The jury was therefore able to consider Roberta's marijuana use at the time of the crime charged in determining the reliability of her testimony and the accuracy of her memory.

B. Motive

The defense sought to admit evidence that Roberta had a past history of heavy drug use and that Hall had agreed **[***36]** to help her **[*745]** conceal the crime because she promised to give up drugs. The defense also sought to admit evidence as to an incident that occurred subsequent to Angleton's murder in which Roberta allegedly attempted to injure or kill Hall while she was on drugs. The trial court stated:

"Unless you can show at the time that this alleged crime occurred that some form of drug use either by the defendant or by [Roberta] Woodward directly attributed to this crime occurring you're not going to impeach her credibility as a witness solely upon her prior drug abuse. And, my order and the motion in limine

246 Kan. 728, *; 793 P.2d 737, **;
                    1990 Kan. LEXIS 124, ***

stands.  Your proffer is duly noted for the record.  You can certainly inquire
as to her drug abuse if you can tie it into this time frame and how it affected
this crime on the days and times in question as I so ruled."

    Hall was permitted to testify that Roberta was "high" at the time of
Angleton's death.  He also testified that he said to her, "See what your drugs
have got you into now?"  He testified that Roberta told him if he helped her
conceal the murder, she would quit using drugs.  Hall said that her drug use had
been a big issue in their marriage.  Hall testified that, after [***37] they
had buried the body, they continued to argue because Roberta did not stop her
drug use.  At that point of the trial, the State objected and the jury was
excused during a discussion between the court and counsel.  The court held that
Roberta's drug use subsequent to the crime charged was too far removed in time
to have any probative value.

    The court, however, did allow some testimony regarding an incident in which
Hall was either pushed or jumped from a moving vehicle which Roberta was driving
while she was "high."

    State v. Ralph, 217 Kan. 457, 537 P.2d 200 (1975), involved an armed robbery
of a drugstore in which a large quantity of narcotics was taken.  We held that:
(1) evidence that the defendant was a narcotics addict was admissible to show
motive as only narcotics were taken, not money; and (2) narcotics addiction is
not a character trait pursuant to K.S.A. 60-447 and may be shown where relevant
regardless of whether the defendant has put his character in issue.

    [**752]  As the State points out in its brief, no evidence of Roberta's good
character was presented.  The defense was able to present testimony by both Hall
and Roberta herself that indicated [***38] she  [*746] had a drug problem.
The defense made no proffer of evidence of Roberta's alleged debts to drug
dealers, which was her alleged motive for murdering Angleton.  See K.S.A. 60-
405.  The trial court did not err in limiting the evidence of Roberta's drug
use.

    Defects in the Complaint

    A. The Theft of Cattle Charge

    Hall contends that his conviction for count II was void because the complaint
failed to allege that he took control of the cattle with the intent to
permanently deprive the owner of their possession.

    Hall was convicted under K.S.A. 1984 Supp. 21-3701, which states in part:
"Theft is any of the following acts done with intent to deprive the owner
permanently of the possession, use or benefit of the owner's property."  Hall
contends that the intent to permanently deprive the owner of possession is an
essential element of theft and, therefore, the complaint was insufficient as to
count II.  It should be noted that count III, which contained the charge for the
theft of the truck and cattle trailer, did allege the intent to permanently
deprive the owner.  Count II, regarding the theft of the cattle, failed to
allege that the intent was to permanently [***39] deprive, but it did state
that the defendant was being charged pursuant to K.S.A. 21-3701, a class E
felony.  We have held that the citation to the statute cannot substitute to
supply a missing element of the charge, and that incorporations by reference
cannot be implied and will not be inferred but must be explicit.  State v.
Jackson, 239 Kan. 463, 466, 721 P.2d 232 (1986).  Count II stated:

246 Kan. 728, *; 793 P.2d 737, **;

1990 Kan. LEXIS 124, ***

"[Gary Lee Hall did] unlawfully, feloniously, and willfully obtain or exert unauthorized control over property; to wit: 75 head of yearling steers and with the intention to deprive the owner, to wit: Russell McKee, and/or Randy Beggs, of the possession, use, or benefit of said property of a value of more than One Hundred Fifty Dollars ($ 150.00) in violation of K.S.A. 21-3701, a Class E Felony."

There was no K.S.A. 22-3201 incorporation by reference between Counts II and III. Under our reasoning in *Jackson* the inclusion of "to permanently deprive" in Count III does not cure its omission in Count II. *Jackson*, 239 Kan. at 466.

[*747] The jury was properly instructed on Count II.* The instruction on the theft of the cattle [***40] included the element of permanency. We have also held, however, that a proper instruction does not remedy the defect. *State v. Howell & Taylor*, 226 Kan. 511, 513, 601 P.2d 1141 (1979). Under our past holdings the intent to permanently deprive the owner of possession is an essential element of the crime of theft and, therefore, Count II of the information did not sufficiently charge the offense of theft. See *State v. Browning*, 245 Kan. 26, 774 P.2d 935 (1989) (malice is an essential element of second-degree murder). There can be little doubt of what the State intended to charge in Count II. The theft statute was specifically mentioned. However, we have held that an information which omits one or more of the essential elements of the crime it attempts to charge is jurisdictionally and fatally defective and a conviction on that offense must be reversed. *State v. Wilson*, 240 Kan. 606, 607, 731 P.2d 306 (1987). The information does not charge theft in Count II. Our past precedent requires a reversal as to Count II.

B. The Felony-Murder Charge

Count I of the information read as [***41] follows:

"[Gary Lee Hall did] unlawfully, feloniously, willfully, and maliciously, deliberately and with premeditation, kill and murder a certain human being, to wit: Delbert W. Angleton, by shooting the said Delbert W. Angleton with a 38 caliber hand gun, or that the said Delbert W. Angleton was killed while the said Gary Lee Hall perpetrated or attempted to [**753] perpetrate a felony crime to wit: the theft of cattle and a cattle truck, all in violation of K.S.A. 21-3401, a Class A Felony."

Hall contends that Count I is defective because it fails to specify a felony that is inherently dangerous to human life and to specify the essential elements of the underlying felony. The issue of whether theft can be the basis for felony murder was discussed in *State v. Lashley*, 233 Kan. 620, 664 P.2d 1358 (1983). The question is whether theft is a felony which is "inherently dangerous to human life."

Because the complaint did not specify under which section of 21-3701 Hall was charged, he contends that it did not charge an underlying felony that was inherently dangerous to human life.

In *Lashley*, the defendant's conviction of felony [***42] murder was affirmed. The evidence was that the defendant took the victim [*748] to a remote wooded area and shot him. Lashley's first-degree felony-murder charge was based upon the theft of property belonging to the deceased Robbins. The court held: "Theft by obtaining or exerting unauthorized control over property, K.S.A. 21-3701(a), and obtaining by threat control over property, K.S.A. 21-3701(c), when considered in the abstract, are felonies inherently dangerous to

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

human life and will sustain a conviction for murder in the first degree under the felony murder rule." *State v. Lashley*, 233 Kan. 620, Syl. para. 12.

In *State v. Foy*, 224 Kan. 558, 582 P.2d 281 (1978), the defendant was charged in the information with first-degree premeditated murder. The evidence at trial established that the victim had been shot when the defendant went looking for her and entered the victim's mother's house without permission. Although the defendant was charged with first-degree premeditated murder, the trial court also instructed the jury on felony murder, using aggravated burglary as the underlying felony. The defendant had not [***43] been charged with aggravated burglary. This court stated:

"Our court has held an information in the ordinary form charging that a killing was done with malice aforethought, deliberation and premeditation is sufficient to sustain a conviction of murder in the first degree committed in the perpetration of a robbery or burglary. [Citation omitted.] Therefore, the fact that felony murder was not charged in the information does not preclude an instruction where evidence supports the instruction." 224 Kan. at 566.

The same issue was raised in *State v. Murdock*, 236 Kan. 146, 154, 689 P.2d 814 (1984). The defendant was charged with premeditated murder in the information but the evidence at trial indicated that the victim's apartment was broken into and she was raped, strangled, and robbed. The trial court gave an instruction on felony murder.

In Hall's case, the jury was instructed on both premeditated murder and felony murder. Hall does not contend that the information was insufficient as to the charge of premeditated murder.

The offense of felony theft by obtaining unauthorized control over the property [***44] of another, as set forth in the court's instructions, is a felony, when viewed in the abstract, inherently dangerous [*749] to human life, and is a proper felony to sustain a conviction for murder in the first-degree under the felony-murder rule.

We have previously ruled that a defendant need not be charged with or convicted of the underlying felony in order to be convicted of felony murder. *State v. Wise*, 237 Kan. 117, 122, 697 P.2d 1295 (1985). Hall appears to think that it was necessary for the State to include every element of the underlying felony in order to sufficiently charge felony murder in the information. Count I clearly stated that the felony murder was done in the perpetration of the theft of cattle and a cattle truck. Read in conjunction with Count III, there could be no doubt as to which theft the State referred. Under the *Foy* rule, the State did not even have to charge Hall with felony murder or theft as long as it charged him with premeditated murder. Under the *Wise* rule, the State did not have to charge [**754] Hall with theft to sustain the felonymurder conviction.

Unlawful Deprivation of Property

Hall next contends [***45] that the trial court erred in failing to instruct on the lesser included offense of unlawful deprivation of property as to count III, the theft of the truck and cattle trailer. Although defense counsel did request instructions on lesser included offenses of first-degree murder, he did not request any instructions on lesser included offenses of theft. Unlawful deprivation of property is a lesser included offense of theft.

K.S.A. 21-3107(3) states:

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced."

Hall contends that, because he did not keep Angleton's truck but abandoned it in Wyoming, he had no intent to permanently deprive Angleton of the truck. According to Hall's testimony, he was driving Angleton's truck with Angleton's permission up until Angleton's death. Upon discovering Angleton's death, Hall immediately abandoned the truck and only used the trailer for a couple of days to haul the cattle. According to Roberta, Hall killed Angleton [***46] with the intent to take his load of cattle. Roberta's testimony indicated that Hall only used the truck and cattle trailer [*750] as needed to haul the cattle, then he abandoned them in Wyoming.

"The trial court has an affirmative duty to instruct on all lesser included offenses supported by the evidence. [Citations omitted.] Evidence supporting such an instruction must be considered in the light most favorable to the defendant. [Citation omitted.] The evidence need not be strong evidence -- indeed, it may be weak and based only on the testimony of the defendant. [Citations omitted.] The test is whether the evidence might reasonably cause a jury to convict the defendant of the lesser charge. [Citation omitted.]" *State v. Colbert*, 244 Kan. 422, 427-28, 769 P.2d 1168 (1989).

In *State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985), the defendant was convicted of stealing an automobile. The evidence indicated that the defendant attempted to hire a taxi to take him to a girlfriend's house and that, when he could not book a taxi, he took the victim's car. The car was found about a week later approximately two blocks [***47] from the defendant's residence. The defendant argued that the evidence did not show an intent to permanently deprive the victim of the automobile but merely the "borrowing" of the car to visit his girlfriend and then go home. We noted that there was nothing to indicate the defendant intended to return the automobile at the time it was appropriated, and, during the several days before it was recovered, defendant made no effort to return the automobile or to alert the owners as to its whereabouts.

Keeler argued that it was error not to instruct the jury on the lesser offense of unlawful deprivation of property. The court held:

"It is well-settled in Kansas that the duty to instruct on lesser crimes arises only when there is evidence upon which a defendant might reasonably be convicted of the lesser crime. [Citation omitted.] Keeler took the stand and denied any involvement in the theft of the Sippels' Toyota. The only version of the offense presented at trial was that offered by the State. Nothing is contained in the record to indicate any evidence was produced to show the defendant intended to restore the Toyota to its owner. Under the theories presented at trial Keeler was [***48] either guilty of theft or not guilty." 238 Kan. at 365-66.

In the case at bar, Hall did not deny having taken the truck and trailer. He contends, however, that he did not intend to take the truck permanently. There was no evidence presented to indicate that Hall attempted to restore the truck to its owner. [*751] Randall Beggs testified that the truck and [**755] trailer were recovered in Wyoming ten to twelve days after Angleton's disappearance.

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

In *State v. Warren*, 221 Kan. 10, 557 P.2d 1248 (1976), the defendant had escaped from custody at the Salina Police Headquarters, where he had been brought in on a drug-related charge. The evidence indicated that the defendant had taken a flat-bed truck from a local lumber company to effect his escape. The truck was later abandoned at a motel in WaKeeney. This court held that it was not error for the trial court to fail to instruct on unlawful deprivation of property. "In the record presented, there is no evidence of any intent of defendant to restore the truck to its owner." 221 Kan. at 13.

K.S.A. 21-3110(6) defines to "deprive permanently" as to: **[***49]**

"(a) Take from the owner the possession, use or benefit of his or her property, *without an intent to restore the same*; or

"(b) Retain property *without intent to restore the same* or with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return." (Emphasis added.)

The Kansas theft statutes were discussed and analyzed in Wilson, *Thou Shalt Not Steal: Ruminations on the New Kansas Theft Law*, 20 Kan. L. Rev. 385, 409-10 (1972). Failure to give the instruction on unlawful deprivation was not error.

Supplementary Instructions: Jury Deliberations

Hall contends that the trial court should have given supplementary instructions to the jury.

During deliberations, the jury sent the following note to the trial court: "Point three, if Randy Beggs's truck was stolen for purpose of transporting stolen cattle and returned to a point unknown to Randy Beggs does this constitute theft of property?" The note referred to instruction number four point three, which referred to Count III of the complaint: "That the defendant intended to deprive Randy Beggs, d/b/a Star-Kan Trucking, permanently **[***50]** of the use or benefit of the property." The trial court asked counsel for comments or suggestions regarding the jury's question. Defense counsel replied that he thought it best to instruct the jury to read all the instructions and not to pick out particular points. The State commented, "[T]he intent to permanently deprive is a question of fact to be determined by the **[*752]** jury from the evidence that it has heard." Defense counsel replied that he did not think any one issue of fact should be singled out.

The court said: "Counsel, I would forward the following written response to the jury dated at 11-4-87, 5:30 p.m. 'Members of the jury, it is for you to determine all issues of fact based upon the evidence and the law as given in these instructions. Signed J. Stephen Nyswonger. District Judge.'"

The court's response to the jury's question is not an abuse of discretion, as both counsel agreed to such response. Hall contends that the jury's note indicates that the jury may have convicted Hall on the lesser charge of temporary deprivation had the court instructed it on such offense.

There must be some evidence to support a finding that the defendant intended to restore the **[***51]** property to its owner. Here, the property was abandoned hundreds of miles away, in another state. In *Keeler*, we held that there was no evidence of intent to restore where the property had been abandoned within the same city. 238 Kan. at 366. In *Warren*, the property had been abandoned 120 miles away from its original location. 221 Kan. at 11.

Effective Assistance of Counsel

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

Hall's final contention is that he was deprived of effective assistance of counsel. He contends that his defense counsel had evidence that would make Hall's testimony more plausible as it indicated that Angleton had a motive to steal his own load and that Angleton was involved in other illegal undertakings.

[**756]    Defense counsel called two friends of Angleton's, as well as Angleton's mother, and attempted to elicit testimony that Angleton's marriage was in trouble and that he was deeply in debt. This line of questioning was generally unsuccessful. The testimony indicated that Angleton had the same type of financial and marital problems that any average person might have. Russell McKee testified that Angleton had been hauling loads of his cattle [***52] for four or five years, with an estimated total of 700 loads. McKee said that he saw Angleton and his wife together shortly before Angleton left with the final load and that they had spent the night together at a motel prior to Angleton's departure and seemed to be on good terms.

[*753]    Hall admits that he has raised this issue for the first time on appeal. In State v. Van Cleave, 239 Kan. 117, Syl. para. 1, 716 P.2d 580 (1986), this court held: "In an appeal from conviction of a crime, the allegation that the defendant did not have effective assistance of counsel will not be considered for the first time on appeal."

Allegations of a Defective Information

Raised for the First Time on Appeal

We take this opportunity to express our concern relating to the number of appeals in Kansas in which the allegation of a defect in the information is raised for the first time on appeal. Our reference to "information" also includes "complaint" or "indictment," as the pertinent Kansas statutes use the phrase "the complaint, information, or indictment."

Initially, we address what appears to be the practice of drawing an information without having at [***53] hand the current statute defining the offense. If the statutory definition of the crime is present and utilized as the information is being drawn, it is unlikely that an essential allegation or element of the crime will be omitted. The frequency with which this court and the Court of Appeals are required to consider questions of claimed defects in informations suggests that certain prosecutors need to exercise more care in the initial preparation of the charging document.

We now turn to the explanation of our views with reference to claims of a defective information raised by the defendant for the first time on appeal.

The Bill of Rights in the Kansas Constitution requires that the accused be allowed to demand the nature and cause of the accusation. Kan. Const. Bill of Rights, § 10. A defendant cannot be charged in the information with one offense and be convicted of another and different offense which is not a lesser included offense of the crime charged when instructed upon pursuant to statute. State v. Chatmon, 234 Kan. 197, 205, 671 P.2d 531 (1983). The § 10 language is similar to the language of the Sixth Amendment to the United States Constitution, [***54] which extends to an accused the right "to be informed of the nature and cause of the accusation." State v. Loudermilk, 221 Kan. 157, 159, 557 P.2d 1229 (1976).

[*754]    The constitutional protections referred to are implemented by the requirements of K.S.A. 22-3201. The complaint, information, or indictment shall be a plain and concise written statement of the essential facts constituting the

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

crime charged and, when drawn in the language of the statute, shall be deemed
sufficient.  An information is sufficient if it clearly informs the defendant of
the precise offense of which he or she is accused so that the accused may
prepare a defense and so that a judgment thereon will safeguard the accused from
a subsequent prosecution for the same offense.  1 Wright, Federal Practice and
Procedure: Crim. 2d § 125 (1982).  It has long been the rule that the entire
record of the proceedings, and not the indictment or information alone, may be
referred to if there is a claim that a subsequent prosecution constitutes double
jeopardy.  1 Wright, Federal Practice and Procedure: Crim. 2d § 125.  We agree
with the statement in 1 Wright, Federal Practice and Procedure: **[***55]** Crim.
2d § 125 at 365, to the effect that the fundamental purpose of the pleading is
to inform the defendant of the charge so that the defendant may prepare a
defense.  The test for sufficiency ought to be whether it is fair to require the
**[**757]** defendant to defend on the basis of the charge as stated in the
particular indictment or information.   The stated requirement that every
ingredient or essential element of the offense should be alleged must be read in
the light of the fairness test just mentioned.  The information is sufficient,
even if an essential averment is faulty in form, if by a fair construction it
may be found within the text.  All parts of the pleading must be looked to in
determining its sufficiency.  1 Wright, Federal Practice and Procedure: Crim. 2d
§ 125 at 367.

    Common sense will be a better guide than arbitrary and artificial rules.  The
sufficiency of an information should be determined on the basis of practical
rather than technical considerations when addressed for the first time on
appeal.  *State v. Wade*, 244 Kan. 136, 766 P.2d 811 (1988); *State v. Micheaux*,
242 Kan. 192, 747 P.2d 784 (1987); 1 Wright, **[***56]** Federal Practice and
Procedure: Crim. 2d § 125 at 385.

    In 1963, the Kansas Judicial Council established an Advisory Committee on
Criminal Law Revision.  The committee was given responsibility for studying and
evaluating the substantive and procedural criminal law of the state and for
recommending appropriate **[*755]** revisions of ch. 21 and ch. 62 of the Kansas
Statutes Annotated.  The proposal of the committee with some modification was
enacted into law, L. 1969, ch. 180, and became effective on July 1, 1970.
Wherever feasible, federal statutes and federal rules of criminal procedure were
followed.  *Kansas Code of Criminal Procedure*, Kansas Jud.  Council Bull. at 11
(October 1969).

    K.S.A. 22-3502, Arrest of judgment, patterned after Fed. R. Crim. Proc. 34,
was incorporated into the 1970 criminal code revision.  A motion in arrest of
judgment had been part of our criminal procedure since 1868.  G.S. 1949, 62-
1605.  We reviewed the history of the motion in *State v. Crozier*, 225 Kan. 120,
123, 587 P.2d 331 (1978).  Our statute prior to the enactment of K.S.A. 22-3502
contained no time limit.  The current statute requires the defendant to file
such **[***57]** a motion "within 10 days after the verdict or finding of guilty."

"The court on motion of a defendant shall arrest judgment if the complaint,
information or indictment *does not charge a crime or if the court was without
jurisdiction of the crime charged*.  The motion for arrest of judgment shall be
made within 10 days after the verdict or finding of guilty, or after a plea of
guilty or *nolo contendere*, or within such further time as the court may fix
during the 10-day period." (Emphasis added.) K.S.A. 22-3502.

    In addition to the G.S. 1949, 62-1605 motion in arrest of judgment, prior to
the criminal code revisions of 1970, the trial court was given authority by

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

statute (G.S. 1949, 62-1606) to arrest judgment on its own motion for "any of
these defects," "these defects" referring to the grounds for the motion to
arrest judgment: "*First*, that the grand jury who found the indictment had no
legal authority to inquire into the offense charged, by reason of it not being
within the jurisdiction of the court; *second*, that the facts stated do not
constitute a public offense." G.S. 1949, 62-1605.

The statutory authority extended to the court by G.S. 1949, 62-1606 is not
[***58] found in the federal rules. The authority has been carried forward in
our present criminal code at K.S.A. 22-3503, Arrest of judgment without motion:
"Whenever the court becomes aware of the existence of grounds which would
require that a motion for arrest of judgment be sustained, if filed, the court
may arrest the judgment without motion."

[*756] The legislature also adopted the counterpart of Fed. R. Crim. Proc.
12, with modifications:

"(3) Defenses and objections based on defects in the institution of the
prosecution or in the complaint, information or indictment other than that it
fails to show jurisdiction in the court or to charge a crime may be raised only
by motion before trial. The motion shall include all such defenses and
objections then available to the defendant. Failure to present any such defense
or objection as herein provided constitutes a waiver thereof, but the court for
cause shown [**758] may grant relief from the waiver. *Lack of jurisdiction or
the failure of the complaint, information or indictment to charge a crime shall
be noticed by the court at any time during the pendency of the proceeding.*"
(Emphasis added.) K.S.A. 1989 Supp. 22-3208.

The framing [***59] of the information is outlined by K.S.A. 22-3201(2).
Defects in the institution of the prosecution or in the information, other than
jurisdiction or the charging of a crime, are waived if not raised by motion
prior to trial. *State v. Smith*, 209 Kan. 664, 665, 498 P.2d. 78 (1972); K.S.A.
1989 Supp. 22-3208(3).

A defendant has the right to file a written motion for a bill of particulars
when the information charges a crime but fails to specify the particulars of the
crime sufficiently to enable the defendant to prepare a defense. The court may
require the prosecuting attorney to furnish the defendant with a bill of
particulars. The State's evidence must be confined to the particulars of the
bill. K.S.A. 22-3201(5).

The history of information sufficiency in this jurisdiction was discussed by
Chief Justice Prager speaking for the court in *State v. Micheaux*, 242 Kan. at
198, and by Justice Lockett speaking for the court in *State v. Rasch*, 243 Kan.
495, 497, 758 P.2d 214 (1988).

K.S.A. 22-2103 establishes a legislative prologue for the code of criminal
procedure. The code is intended to [***60] provide for the just determination
of every criminal proceeding. Its provisions shall be construed to secure
simplicity in procedure, fairness in administration, and the elimination of
unjustifiable expense and delay.

We now turn to a discussion of jurisdiction. Article 3 § 6 (b) of the
Kansas Constitution provides that district courts shall have such jurisdiction
in their respective districts as may be provided by law.

[*757] The legislature has provided that each county shall have a district
court of record which shall have general original jurisdiction of all matters
both civil and criminal, unless otherwise provided by law. K.S.A. 20-301.

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

The district court holds exclusive jurisdiction to try all felony and other criminal cases. K.S.A. 22-2601.

The Kansas Constitution and legislative action have vested in the district courts of this state subject matter jurisdiction for felony cases. Subject matter jurisdiction is the power of the court to hear and decide a particular type of action. *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985). The concept of subject matter jurisdiction is highlighted by the *Matzke* case. Matzke contended **[***61]** that the district court of Pottawatomie County lacked jurisdiction in his criminal proceeding because he had become an "Absolute Natural Person" by virtue of his affidavits, which purported to revoke all governmental agency powers. Such a revocation, he claimed, removed him from the strictures of our society and from the jurisdiction of the courts of Kansas. We held that the district court of Pottawatomie County had subject matter jurisdiction. It had the power to hear and decide Matzke's case. Personal (in personam) jurisdiction was acquired in Matzke's case when he was properly served as a resident of this State. The criminal action was properly initiated.

Subject matter jurisdiction lies in the district court and follows the defendant through the process of the issuing of the complaint, arrest pursuant to a warrant, initial appearance, the setting or denial of bond at the bond hearing, and the preliminary hearing, arraignment, and trial.

We have focused in Hall's case upon the claim of a defective information raised for the first time on appeal. An information is defined in K.S.A. 1989 Supp. 22-2202(12) as "a verified written statement . . . presented to a court, which charges **[***62]** the commission of a crime." (A "complaint" is a written statement under oath of the essential facts constituting a crime. K.S.A. 1989 Supp. 22-2202[8]. An "indictment" is a written statement, presented by a grand jury to a court, which charges the commission of a crime. K.S.A. 1989 Supp. 22-2202[11]).

**[**759]** Our past reasoning has dictated the reversal we have applied to Count II, the theft of the cattle, in the instant case. The word **[*758]** "permanently" was omitted from the information. There was no incorporation by reference from Count III where "permanently" was alleged with reference to the theft of the truck and trailer that hauled the Count II cattle.

We note: (1) the jury was instructed properly as to all of the elements of theft in Counts II and III; (2) the information in Counts II and III cited the theft statute ( K.S.A. 21-3701, listing a class E felony); (3) no bill of particulars was requested by Hall ( K.S.A. 22-3201[5]); (4) no motion for arrest of judgment was filed ( K.S.A. 22-3502); (5) Hall was represented by experienced retained counsel; and (6) no argument has been advanced by Hall that the omission of "permanently" in Count II of the information prejudiced him **[***63]** in any way or in any way interfered with the preparation of his defense. We have reversed Count II based upon precedent.

We now depart from that precedent. We depart from what we believe to have been a mistaken judicial blending of the concepts of "jurisdiction."

K.S.A. 22-3201 requires the information to be "a plain and concise written statement of the essential facts constituting the crime charged, which . . . information . . . drawn in the language of the statute, shall be deemed sufficient." Citation of the statute which the defendant is alleged to have violated is required but if omitted the omission is not fatal unless the defendant is prejudiced. We have then consistently held that if an element of

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

the crime is omitted a jurisdictional defect is present which may be raised for the first time on appeal. *State v. Browning*, 245 Kan. 26, 774 P.2d 935 (1989); *State v. Wilson*, 240 Kan. 606, 731 P.2d 306 (1987).

We have also held that, pursuant to K.S.A. 22-3201(4), the trial court may permit an information to be amended at any time before verdict if no new crime is charged and if substantial rights of the defendant **[***64]** are not prejudiced. *State v. Rasch*, 243 Kan. 495, 758 P.2d 214 (1988). In *Rasch*, the defendant was convicted of four counts of aggravated robbery, one count of attempted aggravated robbery, and two counts of aggravated battery. Rasch claimed that the aggravated robbery convictions should be reversed because the State did not amend the jurisdictionally defective complaint. It was admitted that the complaint as originally **[*759]** filed lacked the statutory language "[b]y threat of bodily harm . . . or by force." The State made an oral motion to amend the complaint, which was granted, and a subsequent journal entry cured the insufficiency of the complaint. In *Rasch* we held that when the defendant and counsel are present and permission is obtained from the judge, the State may orally amend the complaint or information any time before the verdict or finding, if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. We also reasoned that, when the jury has been properly instructed on the elements of the crime, a complaint or information which the State has orally amended to correct a deficiency **[***65]** is valid unless the substantial rights of the defendant are prejudiced. The amendment may be shown by (1) interlineation on the complaint or information, (2) the filing of an amended information, or (3) a journal entry stating the amendment. *Rasch*, 243 Kan. at 501. In *Rasch*, the journal entry reflecting the amendment was filed and approved by Rasch's counsel nearly two months before trial. In *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1989), the State moved to amend the information to reflect a change in dates in certain counts charging indecent liberties with a child at the close of the State's evidence to conform the charges with the evidence. The trial court granted the motion. Nunn contended that since the amendments were oral the State is bound by the original information. The journal entry recording the oral amendment was filed subsequent to trial. We held that when a motion to amend is made during trial, with defendant and counsel present, absent any showing of prejudice to the defendant, the amendment is effective immediately. The court's action is not invalidated because a written **[**760]** journal entry is **[***66]** not filed until after the trial has been completed. We extended the rationale of *Nunn* in *State v. Switzer*, 244 Kan. 449, 769 P.2d 645 (1989), to permit an oral amendment of the information during trial to be validated by a nunc pro tunc amendment to the journal entry ordered by this court in our opinion.

The cases that we have considered under K.S.A. 22-3201(5), in amending an information, have not presented insoluble jurisdictional problems. Jurisdiction does not descend on the proceedings at the moment the amendment is granted or, as in **[*760]** *Switzer*, months or years later when the nunc pro tunc order is signed by the trial court after a ruling on appeal.

We also note our series of cases represented by *State v. Maxwell*, 234 Kan. 393, 672 P.2d 590 (1983). In *Maxwell*, and its predecessors, we considered a claim of a fatally defective information. Maxwell was charged with aggravated burglary. He claimed that, because the information did not specify the type of felony he was intending to commit at the time of entry into the residence, the information was defective. The argument, which was also advanced **[***67]** by the defendant in *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973), is that

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

without knowing what evidence the State would present it was impossible to
disprove the element of intent to commit a felony.

We reasoned that such an information was defective but that the defect does
not automatically result in prejudicial error.    There was no prejudicial error
in *Maxwell* because the underlying felony was made clear to defendant before
trial by "both the context of the other charges in the information and the
preliminary hearing." 234 Kan. at 398.

The proper procedure for a defendant who contends either that the information
does not charge a crime or that the court was without jurisdiction of the crime
charged is to utilize the statutory remedy extended by the legislature for these
two specific situations -- a K.S.A. 22-3502 motion for arrest of judgment. This
remedy, available for 10 days after disposition at the trial court level, is of
benefit to a defendant.    It is preferable to raise either or both of these
claims in the trial court rather than waiting to raise the issues for the first
time on appeal.  If the motion [***68]  is denied by the trial court, the denial
may be appealed, if appropriate, to the Court of Appeals or to this court.  This
approach would allow the district court to pass on the defendant's contentions
in timely fashion and to comply with what we deem to be the procedure intended
by the legislature.  The State is authorized by K.S.A. 22-3602(b)(2) to appeal
from an order of the district court arresting judgment.

We continue to hold that a defendant, for the first time on appeal, may raise
either the issue of trial court jurisdiction or the claim that the information
does not charge a crime.

   [*761]   We have set out in this opinion the tests forming the rule we will
apply in the future to determine the validity of such a "first time on appeal"
claim.    The longer it takes for the defendant to challenge the sufficiency of
the information, the greater the presumption of regularity.    2 Orfield's
Criminal Procedure under the Federal Rules § 12:97 (2d ed. 1985).

In *U.S. v. Campos-Asencio*, 822 F.2d 506 (5th Cir. 1987), the defendant was
convicted of illegal reentry into this country after deportation.  He raised for
the first time on appeal the failure of the indictment [***69]  to explicitly
allege lack of consent by the attorney general to his reentry.  Campos-Asencio
argued that such an omission rendered the indictment insufficient.  The Fifth
Circuit, while noting that normally objections to an indictment are waived if
not made before trial, commented that a defendant may at any time claim that an
indictment fails to "charge the offense," citing Fed. R. Crim. Proc. 12(b)(2).

"However, when, as here, the defendant had notice of the issue, demonstrates no
prejudice, and waits for appeal to assert his challenge, an appellate court will
read the indictment liberally.  *Oberski*, 734 F.2d at 1035; 2 W. LaFave & J.
Israel, [**761]  *Criminal Procedure*, 445-51.  A statutory citation cannot, by
itself, substitute for setting forth the elements of the crime, but a citation
may reinforce other references within the indictment. *United States v. McLennan*,
672 F.2d 239, 244 (1st Cir. 1982).  The indictment in the instant case both
alleges that Campos was in the United States 'unlawfully' and points to the
specific statute containing the lack of consent requirement.  Hence the
indictment sufficiently alleges lack of consent." 822 F.2d at 508. [***70]

We agree with the rationale expressed by the United States Court of Appeals
for the Ninth Circuit in *United States v. Pheaster*, 544 F.2d 353 (9th Cir.
1976), *cert. denied* 429 U.S. 1099 (1977).  One of the questions in *Pheaster*
related to the sufficiency of the indictment. Defendants were convicted on all

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

counts of a twelve-count indictment charging conspiracy to kidnap and mailing of requests for ransom and extortionate threats. The *Pheaster* court evaluated the challenge to the indictment against the fundamental requirements imposed by the Sixth Amendment. "A challenge to the sufficiency of an indictment is not a game in which the lawyer with the sharpest eye or the cleverest argument can gain reversal for his client. '"Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused."'" 544 F.2d at 360 (citing *Russell v.* **[*762]** *United States*, 369 U.S. 749, 763, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962). The defendant in *Pheaster* claimed that Count I of the indictment failed to state a federal offense and, therefore, **[***71]** was incapable of supporting his conviction. The Ninth Circuit, in upholding the sufficiency of the indictment, noted that the asserted inadequacy of Count I was first brought to the attention of the district court only after all the evidence had been received in an extensive jury trial. After observing that failure of an indictment to state an offense is a fundamental defect which can be raised at any time, the court commented, "However, the very limited resources of our judicial system require that such challenges be made at the earliest possible moment in order to avoid needless waste. Consequently, although such defects are never waived, indictments which are tardily challenged are liberally construed in favor of validity. For example, this Court held that when an indictment is not challenged before the verdict, it is to be upheld on appeal if '"the necessary facts appear in any form or by fair construction can be found within the terms of the indictment."'" 544 F.2d at 361. The court was of the opinion that, where the challenge to the indictment came in a motion for acquittal after all evidence had been received, the "long delay in raising the issue suggests **[***72]** a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the defendants." 544 F.2d at 361. *Pheaster* notes that the fact of delay tends to negate the possibility of prejudice in the preparation of the defense. "When an objection to an indictment is not timely made, the reviewing court has considerable leeway to imply the necessary allegations from the language of the indictment." 544 F.2d at 362.

We find the following comments of *Pheaster* cogent to the sufficiency of an information issue. (1) The defendant in *Pheaster* did not claim either in the trial court or on appeal that the language of the indictment had in any way prejudiced the preparation of his defense; (2) defendant was represented by competent and experienced counsel, yet the challenge to the indictment came at the end of the trial, after all the evidence had been received; and (3) no claim had been made that the defective drafting of Count I of the indictment would in any way **[*763]** impair Pheaster's ability to plead the conviction in any subsequent prosecution.

The Fifth Circuit in *United States v. Trollinger*, 415 F.2d 527, 528 (5th Cir. 1969), **[***73]** held that an initial challenge, raised for the first time on appeal, attacking the sufficiency of an indictment will fail and the indictment must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant was convicted. The Second and Seventh Circuits have also **[**762]** so held; *United States v. Santelistes*, 476 F.2d 787 (2d Cir. 1973); *United States v. Knippenberg*, 502 F.2d 1056, 1061 (7th Cir. 1974) (The omission of the word "wilfully" in an indictment charging transportation of stolen securities in interstate commerce is not fatal although the terms of the statute, 18 U.S.C. § 2(b) (1988) state "wilfully.").

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

"[A]n indictment not challenged before trial will be upheld 'unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.'" *United States v. Watkins*, 709 F.2d 475, 478 (7th Cir. 1983).

The Sixth Amendment provides that "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." In *Russell v. United States*, 369 U.S. 749, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962), **[***74]** the United States Supreme Court set forth the essential criteria for measuring the sufficiency of an indictment. It must contain the elements of the offense and sufficiently apprise the defendant of what he or she must be prepared to meet. In case of further proceedings against the defendant for a similar offense, the record must show with accuracy to what extent the defendant may plead a former acquittal or conviction.   369 U.S. at 763-64. In *Russell*, the petitioner had refused to answer questions before the House Un-American Activities Committee and, subsequently, was indicted for contempt of Congress.   The United States Supreme Court held that the indictment must state the subject of the inquiry so that the court will have a basis for its determination of the pertinency of the questions asked the petitioner.

The Tenth Circuit has held that, in determining the sufficiency of an indictment challenged as being vague and indefinite, the whole of the indictment must be taken into consideration.  *United* **[*764]** *States v. Crummer*, 151 F.2d 958, 962 (10th Cir. 1945), *cert. denied* 327 U.S. 785 (1946). **[***75]**

Failure of an information to state an offense is a fatal defect and, like an allegation that the court is without jurisdiction, may be raised at any time during the pendency of the proceeding.  K.S.A. 1989 Supp. 22-3208(3).   The orderly resolution of criminal law issues requires timely raising of claims relating to the validity of an information.  Tardily challenged informations are to be construed liberally in favor of validity.  The validity of an information is to be tested by reading the information as a whole.  The elements of the offense may be gleaned from the information as a whole.  An information not challenged before verdict or finding of guilty or pursuant to K.S.A. 22-3502 by a motion for arrest of judgment will be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted. *United States v. Watkins,* 709 F.2d at 478.

We urge the defense bar to utilize this K.S.A. 22-3502 arrest of judgment defense tool.  If the court did not have jurisdiction, or if the information did not charge a crime for which the defendant was convicted, the defendant is entitled to a determination **[***76]** of that condition at the trial court level.

We are applying a "common-sense" interpretation of informations when faced in the future with the issue of jurisdiction or failure to charge a crime as a result of a claimed defective information raised for the first time on appeal. We will review the information as a whole and interpret it to include facts which are necessarily implied.  A tardy "first time on appeal" challenge to the information will be faced with a liberal construction in favor of validity.   1 Wright, Federal Practice and Procedure: Crim. 2d §   123 at 354 (1982);  5 Orfield, Criminal Procedure under the Federal Rules, §   34:4 at 389 (2d ed. 1987).

A motion for arrest of judgment is the proper procedure for a defendant who wishes to challenge the sufficiency of the information after trial because of either a claim that it did not charge a crime or that the court was without

246 Kan. 728, *; 793 P.2d 737, **;
1990 Kan. LEXIS 124, ***

jurisdiction of the crime charged. When such a motion is timely filed, the trial court, in reviewing the motion, shall test its merit by utilizing the rationale of our pre-*Hall* cases.

[*765]  We recognize that a defendant may raise these same two defect of information [**763] claims for the first time [***77] on appeal; however, for all informations filed after the date of this opinion, we prospectively adopt the following rule:

The Prospective Rule

Information defect challenges raised for the first time on appeal shall be reviewed by applying (1) the reasoning of K.S.A. 22-3201(4) complaint/information/indictment amendment cases as expressed in *State v. Switzer*, 244 Kan. 449, 769 P.2d 645 (1989), *State v. Nunn*, 244 Kan. 207, 768 P.2d 268 (1988), and *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988), as that reasoning relates to jurisdiction and the substantial rights of the defendant; (2) the "common-sense" test of *State v. Wade*, 244 Kan. 136, 766 P.2d 811 (1989), and *State v. Micheaux*, 242 Kan. 192, 747 P.2d 784 (1987); and (3) the rationale of *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied* 729 U.S. 1099 (1977). Of paramount importance, we shall look to whether the claimed defect in the information has: (a) prejudiced the defendant in the preparation of his [***78] or her defense; (b) impaired in any way defendant's ability to plead the conviction in any subsequent prosecution; or (c) limited in any way defendant's substantial rights to a fair trial under the guarantees of the Sixth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 10. If a defendant is able to establish a claim under either (a), (b), or (c), the defective information claim, raised for the first time on appeal, will be allowed.

We hereby overrule all cases contrary to the "claim of a defective information raised for the first time on appeal" rule announced in this opinion.

Reversed as to Count II, theft of cattle; affirmed as to all other issues.

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE IMMIGRATION COURT
*EXECUTIVE OFFICE FOR IMMIGRATION REVIEW*

| TYPE OF PROCEEDING | | | |
|---|---|---|---|
| ☐ Deportation | ☒ Bond Redetermination | ☐ Disciplinary | **DATE** 5/19/03 |
| ☐ Removal | ☐ Motion to Reopen/Reconsider | | **ALIEN NUMBER(S)** (list lead alien number and all family member alien numbers if applicable) |
| ☐ Exclusion | ☐ Rescission | | |

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

**ALIEN NUMBER(S):** A92 800 131

NAME  (First) *Juan*    (Middle Initial)    (Last) *LARIN - ULLOA*

ADDRESS (Number & Street) *PISPC*    (Apt No.)    (City)    (State)    (Zip Code)

Please check one of the following

☒ 1.    I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia.

*Name(s) of Court(s)*    *State Bar No. (if applicable)*
*Texas*    03052800

(Please use space on reverse side to list additional jurisdictions.)

I ☒ am not (or ☐ am - explain fully on reverse side) subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2.    I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization):

☐ 3.    I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Immigration Court. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNATURE OF ATTORNEY OR REPRESENTATIVE    EOIR ID#    TELEPHONE NUMBER (Include Area Code) 956 4213226    DATE

NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT) *Lisa S. Brodyaga*    ADDRESS ☐ Check here if this is a new address *17891 Landrum Pk Rd San Benito Tx 78586*

**Certificate of Service**

I *Lisa Brodyaga* mailed or delivered a copy of the foregoing on 5/19/03 (Date) to the Immigration and Naturalization Service at *1409 Loy St Harlingen Tx* (Address)

X _____
Signature of Attorney or Representative

OMB#1125-0006

FORM EOIR-28
August 99

**(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)**

B-38



U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
RT 3 BOX 341  BUENA VISTA DR
LOS FRESNOS, TX  78566

In the Matter of:                    Case No.: A92-800-131
LARIN-ULLOA, JUAN

                                     Docket: PORT ISABEL SERVICE PROCESSING CENTER

RESPONDENT                           IN REMOVAL PROCEEDINGS

CUSTODY ORDER OF THE IMMIGRATION JUDGE

Request having been made for a change in the custody status of the respondent pursuant to 8 C.F.R. Part 236 and having considered the representations of the Immigration and Naturalization Service and the respondent, it is HEREBY ORDERED that:

The Immigration Court does not have jurisdiction over this matter.


                                     ELEAZAR TOVAR
                                     Immigration Judge
                                     Date:  May 22, 2003

Appeal: *Reserved* (A/I/B)
Appeal Due By: June 23, 2003

_____
                    CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)  PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] Alien's ATT/REP  [ ] INS
DATE: _____    BY: COURT STAFF _____
      Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
_____

Form EOIR 1 - 1T (Custody - REMOVAL)
GG2

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
201 EAST JACKSON STREET
HARLINGEN, TEXAS 78550

FILE; A92-800-131

IN RE: JUAN LARIN-ULLOA

IN CUSTODY REDETERMINATION PROCEEDINGS

ON BEHALF OF RESPONDENT:   Lisa S. Brodyaga, Esq.
Refugio Del Rio Grande
17891 Landrum Park Road
San Benito, TX 78586

ON BEHALF OF THE DEPARTMENT OF HOMELAND SECURITY:
Assistant District Counsel
Department of Homeland Security
P.O. Box 1711
Harlingen, TX 78551

CHARGE:                    Sec. 237(a)(2)(A)(iii), I&N Act [U.S.C. §1227(a)(2)(iii)
Convicted Of An Aggravated Felony

APPLICATION:               Second bond redetermination

## MEMORANDUM DECISION OF THE IMMIGRATION JUDGE

The respondent has requested a second reconsideration of the conditions of his custody status pursuant to the authority of the Court contained in Section 236(c) of the Act.

On March 14, 2002, respondent requested his first bond reconsideration. The Court denied said request, finding that since the respondent had been convicted of an aggravated felony the Court had no jurisdiction. The respondent appealed.

On June 25, 2002, the Board of Immigration Appeals (hereinafter the Board) affirmed the decision.

On May 22, 2003 the Court heard Respondent's second request for bond reconsideration. Respondent relied upon the recent Supreme Court decision of Demore v. Kim, 123 S. Ct. 1708 (2003) as reasons for the reconsideration. Respondent also relied upon the appeal to the Board of respondent's removal order.

In requesting the instant bond reduction, the respondent has submitted a Motion for Joseph Bond hearing, Points and Authorities in Support of Respondent's Motion for Joseph Bond Hearing, and a copy of Respondent's Brief on Appeal and Motion to Terminate which are hereby incorporated into this memorandum decision and made a part thereof.

This Court finds that respondent has failed to show that the circumstances have changed materially since the prior bond redetermination. See 8 C.F.R. §3.19(e).

Since the respondent's circumstances have not changed materially since the prior bond redetermination, respondent's request is hereby **DENIED. SO ORDERED.**

Dated this _____5th_____ day of June, 2003.


ELEAZAR TOVAR
IMMIGRATION JUDGE

drl/5

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

**Notice of Appeal from a Decision of an Immigration Judge**

*(left margin, vertical text)* Staple Check or Money Order Here. Include Name(s) and "A" number(s) on the face of the check or money order.

**1.**  List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

For Official Use Only

*Juan Larin - Ulloa*

*A 92 800 131*

**!  WARNING:** Names and "A" Numbers of everyone appealing the Immigration Judge's decision must be written in item #1.

**2.**  I am the  ☒ Respondent/Applicant ☐ INS  *(Mark only one box.)*

**3.**  I am  ☒ DETAINED ☐ NOT DETAINED  *(Mark only one box.)*

**4.**  My last hearing was at  *Los Fresnos, Texas*  *(Location, City, State)*

**5.**  **What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐  I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated _____ .

☒  I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated
  *May 22, 2003* .

☐  I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _____ .

*(Please attach a copy of the Immigration Judge's decision you are appealing.)*

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

**Page 1 of 3**

*Internet Version*

6. | State in detail the reason(s) for this appeal. Please refer to the Instructions at part F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

Where The Immigration Judge stated That he was inclined to agree That The judgment of conviction was void on its face, it was error to deny a bond under Matter of Joseph, 22 I&N Dec (BIA 1999) on the basis That There were no "changed circumstances," even Though Respondent has complied with Matter of Lozada, 19 I&N Dec 637 (BIA 1988) with respect to The attorney who admitted The allegation That a conviction existed. New counsel, with evidence showing That The Respondent previously suffered from ineffective assistance of counsel, is a "changed circumstance within The meaning of Matter of Uwacha, 20 I&N Dec *(Attach additional sheets if necessary)* 133 (BIA 1989)

! **WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7. Do you desire oral argument before the Board of Immigration Appeals?   ☐ Yes   ☒ No

8. Do you intend to file a separate written brief or statement after filing this Notice of Appeal?   ☒ Yes   ☐ No

! **WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9. | **SIGN HERE ➡** | X _____   5/23/03
                          Signature of Person Appealing          Date
                          *(or attorney or representative)*

Form EOIR-26
Revised Sept. 2002

*Internet Version*

10.

**Mailing Address of Respondent(s)/Applicant(s)**

*Juan Larin - Ulloa*
(Name)
*detained at PISPC*

*perm. address* (Street Address)
*2348 S. Greenwood*
(Apartment or Room Number)
*Wichita Kansas 67211*
(City, State, Zip Code)

(Telephone Number)

11.

**Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s)**

(Name)

**Lisa Brodyaga, Attorney**
~~EFUGIO DEL RIO GRANDE~~
17891 Landrum Park Road
San Benito, Texas 78586
(Suite or Room Number)

(City, State, Zip Code)

*956 421 3226*
(Telephone Number)

---

**NOTE:** You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

---

12.

**PROOF OF SERVICE**
**(You Must Complete This)**

I *Lisa Brodyaga* mailed or delivered a copy of this Notice of Appeal
(Name)

on *5/23/03* to *PO Box 1711    DHS*
(Date)                                  (Opposing Party)

at *Harlingen Tx 78551*
(Address of Opposing Party)

**SIGN HERE** ➤  X _____
Signature

---

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

---

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

---

❏ Read all of the General Instructions
❏ Provided all of the requested information
❏ Completed this form in English
❏ Provided a certified English translation for all non-English attachments

**HAVE YOU?**

❏ Signed the form
❏ Served a copy of this form and all attachments on the opposing party
❏ Completed and signed the Proof of Service
❏ Attached the required fee or Fee Waiver Request

**Page 3 of 3**

Form EOIR-36
Revised Sept. 2002

*Internet Version*

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

| TYPE OF PROCEEDING: | | |
|---|---|---|
| ☐ Deportation | ☑ Bond Redetermination | ☐ Disciplinary |
| ☐ Removal | ☐ Motion to Reopen/Reconsider | |
| ☐ Exclusion | ☐ Rescission | |

DATE     05/23/2003

ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)

A92 800 131

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

| NAME | (First) | (Middle Initial) | (Last) |
|---|---|---|---|
| | Juan | | Larin-Ulloa |

| ADDRESS | (Number & Street) | (Apt. No.) | (City) | (State) | (Zip Code) |
|---|---|---|---|---|---|
| | Port Isabel Service Processing Center | | Bayview | Texas | |

Please check one of the following:

☑ 1. I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia:

*Name(s) of Court(s)*                              *State Bar No. (if applicable)*

Texas Supreme Court                               03052800

(Please use space on reverse side to list additional jurisdictions.)

I ☑ am not (or ☐ am - explain fully on reverse side) subject to any order of any court or adminstrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2. I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization): _____.

☐ 3. I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID# | TELEPHONE NUMBER (Include Area Code) | DATE |
|---|---|---|---|
| | | (956) 421-3226 | 05/23/2003 |

| NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT) | ADDRESS     ☐ Check here if this is a new address |
|---|---|
| Lisa S. Brodyaga | REFUGIO DEL RIO GRANDE   17891 Landrum Park Rd.  San Benito, TX 78586 |

**Certificate of Service**

I  Lisa Brodyaga  mailed or delivered a copy of the foregoing on  05/23/2003  to the Immigration
(Name)                                                                                (Date)

and Naturalization Service at  PO Box 1711 Harlingen, Tx 78551
(Address)

X _____
Signature of Attorney or Representative

OMB#1125-0005

FORM EOIR-27
August 99

**(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)**

*(Internet Version)*

## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BEFORE THE BOARD OF IMMIGRATION APPEALS

**In re**

**JUAN LARIN-ULLOA**              **IN BOND PROCEEDINGS**
**A92 800 131**

**RESPONDENT'S BRIEF ON APPEAL FROM IJ'S DETERMINATION THAT
INEFFECTIVE ASSISTANCE OF COUNSEL AT HIS FIRST HEARING
DOES NOT CONSTITUTE "CHANGED CIRCUMSTANCES" FOR PURPOSES
OF BEING AFFORDED A SECOND BOND HEARING, EVEN WHERE HIS
RIGHT TO BOND IS OTHERWISE ACKNOWLEDGED BY THE JUDGE.**

Respondent, through the undersigned, files the instant brief in
support of his appeal from the holding of the Immigration Judge
that, even though the Judge was "inclined to agree" that Mr. Larin
is not subject to removal, because the conviction is void on its
face, the fact that he has demonstrated ineffective assistance of
counsel [1] does not constitute "changed circumstances" for purposes
of being afforded a second bond redetermination hearing.

### I. INTRODUCTION, AND REASONS WHY THE INSTANT APPEAL IS
### NOT APPROPRIATE FOR DISPOSITION BY A SINGLE BOARD MEMBER.

At his bond hearing, Mr. Larin urged, and the Immigration Judge did
not dispute, that he is not removable as charged, in that the
alleged conviction is void on its face. [2] Alternatively, he argued
that if a valid conviction exists, it cannot be a "crime of
violence" within the meaning of 8 U.S.C. §1101(a)(43)(F), since the

---

[1]   Prior counsel did not notice the error on Information,
which had been amended by interlineation in an attempt to charge a
lesser offense, but which actually charged nothing. He therefore
erroneously admitted that Mr. Larin had been "convicted," even
though he denied removability.

[2]   At the hearing, the Judge stated that he was "inclined to
agree" that the conviction document was void on its face, and that
it therefore could be collaterally attacked.  However, in his
Memorandum Decision, the Judge did not address the merits of Mr.
Larin's position.  Rather, the Judge denied the request on the
basis that ineffective assistance of counsel was not a "changed
circumstance."  This, it is submitted, is error.

redacted Information on which it is based does not allege
sufficient facts to conclude that he has been convicted of an
offense within its scope. Therefore, he urged that he is entitled
to bond under *Matter of Joseph,* 22 I&N Dec. 799 (BIA 1999). In
support of his claim, he submitted a copy of his brief to the BIA.
The brief demonstrated not only that the conviction was void on its
face, but that he had made the requisite showing to raise the
issue, under *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1988).

Unfortunately, the Memorandum Decision of the Immigration Judge
does not comply with *Matter of S-H-,* 23 I&N 462 (BIA 2002). It
fails to address the reasons urged by Respondent for asserting that
he had shown "changed circumstances," (to wit, the ineffective
assistance of counsel, and the fact that he is not subject to
removal). Similarly, the Memorandum makes no reference to the
merits of Mr. Larin's claim, even though the Judge, (who is himself
a former District Attorney, and is therefore knowledgeable about
criminal law and procedure), stated at the hearing that he was
"inclined to agree" that the conviction was void on its face, and
therefore vulnerable to a collateral attack in removal proceedings.

These issues are neither "squarely controlled by existing Board or
federal court precedent," nor are they "so insubstantial that
three-Member review is not warranted," within the meaning of either
8 C.F.R. §1003.1(a)(7) or §1003.1(e)(4). Consequently, Mr. Larin
urges that the legal issues herein should be addressed by a three-
member panel. Further, since they are purely legal, and since he
has already been detained at government expense for well over a
year, no useful purpose would be served by a remand for the
Immigration Judge to issue a new decision. Rather, Mr. Larin's
entitlement to bond should be decided by the Board, under the
standards of *Matter of Joseph, supra,* and the case remanded only
for a determination of the appropriate amount, based on whether he
constitutes a flight risk or danger to the community.

2

## II.  ISSUES PRESENTED

A.  PARTICULARLY SINCE BOND HEARINGS ARE NOT CONDUCTED ON THE RECORD, THE MEMORANDUM DECISION OF THE IMMIGRATION JUDGE SHOULD MEANINGFULLY ADDRESS THE ISSUES RAISED, IN ACCORDANCE WITH *MATTER OF S-H-*, 23 I&N 462 (BIA 2002).

B.  WHERE PRIOR COUNSEL FAILED TO NOTE THAT THE CONVICTION WAS VOID ON ITS FACE, COMPLIANCE WITH THE REQUIREMENTS OF *MATTER OF LOZADA* CONSTITUTES CHANGED CIRCUMSTANCES, UNDER *MATTER OF ADENIJI,* 22 I&N DEC. 1102 (BIA 1999), AND ENTITLES MR. LARIN TO A SECOND BOND HEARING AT WHICH TO RAISE THAT ISSUE.

C.  MR. LARIN IS ENTITLED TO A BOND HEARING UNDER *MATTER OF JOSEPH.*

> 1.  THE REDACTED INFORMATION IS SO DEFICIENT THAT, UNDER KANSAS LAW, IT FAILED TO CONFER JURISDICTION, AND THE ALLEGED CONVICTION IS THEREFORE VOID ON ITS FACE.

> 2.  IN THE ALTERNATIVE IT IS CLEAR THAT MR. LARIN WAS NOT CONVICTED UNDER KANSAS STATUTES ANNOTATED 21-3414(a) (1)(A), AND THE REDACTED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO DETERMINE THAT HE WAS CONVICTED UNDER ANY STATUTE CONSTITUTING A CRIME OF VIOLENCE.

## II.  ARGUMENT

**A.  PARTICULARLY SINCE BOND HEARINGS ARE NOT CONDUCTED ON THE RECORD, THE MEMORANDUM DECISION OF THE IMMIGRATION JUDGE SHOULD MEANINGFULLY ADDRESS THE ISSUES RAISED, IN ACCORDANCE WITH *MATTER OF S-H-*, 23 I&N 462 (BIA 2002).**

First, Respondent would note that the Memorandum Decision of the Immigration Judge fails to comply with *Matter of S-H-, supra.* Although the Judge found that there were no changed circumstances, he gave no reason for rejecting Respondent's claim that ineffective assistance of counsel was a changed circumstance for this purpose, particularly since, under the Judge's own admission, it would dramatically change the result.  Nor was the Judge willing to memorialize his conclusion that, in fact, the instant conviction was void on its face, and that Mr. Larin would have been entitled to bond, if his prior counsel had raised the issue.

3

However, rather than remand for a new decision, in the interest of time, Mr. Larin urges the Board to address the issues in the first instance, and remand for a hearing solely on the question of whether Mr. Larin is a flight risk, or danger to the community.

**B.   WHERE PRIOR COUNSEL'S PERFORMANCE WAS SO DEFICIENT THAT HE FAILED TO NOTE THAT THE CONVICTION WAS VOID ON ITS FACE, COMPLIANCE WITH THE REQUIREMENTS OF *MATTER OF LOZADA* CONSTITUTES CHANGED CIRCUMSTANCES FOR THE PURPOSE OF OBTAINING A SECOND BOND HEARING.**

In refusing to conduct a second bond hearing, the Immigration Judge cited 8 C.F.R. §3.19(e) (now, §1003.19(e)), which reads as follows:

> (e)  After an initial bond redetermination, a request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.

However, material changes in the circumstances are not limited to factors relating to risk of flight or danger to the community. As seen from *Matter of Adeniji, supra,* they also include eligibility, as a matter of law, to having a bond set. Ironically, *Adeniji* is the only published Board decision which addresses §3.19(e). There, the Board found "a material change in circumstances," based on its new interpretation of the applicable law. *See also, Matter of Valles-Perez,* 21 I&N Dec. 769 (BIA 1997), where the changed circumstances was the fact that INS had abandoned one charge of deportability, and leveled another, which the Immigration Judge found not to have been sustained.

In the case at bar, the changed circumstances involve the fact that Mr. Larin's prior counsel overlooked an issue which even the Immigration Judge opined would constitute an absolute defense to the charges. In that sense, the case is virtually identical to *Valles-Perez, supra,* where the Judge ordered the immigrant released on recognizance, once he concluded that he was not deportable.

4

Although prior counsel erroneously "admitted" that Mr. Larin had been convicted under §21-3414(a)(1)(A), he is entitled to assert, and has asserted, the contrary in the appeal to the Board of the Immigration Judge's order that he be removed. [3]  Should the Board dismiss his appeal on that basis, he would be entitled to reopening on the grounds of ineffective assistance of counsel.  He may therefore raise the issue on appeal. *See, Zamora-Morel v. INS,* 905 F.2d 833, 839 (5th Cir. 1990). Although no remand is required to address the error, Mr. Larin has fulfilled the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988).  He wrote prior counsel, asking for an explanation of his conduct.  He has advised the Board that prior counsel has not responded.  A declaration under penalty of perjury was attached to his brief, stating that Mr. Larin hired Mr. Phillips to represent him, and paid a substantial fee for his representation.  Also, a grievance was filed with the State Bar of Kansas, where Mr. Phillips is licensed.

He therefore stands a strong chance of succeeding on his pending appeal of the underlying removal Order before the Board.

C. **MR. LARIN IS ENTITLED TO A BOND HEARING UNDER *MATTER OF JOSEPH*.**

**1. THE REDACTED INFORMATION IS SO DEFICIENT THAT, UNDER KANSAS LAW, IT FAILED TO CONFER JURISDICTION, AND THE ALLEGED CONVICTION IS THEREFORE VOID ON ITS FACE.**

As seen from the Notice to Appear as found in the record of proceedings, with the notes made by the Immigration Judge as to how Respondent pled to the allegations, (all of which were admitted), prior counsel made an extremely important error, one which was also overlooked by the Immigration Judge.  Counsel "admitted" that Respondent's conviction was under Kansas Statutes Annotated 21-3414(a)(1)(A), and the Immigration Judge followed that erroneous

---

[3] Fortunately, prior counsel did not concede that the offense was an aggravated felony.

5

admission, finding that the Respondent had been convicted of an aggravated felony. This is incorrect. The Information shows on its face that it was redacted by interlineation, and the offense to which Respondent pled guilty was **not** K.S.A. 21-3414(a)(1)(A). To the contrary, it fails to charge any offense at all.

### 2. THE BOARD CAN ONLY GO BEHIND A PURPORTED CRIMINAL CONVICTION WHERE IT IS VOID ON ITS FACE.

Neither the Immigration Court nor the BIA can go behind a judgment of conviction, unless it is void on its face. *See, e.g., Matter of Rodriguez-Carrillo,* 22 I. & N. Dec. 1031 (BIA 1999) (emphasis added):

> [I]t is clear that an Immigration Judge and the Board cannot entertain a collateral attack on a judgment of conviction, **unless that judgment is void on its face**, and cannot go behind the judicial record to determine the guilt or innocence of an alien. See Matter of Madrigal, Interim Decision 3274 (BIA 1996).

It is respectfully submitted that the case at bar is one of those rare instances where that test is met. The Information is fatally defective. It fails to charge *anything*, much less an offense under KSA 21-3414. Under Kansas law, this is a jurisdictional defect, and any conviction obtained thereunder is void. And since the purported conviction is void on its face, it cannot support the charge of removability, even though Mr. Larin has not previously challenged it in Kansas. Therefore, it is submitted that the instant proceedings must be terminated.

### 3. UNDER KANSAS LAW, THE INSTANT CONVICTION IS VOID.

The redacted Complaint/Information, reads in its entirety:

> **COMES NOW** MARGARET A. MCINTIRE, a duly appointed, qualified and acting Assistant District Attorney of the 18th Judicial District of the State of Kansas, and for and on behalf of said State gives the court to understand and be informed that in the County of Sedgwick, and State of Kansas, and on or about the 22nd day of August, 1999,

6

A.D., one JUAN * LARIN did then and there unlawfully, intentionally, in a manner whereby [he] could have [?] cause great bodily harm or disfigurement to another person, to wit, Isarael Rosas;

Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 7, Person Felony.

The large blank space in the Complaint should have contained a statement of what Mr. did then and there DO.  It does not.

K.S.A. §21-3414 provides, in totality, as follows:

21-3414. Aggravated battery.
(a) Aggravated battery is:
(1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or
(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.
(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

Even though the statutory section of the printed form was not amended, when the Information is viewed in the context of Kansas Statutes 21-3414, it is clear that it initially charged a violation of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a

7

level 4 offense), and was amended by interlineation, in an attempt
to charge a level 7 offense. However, the language of the
Information, as amended, is a grammatical non sequitur. It has no
verb, and does not say **what** it was that the Respondent did, "in a
manner which could have... cause[d] greatly bodily harm or
disfigurement" to Mr. Rosas. It is therefore fatally defective.

As amended, the Information not only fails to charge an offense
under 21-3414(a)(1)(A), it fails to charge **anything.** It does not
charge an offense under the first clause of 21-3414(a)(1)(B),
because it neither states that he caused bodily harm, nor that he
did so with a deadly weapon. Likewise, it does not charge an
offense under the second clause of 21-3414(a)(1)(B), because it
does not allege that he actually caused bodily harm. Similarly, it
fails under both subclauses of 21-3414(a)(1)(C), because it does
not allege that there was physical contact. No degree of liberal
construction can save it. As held in *Kansas v. Hall,* 793 P.2d 737,
764 (S.Ct.Kans 1990) (emphasis added):

> Tardily challenged informations are to be construed
> liberally in favor of validity. The validity of an
> information is to be tested by reading the information as
> a whole. The elements of the offense may be gleaned from
> the information as a whole. **An information not
> challenged before verdict or finding of guilty or
> pursuant to K.S.A. 22-3502 by a motion for arrest of
> judgment will be upheld unless it is so defective that it
> does not, by any reasonable construction, charge an
> offense for which the defendant is convicted.** *United
> States v. Watkins*, 709 F.2d at 478.

Even more to the point is *Kansas v. Howell,* 601 P.2d 1141, 1143 (S.
Ct. Kan. 1979) (emphasis added):

> In a felony action, the indictment or information is the
> jurisdictional instrument upon which the accused stands
> trial. *State v. Minor*, 197 Kan. 296, Syl. para. 5, 416

8

P.2d 724 (1966).

**A conviction based upon an information which does not sufficiently charge the offense for which the person is convicted is void.** *State v. Daniels,* 223 Kan. 266, Syl. para. 4, 573 P.2d 607 (1977); *State v. Minor,* 197 Kan. 296.

If the facts alleged in a complaint or information do not constitute an offense in the terms and meaning of the statute upon which it is based, a complaint or information is fatally defective.

The most recent restatement by the Supreme Court of Kansas was apparently in *Kansas v. Long,* 58 P.3d 706 (S.Ct. Kansas 2002). In that case, among several traffic citations, the defendant was charged with having no liability insurance in violation of Kan. Stat. Ann. §40-3104 while driving a car he did not own. With the understanding that he was charged with violating subsection (d) of that statute, the trial court dismissed the charge. The State appealed. In dismissing the State's appeal, the Supreme Court of Kansas explained, 58 P.3d at 710 (emphasis added):

Instead of designating the specific subsection under K.S.A. 40-3104 that Long was charged with, the officer cited only the statute 40-3104. The failure to designate the specific subsection helped create some of the confusion that later developed when the citation was filed with the court. This case illustrates the necessity of specifying in the citation the exact subsection the defendant is charged with violating.
**"The sufficiency of the charging document is measured by whether it contains the elements of the offense intended to be charged, sufficiently apprizes the defendant of what he or she must be prepared to meet, and is specific enough to make a subsequent plea of double jeopardy possible.** The charging document is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or words of the same import." *State v. Smith,* 268 Kan. 222, 226-27, 993 P.2d 1213 (1999).

9

> **While the officer referred to the statute without citing the specific subsection, he described the charge as having no liability insurance. Thus, the charging document was sufficient to charge Long, who was not the owner of the vehicle, with a violation of K.S.A. 40-3104(c).** The facts surrounding the issuance of the citation support this conclusion, for Long handed the officer a document indicating that the insurance on the vehicle had expired 3 weeks before. K.S.A. 40-3104(d), involving the failure to display, was not charged in this case.
>
> The questions reserved by the prosecution in this appeal assume that Long was charged under the provisions of K.S.A. 40-3104(d), when in fact he was charged with a violation of K.S.A. 40-3104(c). Both questions reserved require answers involving a charge not involved in this case....
>
> ... We therefore decline to answer the questions reserved and dismiss the appeal.

The failure to state an offense is jurisdictional, and cannot be waived. *See, Kansas v. Marshall,* 2 Kan. App. 2d 182, 194; 577 P.2d 803 (Kansas App. 1978), citing K.S.A. 22-3208(4) (emphasis added):

> K.S.A. 22-3208(4) provides that "[a] plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint, information or indictment **other than it fails to show jurisdiction in the court or to charge a crime**." If defendants had any meritorious objections to personal jurisdiction, they were waived by the entry of plea, posting of bond and submission to the jurisdiction of the trial court without assertion of such objections until after trial.

To the contrary, a conviction obtained under a fatally defective information is void: not *voidable*, but *void*. *Kansas v. Schultz*, 252 Kan. 819, 835-836 (S.Ct. Kansas 1993) (emphasis added):

> In State v. Bird, 238 Kan. 160, 166, 708 P.2d 946 (1985), this court reviewed the principles governing sufficiency

of the charge:

> "In a felony action, the **indictment or information is the jurisdictional instrument** upon which the accused stands trial. [Citation omitted.] **A conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is void.** Failure of an information to sufficiently state an offense is a fundamental defect which can be raised at any time, even on appeal. [Citations omitted.] **Sufficiency of the indictment or information is to be measured by whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and by whether it is specific enough to make a plea of double jeopardy possible.** [Citation omitted.]"

Finally, the sufficiency of a Complaint/Information is judged from the "four corners" of the document, without resort to extrinsic evidence. *Kansas v. Cook*, 193 Kan. 541, 543 (S.Ct. Kansas 1964):

> Extraneous evidence cannot be resorted to for the purpose of establishing the insufficiency of an information. (42 C. J. S., p. 1212.) In *Wolfe v. North Carolina*, 364 U.S. 177, 4 L. Ed. 2d 1650, 80 S. Ct. 1482, the Supreme Court of the United States recognized the rights of the state, in ruling on a motion to quash, to follow its established rule that matters of defense are not grounds for quashing an information and that a trial court, in ruling on a motion to quash, cannot consider extraneous evidence nor rest on matters dehors the record proper; therefore, when the defect must be established by evidence aliunde the record, the motion must be denied.

As applied to the case at bar, the following points emerge:

1) The Information is a jurisdictional document, and if it is insufficient on its face, any conviction obtained thereunder is void. Because a valid charging document is a jurisdictional requirement, such fundamental flaws cannot be waived by a guilty plea, or by the failure to mount a timely challenge.

11

2) The fact that an Information cites an incorrect subsection would not be fatal, if the facts as alleged actually stated an offense.

3)   Since no timely challenge was raised, in deciding whether the Information herein was sufficient to vest the Court with jurisdiction, it will be construed liberally, within the four corners of the document, and will be found deficient only if it is "so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted."

It is submitted that an Information which is grammatically incoherent, and does not even contain a verb, stating what the defendant **did**, is "so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted."   Since it does not charge an offense, under Kansas law, it is void. Not *voidable,* but **void.** Moreover, it is void *on its face*, as it is not permissible to examine anything other than the Information itself to determine its sufficiency.

It is therefore urged that Mr. Larin cannot be found to have been removable, and that the instant proceedings must be terminated.

### 4.   IN THE ALTERNATIVE IT IS CLEAR THAT MR. LARIN WAS NOT CONVICTED UNDER KANSAS STATUTES ANNOTATED 21-3414(a) (1)(A), AND THE REDACTED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO DETERMINE THAT HE WAS CONVICTED UNDER ANY STATUTE CONSTITUTING A CRIME OF VIOLENCE.

In the alternative, and assuming, *arguendo*, that an exceptionally "liberal" reading of the redacted Information can be construed as charging some offense, it does not charge a crime of violence. Starting from the premise that the Court would only have had jurisdiction over an offense whose elements were stated in the information, one cannot go beyond that document to determine that he was convicted of an offense which, under no stretch of the

imagination, could flow therefrom.

The pertinent portion of the Information charges that Mr. Larin:

> did then and there unlawfully, intentionally, in a manner
> whereby [he] could have [?] cause great bodily harm or
> disfigurement to another person, to wit, Isareal Rosas...

Assuming, *arguendo*, that one could supply a generic missing verb,
*e.g.*, "act," since said "act" must have been performed in a manner
which could have caused great bodily harm, one could, *arguendo*,
infer that there must have been some physical contact.  In such a
case, the only portion of the statute which could conceivable be
implicated would be the second clause of §21-3414(a)(1)(C), to wit:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) ...
> (C) intentionally causing physical contact with another
> person when done ... in any manner whereby great bodily
> harm, disfigurement or death can be inflicted ...

Note that this is subtly, but crucially distinct, from an analysis
involving a "divisible statute," whereby it is permissible to go
beyond the four corners of the document to determine under which
subsection he was convicted.  Rather, it is a question of making
the absolutely most liberal reading possible of the charging
document itself, to determine what offense it could conceivably
charge.  Particularly since the phrase regarding the potential for
causing great bodily harm, or disfigurement is handwritten into the
document, it would have to be a subclause involving that phrase.
However, one could not plausibly extract an offense under §21-
3414(a)(1)(B).  That would entail the addition of an entire phrase,
to wit, "causing bodily harm."  The phrase "cause great bodily
harm" follows the redaction, "in a manner whereby [the defendant]
could have []."  To charge an offense under subsection (B), the
Information would have to allege that he caused bodily harm.  That
phrase is not present, and no allegation that bodily harm occurred

13

can be inferred from anything else in the redacted Information.

Further, even assuming, *arguendo*, that the redacted Information, if read with extreme liberality, levels a valid charge under K.S.A. §21-3414(a)(1)(C), Mr. Larin submits that it would not constitute a crime of violence within the meaning of 18 U.S.C. §16. Under Kansas law, all that is required to constitute an offense under §21-3414(a)(1)(C) is that one "intentionally" caus[e] physical contact" in a manner which could have caused great harm. However, the statute does not require (and the Information does not allege), that such harm ever materialized. Therefore, the offense does not require that force have been used, as would be necessary for it to constitute a crime of violence under §16(a).

Nor is it required that the intentional physical contact have been performed with the **knowledge** that it might cause such harm, or even that he was reckless with respect to the fact that such harm might occur, let alone with the **intention** to cause this harm. *See, State v. Esher*, 922 P.2d 1123 (1996):

> The language of 21-3414(a)(1)(C) simply requires proof that the defendant *intentionally* caused physical contact with another person. The statute, thus, incorporates the general intent required by 21-3201. Notably, however, the statute does not identify or require a further particular intent which must accompany the prohibited acts. Esher contends that 21-3414(a)(1)(C) should be read to require an "intent to injure." This contention is without merit. Although the pre-1993 version of the aggravated battery statute required proof of "the unlawful touching or application of force to the person of another *with intent to injure* that person or another," K.S.A. 21-3414 (Ensley 1988), the legislature deleted the "intent to injure" language when it adopted the current version of the statute. "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the Page 785 amendment." *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799

14

P.2d 1011 (1990). Moreover, when a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.

*Kansas v. Esher* is also significant for its discussion of the prior history of the statute, which demonstrates that the Kansas legislature distinguished between unlawful touching, (contact), and the use of force. *Id.* at 1127 (emphasis added):

> Contrary to Esher's contention that the current version of 21-3414(a)(1)(C) should be construed like the pre-1993 aggravated battery statute, the reference to "intentionally causing physical contact" in the current statute more closely parallels the language of the pre-1993 battery statute, K.S.A. 21-3412 (Ensley 1988). Battery under that statute was the "unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." The Supreme Court has concluded that battery under the pre-1993 statute does not require proof of the specific intent to injure. See *State v. Seely,* 212 Kan. 195, 203, 510 P.2d 115 (1973).

The Fifth Circuit has also held that not all "physical contact" involves the use of force. In *U.S. v. Rodriguez-Guzman*, 56 F.3d 18,20 n.8 (5th Cir. 1995), the Fifth Circuit defined the term "force" as used in 18 U.S.C. §16(b):

> We perforce interpret "force" to mean more than the mere asportation of some property of the victim. The clear import of defining a "crime of violence" is that "force" as used in the definition is synonymous with destructive or violent force.

Therefore, it is not a "use of force" as used in 18 U.S.C. §16 for a medical technician to take a blood sample, for a dentist to use a pick in cleaning someone's teeth, or to kiss or make love to a willing partner. But under the Kansas statute, it could be an offense if the technician or dentist re-used "dirty" equipment, which was contaminated with HIV virus.

15

In such cases, even if the accused did not know that the patient on whom the equipment had previously been used was HIV positive, and that equipment was contaminated with that person's blood, an offense would have been committed. The touching was intentional, the touching occurred in a "manner whereby great bodily harm, disfigurement or death [could] be inflicted," and the required "general" criminal intent would therefore have been present. Similarly, consensual sexual relations, where one partner is infected with HIV, would constitute such an offense, even if the infected partner took precautionary measures. The contact was intentional, and since such devices sometimes fail, "great bodily harm, disfigurement or death" could result.

Such scenarios would not constitute crimes of violence under *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001) ("substantial risk that physical force... may be used" contemplates only reckless disregard for the probability that *intentional* force may be employed). In the above hypotheticals, there might be "reckless disregard" for the possibility of injury, but not that "intentional force" would be employed. Similarly, they would fail the "results-oriented" test of *U.S. v. Gracia-Cantu*, 302 F.3d 308,312-13 (5th Cir. 2002):

> Utilizing the categorical approach endorsed by this court in *Chapa-Garza* and other cases, we focus only on the offense of injury to a child as defined under Texas law and not on the particular facts of Gracia-Cantu's conviction. Section 22.04(a) criminalizes acts or omissions that intentionally, knowingly, recklessly, or negligently result in injury to a child. *See* Tex. Penal Code Ann. § 22.04(a). Thus, as noted above, the culpable mental state relates to the result of a defendant's conduct rather than to the conduct itself. *See Patterson*, 46 S.W.3d at 301.

> Because the offense of injury to a child is results-oriented, many convictions for this offense involve an omission rather than an intentional use of force. *See Chapa-Garza*, 243 F.3d at 926 (noting that "a

16

parent who leaves a young child unattended near a pool
may risk serious injury to the child, but the action does
not involve an intent to use force or otherwise harm the
child") (internal citation and quotation omitted).

Under the categorical approach, §21-3414(a)(1)(C) is therefore not
an aggravated felony, and from the face of the Information, even if
construed so liberally that an offense under that section can be
inferred, Mr. Larin has not been convicted of an aggravated felony.

Therefore, Mr. Larin's appeal from the Judge's conclusion that he
lacks jurisdiction over his request for a second bond hearing
should be sustained, and the case remanded for a hearing on whether
he constitutes a flight risk, or danger to the community.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class
postage prepaid, to DHS District Counsel, P.O. Box 1711, Harlingen,
Texas 78551, on June 9, 2003.

17

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 1 2003

Michael N. Milby
Clerk of Court

JUAN LARIN-ULLOA,                    )
    Petitioner,                      )
                                     )
v.                                   )        C.A. B-02-107
                                     )
JOHN ASHCROFT, et al.                )
_____)

EXHIBIT "K" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Pleadings relating to Mr. Larin's second request for a *Joseph* bond
hearing, based on a change in the applicable law, to wit, the Fifth
Circuit's June 26, 2003, decision to grant *en banc* reconsideration
in *U.S. v. Vargas-Duran*, 319 F.3d 194 (5th Cir. 2003).


Attached are: 1. Respondent's Second Motion for a *Joseph* Bond
Hearing, dated July 9, 2003;
2.  Points and Authorities in support thereof, filed July 16, 2003;
3.  Judge's denial of bond;
4.  Appeal from denial of bond to BIA, with extensive addendum in
lieu of brief in support thereof.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586              Fed. ID.  1178
(956) 421-3226                    Texas Bar 03052800
(956) 421-3423 (fax)

CERTIFICATE OF SERVICE

I certify that on July 21, 2003, a copy of the foregoing, with
attachments was mailed first-class postage prepaid to Paul Fiorino,
Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044.

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE IMMIGRATION JUDGE

In re

JUAN LARIN-ULLOA
A92 800 131

RESPONDENT'S SECOND MOTION FOR JOSEPH BOND HEARING

Respondent, through counsel, hereby requests a bond hearing, in accordance with *Demore v. Kim*, 123 S.Ct. 1708 (2003). At said hearing, Respondent would show that there has been a change in the law since the initial bond hearing, and that this constitutes "changed circumstances" within the meaning of *Matter of Adeniji,* 22 I&N Dec. 1102 (BIA 1999) codified at 8 C.F.R. §3.19(e) (now, §1003.19(e)), which reads as follows:

> (e) After an initial bond redetermination, a request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination..

Specifically, Mr. Larin would bring to the attention of the BIA the fact that, on June 26, 2003, after he filed his brief herein, the Fifth Circuit granted rehearing en banc in *U.S. v. Vargas-Duran,* 319 F.3d 194 (5th Cir. 2003). *See,* 2003 U.S. App. LEXIS 635. He has also brought this fact to the attention of the BIA. *See,* attached.

*Vargas-Duran* is pertinent because the Fifth Circuit had concluded therein, 319 F.3d at 196-97, that intoxicated assault was a crime of violence under 18 U.S.C. §16(a), because it involved "bodily injury," and "bodily injury" could not occur without the application of force. The grant of rehearing en banc implies that *Vargas-Duran* is no longer the law of the Circuit, and that the Court is in the process of revisiting that issue.

It also means that the last word from the Circuit on this issue is *U.S.* v. *Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002), wherein the Court had held that injury to a child was not a crime of violence under 18 U.S.C. §16, because it was a "results oriented" offense.

Mr. Larin thus urges that, even if the Board concludes that the record shows that he was convicted under Kansas Statutes Annotated 21-3414(a)(1)(B), under Fifth Circuit precedent, it is not a crime of violence, and therefore, not an aggravated felony.

K.S.A. §21-3414 provides, in totality, as follows:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
> (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or
> (B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.
> (b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

Although the statutory section of the printed form was not amended, when the redacted Information is viewed in the context of Kansas Statutes 21-3414, it is clear that it initially charged a violation

2

of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a level 4 offense), and was amended by interlineation, in an attempt to charge a level 7 offense. Mr. Larin has already shown, (and the Government has conceded), that he was not convicted under 21-3414(a)(1)(A), which is a level 4 offense. He has also already demonstrated that, assuming, arguendo, that he was convicted under 21-3414(a)(1)(C), it is not a crime of violence.

With the withdrawal of *U.S. v. Vargas-Duran,* Mr. Larin argues that even a conviction under 21-3414(a)(1)(B) would not be an aggravated felony. 21-3414(a)(1)(B) is itself a divisible statute, and the Information shows that, if this were the section charged, it was under the clause charging that he intentionally caused bodily harm in a "manner whereby great bodily harm, disfigurement or death can be inflicted." [1] Like injury to a child, in *Gracia-Cantu, supra,* this is a "results-oriented" offense, which can be accomplished without the use of force. One can "intentionally caus[e] bodily harm to another person... in [a] manner whereby great bodily harm, disfigurement or death can be inflicted," without the application of force. For example, one could put a non-lethal dose of poison, or a "date-rape" drug, in someone's drink.

Since *Gracia-Cantu, Vargas-Duran,* and the grant of rehearing en banc in *Vargas-Duran,* all occurred after the initial bond hearing, Respondent is entitled to a new hearing, under *Matter of Joseph,* at which to demonstrate that there is little or no likelihood that the charges herein will be sustained, and that he should therefore be released on bond.

---

[1] The fact that a firearm may have been involved is irrelevant, where, as here, he was not **charged**, in the Information, with the use of a firearm. One cannot be convicted of something which was not charged, regardless of whether the record indicates that such a charge could have been laid.

3

Counsel would note that she will be out of town from July 9, 2003 until July 15, 2003, and would therefore request that the hearing on the instant motion not be held until July 16, 2003 or later.

Respectfully Submitted,

/s/

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to DHS District Counsel, P.O. Box 1711, Harlingen, Texas, 78551, on July 9, 2003.

/s/

_____

4

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE IMMIGRATION JUDGE

In re

JUAN LARIN-ULLOA
A92 800 131

POINTS AND AUTHORITIES IN SUPPORT OF
RESPONDENT'S REQUEST FOR SECOND BOND HEARING,
BASED ON A CHANGE IN THE LAW

Respondent, through the undersigned, files the instant Points and
Authorities in Support of his Request for a Second Bond Hearing,
Based on a Change in the Law. Specifically, Mr. Larin would bring
to the Court's attention the fact that on June 26, 2003, the Fifth
Circuit granted rehearing en banc in *U.S. v. Vargas-Duran*, 319 F.3d
194 (5th Cir. 2003), 2003 U.S. App. LEXIS 635. This, and other
developments in the law which occurred after his initial hearing,
constitute a material change in his circumstances, under 8 C.F.R.
§1003.19(e)), which reads as follows:

> (e) After an initial bond redetermination, a request for
> a subsequent bond redetermination shall be made in
> writing and shall be considered only upon a showing that
> the alien's circumstances have changed materially since
> the prior bond redetermination.

Material changes in the circumstances are not limited to factors
relating to risk of flight or danger to the community. As seen
from *Matter of Adeniji,* 22 I&N Dec. 1102 (BIA 1999), they include
eligibility, as a matter of law, to have a bond set. Ironically,
*Adeniji* is the only published Board decision which addresses
§1003.19(e). There, the Board found "a material change in
circumstances," based on its new interpretation of the applicable
law. *See also, Matter of Valles-Perez,* 21 I&N Dec. 769 (BIA 1997),
where the changed circumstances was the fact that INS had abandoned
one charge of deportability, and leveled another, which the
Immigration Judge found not to have been sustained.

Withdrawal of the Fifth Circuit's published opinion in *Vargas-Duran* is pertinent to the case at bar because the Court had concluded therein, 319 F.3d at 196-97, that intoxicated assault was a crime of violence under 18 U.S.C. §16(a), because it involved "bodily injury," and "bodily injury" could not occur without the application of force.  The defendant had argued that this was inconsistent with the intent requirement of *U.S. v. Chapa-Garza,* 243 F.3d 921 (5th Cir. 2001), and with *U.S. v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002). [1]  Following the grant of rehearing en banc, *Vargas-Duran* is no longer the law of the Circuit, given that the Court is in the process of revisiting that issue.  Rather, the last word from the Fifth Circuit on this issue is *Gracia-Cantu*, wherein the Court had held that injury to a child was not a crime of violence under 18 U.S.C. §16, because it was a "results oriented" offense, and there were means by which someone could injure a child without the application of force.

For the same reasons, Mr. Larin argues that under *Gracia-Cantu*, his offense (whatever that might be), does not constitute a crime of violence because the Kansas statute at issue is likewise "results-oriented," and does not require either the intentional application of force, or a substantial likelihood that the intent to use force would be formed during the commission of the offense.  Thus, even if the BIA were to conclude that the record shows that he was convicted under Kansas Statutes Annotated 21-3414(a)(1)(B), Mr. Larin urges that it would not be a crime of violence under Fifth Circuit precedent, and therefore not an aggravated felony.

K.S.A. §21-3414 provides, in totality, as follows:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:

---

[1]  *Gracia-Cantu* was also decided after his last bond hearing.

2

(1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or (2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or (B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted. (b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

Although the statutory section of the printed form was not amended, when the redacted Information is viewed in the context of Kansas Statutes 21-3414, it is clear that it initially charged a violation of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a level 4 offense), and was amended by interlineation, in an attempt to charge a level 7 offense.  Mr. Larin has already shown, (and the Government has conceded), that he was not convicted under 21-3414(a)(1)(A), which is a level 4 offense.  He has also already demonstrated that, assuming, arguendo, that he was convicted under 21-3414(a)(1)(C), it is not a crime of violence.

With the withdrawal of *Vargas-Duran*, Mr. Larin argues that even a conviction under §21-3414(a)(1)(B) would not be an aggravated felony.  §21-3414(a)(1)(B) is itself a divisible statute, and the Information shows that, if this were the section charged, it was under the clause charging that he intentionally caused bodily harm

3

in a "manner whereby great bodily harm, disfigurement or death can be inflicted."[2]    Like injury to a child, in *Gracia-Cantu, supra,* this is a "results-oriented" offense, which can be accomplished without the use of force.    One can "intentionally caus[e] bodily harm to another person... in [a] manner whereby great bodily harm, disfigurement or death can be inflicted," without the application of force.  For example, one could put a non-lethal dose of poison, or a "date-rape" drug, in someone's drink.

Respondent's circumstances have materially changed, given recent changes in the law, and he is entitled to a second bond hearing. *Matter of Adeniji, supra,* and 8 C.F.R. §1003.19(e).  He urges that, under the present state of the law, "it is substantially unlikely" that DHS will prevail on the charge of removability at issue herein, and that, pursuant to *Matter of Joseph*, 22 I&N Dec 799 (BIA 1999), he is entitled to a bond, based on whether or not he is a danger to the community, and/or a presents a risk of flight.

Respectfully Submitted,



Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

<center>CERTIFICATE OF SERVICE</center>

I certify that a copy of the foregoing was personally served on DHS District Counsel, at Los Fresnos, Texas, on July 16, 2003.

_____

        [2]    The fact that a firearm may have been involved is irrelevant, where, as here, he was not **charged**, in the Information, with the use of a firearm.  One cannot be convicted of something which was not charged, regardless of the intent of the parties in negotiating a plea, or whether such a charge could have been laid.

<center>4</center>

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
LOS FRESNOS, TX

FILE: A92-800-131

IN THE MATTER OF:

LARIN-ULLOA, JUAN

RESPONDENT

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE
WITH RESPECT TO CUSTODY

Request having been made for a change in the custody status of
respondent pursuant to 8 CFR 236.1(c), and full consideration
having been given to the representations of the Immigration and
Naturalization Service and the respondent, it is hereby

_X_     ORDERED that the request for a change in custody status be
        denied.

_____  ORDERED that the request be granted and that respondent be:

_____  released from custody on his own recognizance

_____  released from custody under bond of $_____

_____  OTHER    _____

Copy of this decision has been served on the respondent and the
Service.

APPEAL: ~~waived~~ -- reserved by Respondent
                     Due - August 15, 2003

LOS FRESNOS -- PORT ISABEL SERVICE PROCESSING CENTER

Date: Jul 16, 2003

                                    _____
                                    ELEAZAR TOVAR
                                    Immigration Judge

                                                              XS

GG2

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

**Notice of Appeal from a Decision of an
Immigration Judge**

| | | |
|---|---|---|
| **1.** | List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s): | For Official Use Only |

*Staple Check or Money Order Here. Include Name(s) and "A" number(s) on the face of the check or money order.*

Juan Larin - Ulloa

A92 800 131

| ! | **WARNING:** Names and "A" Numbers of everyone appealing the Immigration Judge's decision must be written in item #1. |
|---|---|

**2.**   I am the ☒ Respondent/Applicant ☐ INS   *(Mark only one box.)*

**3.**   I am   ☒ DETAINED   ☐ NOT DETAINED   *(Mark only one box.)*

**4.**   My last hearing was at ___Port Isabel Service Processing Center - Texas___ *(Location, City, State)*

**5.**   **What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☐   I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated _____ .

☒   I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated
    ___7/16/03___ .

☐   I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _____ .

*(Please attach a copy of the Immigration Judge's decision you are appealing.)*

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

**Page 1 of 3**

*Internet Version*

6.  **State in detail the reason(s) for this appeal. Please refer to the Instructions at part F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

See attached

*(Attach additional sheets if necessary)*

> **! WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7.  Do you desire oral argument before the Board of Immigration Appeals?  ☐ Yes  ☒ No

8.  Do you intend to file a separate written brief or statement after filing this Notice of Appeal?  ☐ Yes  ☒ No

> **! WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9.  **SIGN HERE →**  X _Lisa S. Brodyaga_  _7/17/03_
    Signature of Person Appearing          Date
    *(or attorney or representative)*

Form EOIR-26
Revised Sept. 2002

**Page 2 of 3**

*Internet Version*

10.

| Mailing Address of Respondent(s)/Applicant(s) |
|---|
| *Juan Larin-Ulloa* |
| (Name) |
| *PISPC* |
| (Street Address) |
| *Rt 3 Box 341* |
| (Apartment or Room Number) |
| *Los Fresnos Tx* |
| (City, State, Zip Code) |
| *78566* |
| (Telephone Number) |

11.

| Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|
| (Name) |
| Lisa Brodyaga, Attorney |
| REFUGIO DEL RIO GRANDE |
| 17891 Landrum Park Road |
| San Benito, Texas 78586 |
| (City, State, Zip Code) |
| (Telephone Number) |

NOTE: You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/BIA).

NOTE: If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

12.

### PROOF OF SERVICE
### (You Must Complete This)

I _*Lisa Brodyaga*_ mailed or delivered a copy of this Notice of Appeal
(Name)

on _*7/17/03*_ to _*DHS*_
(Date) (Opposing Party)

at _*PO Box 1711 Harlingen Tx 78551*_
(Address of Opposing Party)

**SIGN HERE →** X _____
Signature

NOTE: If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS.

WARNING: If you do not complete this section properly, your appeal will be rejected or dismissed.

WARNING: If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

❏ Read all of the General Instructions
❏ Provided all of the requested information
❏ Completed this form in English
❏ Provided a certified English translation for all non-English attachments

**HAVE YOU?**

❏ Signed the form
❏ Served a copy of this form and all attachments on the opposing party
❏ Completed and signed the Proof of Service
❏ Attached the required fee or Fee Waiver Request

Page 3 of 3

Form EOIR-26
Revised Sept. 2002

*Internet Version*

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE BOARD OF IMMIGRATION APPEALS

In re

JUAN LARIN-ULLOA
A92 800 131

ADDENDUM TO NOTICE OF APPEAL FROM IJ'S DENIAL OF
RESPONDENT'S REQUEST FOR SECOND BOND HEARING,
BASED ON A CHANGE IN THE LAW

Respondent, through the undersigned, files the instant Addendum to
his Notice of Appeal from the denial by the Immigration Judge of
his Request for a Second Bond Hearing, Based on a Change in the
Law.  Specifically, Mr. Larin attempted to bring to the Court's
attention the fact that on June 26, 2003, the Fifth Circuit granted
rehearing en banc in *U.S. v. Vargas-Duran*, 319 F.3d 194 (5th Cir.
2003), 2003 U.S. App. LEXIS 635.  He urged that this, and other
developments in the law which occurred after his initial hearing,
constitute a material change in his circumstances, under 8 C.F.R.
§1003.19(e)), which reads as follows:

> (e)  After an initial bond redetermination, a request for
> a subsequent bond redetermination shall be made in
> writing and shall be considered only upon a showing that
> the alien's circumstances have changed materially since
> the prior bond redetermination.

Material changes in the circumstances are not limited to factors
relating to risk of flight or danger to the community.  As seen
from *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999), they include
eligibility, as a matter of law, to have a bond set.  Ironically,
*Adeniji* is the only published Board decision which addresses
§1003.19(e).  There, the Board found "a material change in
circumstances," based on its new interpretation of the applicable
law. *See also, Matter of Valles-Perez*, 21 I&N Dec. 769 (BIA 1997),
where the changed circumstances was the fact that INS had abandoned
one charge of deportability, and leveled another, which the
Immigration Judge found not to have been sustained.

Withdrawal of the Fifth Circuit's published opinion in *Vargas-Duran*
is pertinent to the case at bar because the Court had concluded
therein, 319 F.3d at 196-97, that intoxicated assault was a crime

of violence under 18 U.S.C. §16(a), because it involved "bodily injury," and "bodily injury" could not occur without the application of force.  The defendant had argued that this was inconsistent with the intent requirement of *U.S. v. Chapa-Garza,* 243 F.3d 921 (5th Cir. 2001), and with *U.S. v. Gracia-Cantu,* 302 F.3d 308 (5th Cir. 2002). [1]  Following the grant of rehearing en banc, *Vargas-Duran* is no longer the law of the Circuit, given that the Court is in the process of revisiting that issue.  Rather, the last word from the Fifth Circuit on this issue is *Gracia-Cantu,* wherein the Court had held that injury to a child was not a crime of violence under 18 U.S.C. §16, because it was a "results oriented" offense, and there were means by which someone could injure a child without the application of force.

For the same reasons, Mr. Larin argued that under *Gracia-Cantu,* his offense (whatever that might be), does not constitute a crime of violence because the Kansas statute at issue is likewise "results-oriented," and does not require either the intentional application of force, or a substantial likelihood that the intent to use force would be formed during the commission of the offense.  Thus, even if the BIA were to conclude that the record shows that he was convicted under Kansas Statutes Annotated 21-3414(a)(1)(B), Mr. Larin urges that it would not be a crime of violence under Fifth Circuit precedent, and therefore not an aggravated felony.

K.S.A. §21-3414 provides, in totality, as follows:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
> (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (2) (A) recklessly causing great bodily harm to another

---

[1]  *Gracia-Cantu* was also decided after his last bond hearing.

2

person or disfigurement of another person; or
(B) recklessly causing bodily harm to another person with
a deadly weapon, or in any manner whereby great bodily
harm, disfigurement or death can be inflicted.
(b) Aggravated battery as described in subsection
(a)(1)(A) is a severity level 4, person felony.
Aggravated battery as described in subsections (a)(1)(B)
and (a)(1)(C) is a severity level 7, person felony.
Aggravated battery as described in subsection (a)(2)(A)
is a severity level 5, person felony. Aggravated battery
as described in subsection (a)(2)(B) is a severity level
8, person felony. A person convicted of aggravated
battery shall be subject to the provisions of subsection
(h) of K.S.A. 21-4704 and amendments thereto.

Although the statutory section of the printed form was not amended,
when the redacted Information is viewed in the context of Kansas
Statutes 21-3414, it is clear that it initially charged a violation
of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a
level 4 offense), and was amended by interlineation, in an attempt
to charge a level 7 offense.   Mr. Larin has already shown, (and
the Government has conceded), that he was not convicted under 21-
3414(a)(1)(A), which is a level 4 offense.   He has also already
demonstrated that, assuming, arguendo, that he was convicted under
21-3414(a)(1)(C), it is not a crime of violence.

With the withdrawal of *Vargas-Duran,* Mr. Larin argued that even a
conviction under §21-3414(a)(1)(B) would not be an aggravated
felony.   §21-3414(a)(1)(B) is itself a divisible statute, and the
Information shows that, if this were the section charged, it was
under the clause charging that he intentionally caused bodily harm
in a "manner whereby great bodily harm, disfigurement or death can
be inflicted." [2]   Like injury to a child, in *Gracia-Cantu, supra,*
this is a "results-oriented" offense, which can be accomplished
without the use of force.   One can "intentionally caus[e] bodily
harm to another person... in [a] manner whereby great bodily harm,

---

[2]    The fact that a firearm may have been involved is
irrelevant, where, as here, he was not **charged**, in the Information,
with the use of a firearm.   One cannot be convicted of something
which was not charged, regardless of the intent of the parties in
negotiating a plea, or whether such a charge could have been laid.

disfigurement or death can be inflicted," without the application of force.  For example, one could put a non-lethal dose of poison, or a "date-rape" drug, in someone's drink.

Respondent's circumstances have materially changed, given recent changes in the law, and the Judge erred in denying his request for a second bond hearing.  *Matter-of Adeniji, supra,* and 8 C.F.R. §1003.19(e).    Under  the  present  state  of  the  law,  "it  is substantially unlikely" that DHS will prevail on the charge of removability at issue herein, and that, pursuant to *Matter of Joseph,* 22 I&N Dec 799 (BIA 1999), he is entitled to a bond, based on whether or not he is a danger to the community, and/or a presents a risk of flight.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first class postage prepaid, DHS District Counsel, P.O. Box 1711, Harlingen, Texas, 78551 on July 17, 2003.

4

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE BOARD OF IMMIGRATION APPEALS

In re

JUAN LARIN-ULLOA
A92 800 131

SUPPLEMENTAL AUTHORITY IN SUPPORT OF RESPONDENT'S BOND APPEAL
AND MOTION FOR LEAVE TO FILE SAME

Comes Respondent, through the undersigned, files the instant
supplemental authority in support of his appeal from the Order of
the Immigration Judge, finding that he lacked jurisdiction to set
a bond herein, and further seeks leave to file same. Specifically,
Mr. Larin would bring to the attention of the BIA the fact that, on
June 26, 2003, after he filed his brief herein, the Fifth Circuit
granted rehearing en banc in *U.S. v. Vargas-Duran*, 319 F.3d 194 (5th
Cir. 2003). *See,* 2003 U.S. App. LEXIS 635.

*Vargas-Duran* is pertinent because the Fifth Circuit had concluded
therein, 319 F.3d at 196-97, that intoxicated assault was a crime
of violence under 18 U.S.C. §16(a), because it involved "bodily
injury," and "bodily injury" could not occur without the
application of force. The grant of rehearing en banc implies that
*Vargas-Duran* is no longer the law of the Circuit, and that the
Court is in the process of revisiting that issue.

It also means that the last word from the Circuit on this issue is
*U.S. v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002), wherein the
Court had held that injury to a child was not a crime of violence
under 18 U.S.C. §16, because it was a "results oriented" offense.

Mr. Larin thus urges that, even if the Board concludes that the
record shows that he was convicted under Kansas Statutes Annotated
21-3414(a)(1)(B), under Fifth Circuit precedent, it is not a crime
of violence, and therefore, not an aggravated felony.

K.S.A. §21-3414 provides, in totality, as follows:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
> (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or
> (B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.
> (b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

Although the statutory section of the printed form was not amended, when the redacted Information is viewed in the context of Kansas Statutes 21-3414, it is clear that it initially charged a violation of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a level 4 offense), and was amended by interlineation, in an attempt to charge a level 7 offense.  Mr. Larin has already shown, (and the Government has conceded), that he was not convicted under 21-3414(a)(1)(A), which is a level 4 offense.  He has also already demonstrated that, assuming, arguendo, that he was convicted under 21-3414(a)(1)(C), it is not a crime of violence.

With the withdrawal of *U.S. v. Vargas-Duran,* Mr. Larin argues that even a conviction under 21-3414(a)(1)(B) would not be an aggravated

2

felony.   21-3414(a)(1)(B) is itself a divisible statute, and the
Information shows that, if this were the section charged, it was
under the clause charging that he intentionally caused bodily harm
in a "manner whereby great bodily harm, disfigurement or death can
be inflicted." [1]   Like injury to a child, in *Gracia-Cantu, supra,*
this is a "results-oriented" offense, which can be accomplished
without the use of force.   One can "intentionally caus[e] bodily
harm to another person... in [a] manner whereby great bodily harm,
disfigurement or death can be inflicted," without the application
of force.   For example, one could put a non-lethal dose of poison,
or a "date-rape" drug, in someone's drink.

Therefore, Respondent's appeal should be sustained, and the instant
proceedings should be terminated.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class
postage prepaid, to DHS District Counsel, P.O. Box 1711, Harlingen,
Texas, 78551, on July 9, 2003.

---

[1]   The fact that a firearm may have been involved is
irrelevant, where, as here, he was not **charged**, in the Information,
with the use of a firearm.   One cannot be convicted of something
which was not charged, regardless of whether the record indicates
that such a charge could have been laid.

3

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

TYPE OF PROCEEDING:
- ☐ Deportation
- ☐ Removal
- ☐ Exclusion
- ☒ Bond Redetermination
- ☐ Motion to Reopen/Reconsider
- ☐ Recession
- ☐ Disciplinary

DATE **7/17/03**

ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)

**A 92 800 131**

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

NAME  (First) **Juan**  (Middle Initial)  (Last) **LARIN - ULLOA**

ADDRESS (Number & Street) **PISPC**  (Apt. No.)  (City)  (State)  (Zip Code)

Please check one of the following:

☒ 1.  I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia:

Name(s) of Court(s)  **Texas**

State Bar No. (if applicable)  **03052800**

(Please use space on reverse side to list additional jurisdictions.)

I ☒ am not (or ☐ am - explain fully on reverse side) subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2.  I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization): _____

☐ 3.  I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNATURE OF ATTORNEY OR REPRESENTATIVE   EOIR ID#

TELEPHONE NUMBER (Include Area Code) **956 421 3226**   DATE **7/17/03**

NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT)   ADDRESS   ☐ Check here if this is a new address

Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

Certificate of Service

I **Lisa Brodyaga** mailed or delivered a copy of the foregoing on **7/17/03** (Date) to the Immigration
(Name)

**PO Box 1711   Harlingen Tx 78551**

and Naturalization Service at _____
(Address)

X _____
Signature of Attorney or Representative

FORM EOIR-27
August 99

OMB#1125-0005

(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
LOS FRESNOS, TX

FILE: A92-800-131

IN THE MATTER OF:

LARIN-ULLOA, JUAN

RESPONDENT

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE
WITH RESPECT TO CUSTODY


Request having been made for a change in the custody status of
respondent pursuant to 8 CFR 236.1(c), and full consideration
having been given to the representations of the Immigration and
Naturalization Service and the respondent, it is hereby

_____   ORDERED that the request for a change in custody status be
        denied.

_____   ORDERED that the request be granted and that respondent be:

_____   released from custody on his own recognizance

_____   released from custody under bond of $_____

_____   OTHER _____


Copy of this decision has been served on the respondent and the
Service.

APPEAL: ~~waived~~ -- reserved *by Respondent*
                    *Due - August 15, 2003*
LOS FRESNOS -- PORT ISABEL SERVICE PROCESSING CENTER

Date:  Jul 16, 2003

                                 _____
                                 ELEAZAR TOVAR
                                 Immigration Judge

                                                        XS

GG2

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

**Notice of Appeal from a Decision of an
Immigration Judge**

---

1. List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

   *For Official Use Only*

   Juan Larin - Ulloa

   A92 800 131

   *Staple Check or Money Order Here. Include Name(s) and "A" number(s) on the face of the check or money order*

   **! WARNING: Names and "A" Numbers of everyone appealing the Immigration Judge's decision must be written in item #1.**

2. I am the ☒ Respondent/Applicant ☐ INS    *(Mark only one box.)*

3. I am ☒ DETAINED ☐ NOT DETAINED    *(Mark only one box.)*

4. My last hearing was at ___Port Isabel Service Processing Center  Texas___ *(Location, City, State)*

---

5. **What decision are you appealing?**

   *Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

   ☐ I am filing an appeal from the Immigration Judge's decision *in merits proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated _____ .

   ☒ I am filing an appeal from the Immigration Judge's decision *in bond proceedings* dated
   ___7/16/03___ .

   ☐ I am filing an appeal from the Immigration Judge's decision *denying a motion to reopen or a motion to reconsider* dated _____ .

   *(Please attach a copy of the Immigration Judge's decision you are appealing.)*

---

OMB# 1125-0002; Expires 12/31/02

Form EOIR-26
Revised Sept. 2002

**Page 1 of 3**

*Internet Version*

6.   State in detail the reason(s) for this appeal. Please refer to the Instructions at part F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.

See attached

*(Attach additional sheets if necessary)*

**WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

7.   Do you desire oral argument before the Board of Immigration Appeals?    ☐ Yes   ☒ No

8.   Do you intend to file a separate written brief or statement after filing this Notice of Appeal?    ☐ Yes   ☒ No

**WARNING:** If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule.

9.     X _____   7/17/03
                                 Signature of Person Appealing              Date
                                 *(or attorney or representative)*

Form EOIR-26
Revised Sept. 2002

*Internet Version*

**10.**

| Mailing Address of Respondent(s)/Applicant(s) |
|---|
| Juan Larin-Ulloa |
| (Name) |
| PISPC |
| (Street Address) |
| Rt 3 Box 341 |
| (Apartment or Room Number) |
| Los Fresnos Tx |
| (City, State, Zip Code) |
| 78566 |
| (Telephone Number) |

**11.**

| Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|
| (Name) |
| Lisa Brodyaga, Attorney |
| (Street Address) |
| REFUGIO DEL RIO GRANDE |
| 17891 Landrum Park Road |
| San Benito, Texas 78586 |
| (City, State, Zip Code) |
| (Telephone Number) |

NOTE: You must notify the Board within five (5) working days if you move to a new address. You must use an alien's Change of Address Form (Form EOIR-33/B1A).

NOTE: If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12.**

### PROOF OF SERVICE
### (You Must Complete This)

I ___Lisa Brodyaga___ mailed or delivered a copy of this Notice of Appeal
(Name)

on ___7/17/03___ to ___DHS___
(Date)                              (Opposing Party)

at ___PO Box 1711 Harlingen Tx 78551___
(Address of Opposing Party)

[SIGN HERE →] X _____
(Signature)

NOTE: If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS.

WARNING: If you do not complete this section properly, your appeal will be rejected or dismissed.

WARNING: If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal will be rejected or dismissed.

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation for all non-English attachments

**HAVE YOU?**

☐ Signed the form
☐ Served a copy of this form and all attachments on the opposing party
☐ Completed and signed the Proof of Service
☐ Attached the required fee or Fee Waiver Request

Page 3 of 3

Form EOIR-26
Revised Sept. 2002

*Internet Version*

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE BOARD OF IMMIGRATION APPEALS

In re

JUAN LARIN-ULLOA
A92 800 131

ADDENDUM TO NOTICE OF APPEAL FROM IJ'S DENIAL OF
RESPONDENT'S REQUEST FOR SECOND BOND HEARING,
BASED ON A CHANGE IN THE LAW

Respondent, through the undersigned, files the instant Addendum to his Notice of Appeal from the denial by the Immigration Judge of his Request for a Second Bond Hearing, Based on a Change in the Law. Specifically, Mr. Larin attempted to bring to the Court's attention the fact that on June 26, 2003, the Fifth Circuit granted rehearing en banc in *U.S. v. Vargas-Duran*, 319 F.3d 194 (5th Cir. 2003), 2003 U.S. App. LEXIS 635. He urged that this, and other developments in the law which occurred after his initial hearing, constitute a material change in his circumstances, under 8 C.F.R. §1003.19(e)), which reads as follows:

> (e) After an initial bond redetermination, a request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.

Material changes in the circumstances are not limited to factors relating to risk of flight or danger to the community. As seen from *Matter of Adeniji,* 22 I&N Dec. 1102 (BIA 1999), they include eligibility, as a matter of law, to have a bond set. Ironically, *Adeniji* is the only published Board decision which addresses §1003.19(e). There, the Board found "a material change in circumstances," based on its new interpretation of the applicable law. *See also, Matter of Valles-Perez,* 21 I&N Dec. 769 (BIA 1997), where the changed circumstances was the fact that INS had abandoned one charge of deportability, and leveled another, which the Immigration Judge found not to have been sustained.

Withdrawal of the Fifth Circuit's published opinion in *Vargas-Duran* is pertinent to the case at bar because the Court had concluded therein, 319 F.3d at 196-97, that intoxicated assault was a crime

of violence under 18 U.S.C. §16(a), because it involved "bodily injury," and "bodily injury" could not occur without the application of force. The defendant had argued that this was inconsistent with the intent requirement of *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), and with *U.S. v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002). [1] Following the grant of rehearing en banc, *Vargas-Duran* is no longer the law of the Circuit, given that the Court is in the process of revisiting that issue. Rather, the last word from the Fifth Circuit on this issue is *Gracia-Cantu*, wherein the Court had held that injury to a child was not a crime of violence under 18 U.S.C. §16, because it was a "results oriented" offense, and there were means by which someone could injure a child without the application of force.

For the same reasons, Mr. Larin argued that under *Gracia-Cantu*, his offense (whatever that might be), does not constitute a crime of violence because the Kansas statute at issue is likewise "results-oriented," and does not require either the intentional application of force, or a substantial likelihood that the intent to use force would be formed during the commission of the offense. Thus, even if the BIA were to conclude that the record shows that he was convicted under Kansas Statutes Annotated 21-3414(a)(1)(B), Mr. Larin urges that it would not be a crime of violence under Fifth Circuit precedent, and therefore not an aggravated felony.

K.S.A. §21-3414 provides, in totality, as follows:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
> (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (2) (A) recklessly causing great bodily harm to another

---

[1] *Gracia-Cantu* was also decided after his last bond hearing.

2

person or disfigurement of another person; or
(B) recklessly causing bodily harm to another person with
a deadly weapon, or in any manner whereby great bodily
harm, disfigurement or death can be inflicted.
(b) Aggravated battery as described in subsection
(a)(1)(A) is a severity level 4, person felony.
Aggravated battery as described in subsections (a)(1)(B)
and (a)(1)(C) is a severity level 7, person felony.
Aggravated battery as described in subsection (a)(2)(A)
is a severity level 5, person felony. Aggravated battery
as described in subsection (a)(2)(B) is a severity level
8, person felony. A person convicted of aggravated
battery shall be subject to the provisions of subsection
(h) of K.S.A. 21-4704 and amendments thereto.

Although the statutory section of the printed form was not amended,
when the redacted Information is viewed in the context of Kansas
Statutes 21-3414, it is clear that it initially charged a violation
of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a
level 4 offense), and was amended by interlineation, in an attempt
to charge a level 7 offense.  Mr. Larin has already shown, (and
the Government has conceded), that he was not convicted under 21-
3414(a)(1)(A), which is a level 4 offense.  He has also already
demonstrated that, assuming, arguendo, that he was convicted under
21-3414(a)(1)(C), it is not a crime of violence.

With the withdrawal of *Vargas-Duran,* Mr. Larin argued that even a
conviction under §21-3414(a)(1)(B) would not be an aggravated
felony.  §21-3414(a)(1)(B) is itself a divisible statute, and the
Information shows that, if this were the section charged, it was
under the clause charging that he intentionally caused bodily harm
in a "manner whereby great bodily harm, disfigurement or death can
be inflicted." [2]   Like injury to a child, in *Gracia-Cantu, supra,*
this is a "results-oriented" offense, which can be accomplished
without the use of force.  One can "intentionally caus[e] bodily
harm to another person... in [a] manner whereby great bodily harm,

---

[2]   The fact that a firearm may have been involved is
irrelevant, where, as here, he was not **charged**, in the Information,
with the use of a firearm.  One cannot be convicted of something
which was not charged, regardless of the intent of the parties in
negotiating a plea, or whether such a charge could have been laid.

3

disfigurement or death can be inflicted," without the application of force.  For example, one could put a non-lethal dose of poison, or a "date-rape" drug, in someone's drink.

Respondent's circumstances have materially changed, given recent changes in the law, and the Judge erred in denying his request for a second bond hearing.  *Matter of Adeniji, supra,* and 8 C.F.R. §1003.19(e).  Under the present state of the law, "it is substantially unlikely" that DHS will prevail on the charge of removability at issue herein, and that, pursuant to *Matter of Joseph,* 22 I&N Dec 799 (BIA 1999), he is entitled to a bond, based on whether or not he is a danger to the community, and/or a presents a risk of flight.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

<div align="center">CERTIFICATE OF SERVICE</div>

I certify that a copy of the foregoing was mailed, first class postage prepaid, DHS District Counsel, P.O. Box 1711, Harlingen, Texas, 78551 on July 17, 2003.

<div align="center">4</div>

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

TYPE OF PROCEEDING

☐ Deportation
☐ Removal
☐ Exclusion

☒ Bond Redetermination
☐ Motion to Reopen/Reconsider
☐ Rescission

☐ Disciplinary

DATE **7/17/03**

ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable)

**A 92 800 131**

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

NAME (First) **Juan** (Middle Initial) (Last) **LARIN-ULLOA**

ADDRESS (Number & Street) **PISPC** (Apt. No.) (City) (State) (Zip Code)

Please check one of the following:

☒ 1. I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territory(ies), Commonwealth(s), or the District of Columbia:

Name(s) of Court(s) **Texas**

State Bar No. (if applicable) **03052800**

(Please use space on reverse side to list additional jurisdictions.)

☒ I am not (or ☐ am - explain fully on reverse side) subject to any order of any court or adminsitrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2. I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization): _____

☐ 3. I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

SIGNATURE OF ATTORNEY OR REPRESENTATIVE   EOIR ID#

TELEPHONE NUMBER (Include Area Code) **956 421 3226**

DATE **7/17/03**

NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT)   ADDRESS   ☐ Check here if this is a new address

Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

Certificate of Service

I **Lisa Brodyaga** (Name) mailed or delivered a copy of the foregoing on **7/17/03** (Date) to the Immigration

and Naturalization Service at **PO Box 1711   Harlingen Tx 78551** (Address)

X _____
Signature of Attorney or Representative

O14B#1125-0005

FORM EOIR-27
August 99

(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)

United States District Court
Southern District of Texas
FILED

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

JUL 2 1 2003

Michael N. Milby
Clerk of Court

JUAN LARIN-ULLOA,          )
   Petitioner,             )
                     )
v.                         )          C.A. B-02-107
                     )
JOHN ASHCROFT, et al.      )
_____)

**EXHIBIT "L" IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**

Pleadings relating to Mr. Larin's difficulties in getting his appeal heard by the BIA in the case in chief. Almost a year after filing the notice of appeal, he had not received the transcript and briefing notice. In most detained cases, the transcript is provided within 2-3 months of the filing of the appeal. Therefore, on April 2, 2003, he filed a "Motion for Transcript and Briefing Schedule." The transcript was then prepared. It was served on April 25, 2003, and received on April 29, 2003.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586              Fed. ID.  1178
(956) 421-3226                    Texas Bar 03052800
(956) 421-3423 (fax)


**CERTIFICATE OF SERVICE**

I certify that on July 21, 2003, a copy of the foregoing, with attachments was mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044.

**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BEFORE THE BOARD OF IMMIGRATION APPEALS**

**In re**

**JUAN LARIN-ULLOA,**                                    **DETAINED CASE**
**A92 800 131**

## MOTION FOR TRANSCRIPT AND BRIEFING SCHEDULE

Respondent, through counsel, hereby urges that the transcript be prepared, and that a briefing schedule issue, in his case. He was ordered removed on May 22, 2002, and his notice of appeal was timely filed on June 10, 2002. Copies of the Notice of Appeal, and of counsel's EOIR-27, are attached. Even though he is still detained, allegedly pursuant to §236(c) of the Act, there has been no transcript, and no briefing schedule.

Mr. Larin urges that the delay is unconscionable, and requests that the Board take action immediately to proceed with his appeal.

Respectfully Submitted,

Lisa S. Brodyaga
REFUGIO DEL RIO GRANDE
17891 Landrum Park Rd.
San Benito, TX 78586

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed, first-class postage prepaid, to the Office of District Counsel, P.O. Box 1711, Harlingen, Texas 78551, this 2nd day of April, 2003.

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB #1105-0065
**Notice of Appeal to the Board of Immigration**
**Appeals of Decision of Immigration Judge**

1. List Name(s) and "A" Number(s) of all Applicant(s)/Respondent(s):

   Juan Larin-Ulloa

   A92 800 131

   **For Official Use Only**

   ! **WARNING TO ALL APPLICANT(S)/RESPONDENT(S):** Names and "A" Numbers of everyone appealing the order must be written in Item #1.

2. Applicant/Respondent is currently ☒ DETAINED ☐ NOT DETAINED.

3. Appeal from the Immigration Judge's decision dated 5/22/02 _____.

4. **State in detail the reason(s) for this appeal. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

   ! **WARNING:** The failure to specify the factual or legal basis for the appeal may lead to summary dismissal without further notice, unless you give specific details in a timely, separate written brief or statement filed with the Board.

   See attached.

   Further errors will be identified upon receipt of transcript and ROP.

   *Staple Check or Money Order Here. Include your name(s) and "A" number(s)*

   (Attach more sheets if necessary)

5. I ☒ do / ☐ do not desire oral argument before the Board of Immigration Appeals.

6. I ☒ will / ☐ will not file a separate written brief or statement in addition to the "Reason(s) for Appeal" written above or accompanying this form.

> **!** **WARNING:** Your appeal may be summarily dismissed if you indicate in Item #6 that you will file a separate written brief or statement and, within the time set for filing, you fail to file the brief or statement and do not reasonably explain such failure.

**✍ SIGN HERE ➜** 7. X _Lisa S. Brodyaga_ _6/6/02_
Signature of Person Appealing _Date_
*(or attorney or representative)*

8.
| Mailing Address of Applicant(s)/Respondent(s) |
| --- |
| Juan Larin-Ulloa |
| (Name) |
| c/o Lisa Brodyaga, Attorney |
| REFUGIO DEL RIO GRANDE |
| (Street Address) |
| 17891 Landrum Park Road |
| San Benito, Texas 78586 |
| (Apartment or Room Number) |
| (City, State, Zip Code) |

9.
| Mailing Address of Attorney or Representative |
| --- |
| Lisa Brodyaga, Attorney |
| (Name) |
| REFUGIO DEL RIO GRANDE |
| 17891 Landrum Park Road |
| San Benito, Texas 78586 |
| (Street Address) |
| (Suite or Room Number) |
| (City, State, Zip Code) |

> **!** **WARNING:** An attorney or representative will not be recognized as counsel on appeal and will not receive documents or correspondence in connection with the appeal, unless he/she submits a completed Form EOIR-27.

## CERTIFICATE OF SERVICE
### (Must Be Completed)

10. I _Lisa S. Brodyaga_ mailed or delivered a copy of this notice of appeal
(Name)

on _6/6/02_ to _INS_
(Date) (Opposing Party)

at _PO Box 1711   Harlingen Tx  78551_ .
(Address of Opposing Party)

**✍ SIGN HERE ➜** X _____
Signature of Person Appealing
*(or attorney or representative)*

### Have You?

- ❑ Read all of the General Instructions
- ❑ Provided all of the requested information
- ❑ Completed this form in English
- ❑ Provided a certified English translation for all non-English attachments

- ❑ Signed the form
- ❑ Served a copy of this form and all attachments on the opposing party
- ❑ Completed and signed the Certificate of Service
- ❑ Attached the required fee or fee waiver request

NOTICE OF ENTRY OF APPEARANCE AS ATTORNEY OR REPRESENTATIVE
BEFORE THE BOARD OF IMMIGRATION APPEALS
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

| TYPE OF PROCEEDING | | | DATE 6/6/02 |
|---|---|---|---|
| ☐ Deportation | ☐ Bond Redetermination | ☐ Disciplinary | ALIEN NUMBER(S) (list lead alien number and all family member alien numbers if applicable) |
| ☒ Removal | ☐ Motion to Reopen/Reconsider | | |
| ☐ Exclusion | ☐ Rescission | | A 92 800 131 |

I hereby enter my appearance as attorney or representative for, and at the request of, the following named person(s):

NAME (First)        (Middle Initial)        (Last)

Juan ### Larin-Ulloa

ADDRESS (Number & Street)        (Apt No.)        (City)        (State)        (Zip Code)

c/o
Lisa Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586

Please check one of the following:

☒ 1    I am a member in good standing of the bar of the highest court(s) of the following State(s), possession(s), territor(ies), Commonwealth(s), or the District of Columbia

Name(s) of Court(s)                          State Bar No. (if applicable)

Texas                                         030528 00

(Please use space on reverse side to list additional jurisdictions.)

I ☒ am not (or ☐ am - explain fully on reverse side) subject to any order of any court or administrative agency disbarring, suspending, enjoining, restraining, or otherwise restricting me in the practice of law *currently* and the courts listed above comprise all of the jurisdictions other than federal courts where I am licensed to practice law.

☐ 2    I am an accredited representative of the following qualified non-profit religious, charitable, social service, or similar organization established in the United States, so recognized by the Executive Office for Immigration Review (provide name of organization) _____

☐ 3    I am a law student or law graduate, reputable individual, accredited official, or other person authorized to represent individuals pursuant to 8 C.F.R. § 292. (Explain fully on reverse side.)

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representation before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID# | TELEPHONE NUMBER (Include Area Code) | DATE |
|---|---|---|---|
| | | 956 · 421- 3226 | 6/6/02 |

| NAME OF ATTORNEY OR REPRESENTATIVE (TYPE OR PRINT) | ADDRESS | Check here if this is a new address |
|---|---|---|
| Lisa Brodyaga, Attorney REFUGIO DEL RIO GRANDE 17891 Landrum Park Road San Benito, Texas 78586 | | Lisa Brodyaga, Attorney REFUGIO DEL RIO GRANDE 17891 Landrum Park Road San Benito, Texas 78586 |

Certificate of Service

I, Lisa Brodyaga (Name) mailed or delivered a copy of the foregoing on 6/6/02 (Date) to the Immigration and Naturalization Service at PO Box 1711 Harlingen Tx 78551 (Address)

Signature of Attorney or Representative

OMB#1125-0005                                                   FORM EOIR-27
                                                                August 99

(Note: Alien may be required to sign Acknowledgement and Consent on reverse side of this form.)

Juan Larin-Ulloa
A92 800 131

Addendum to Notice of Appeal

Prior counsel erred in admitting that Respondent's conviction was under Kansas Statutes Annotated 21-3414(a)(1)(A), and the Immigration Judge erred in following that erroneous admission, and finding that the Respondent had been convicted of an aggravated felony. The Complaint showed on its face that it had been redacted by interlineation, and the offense to which it was reduced was not under 21-3414(a)(1)(A), and was not a crime of violence.

The redacted Complaint reads that the Respondent did "unlawfully, intentionally, in a manner whereby [the defendant?] could have .. cause[d] great bodily harm or disfigurement to another person, to wit, Isarael Rosas." Even though the statutory section of the printed form was not amended, when the Complaint is viewed in the context of Kansas Statutes 21-3414, it is clear that while it initially charged a violation of 21-3414(a)(1)(A), intentionally causing great bodily harm, (a level 4 offense), it was amended, by interlineation, to charge a violation of 21-3414(a)(1)(C) (a level 7 offense), to wit:

> (C) intentionally causing physical contact with another person when done in a ... manner whereby great bodily harm, disfigurement or death can be inflicted

This is consistent with the fact that the language of the Complaint, as amended, is a grammatical non sequitur. It has no verb, and does not say **what** it was that the Respondent did, "in a manner which could have... cause[d] greatly bodily harm or disfigurement" to Mr. Rosas. Under the statute, 21-3414(a)(1)(C), all that was required was that he "intentionally caus[e] physical contact" in a manner which **could have** caused great harm. However, it is clear from the Complaint that said harm never materialized, as would be required for an offense to have been committed under 21-3414(a)(1)(A). Nor is it required that his intentional physical contact have been performed with the **knowledge** that it might cause such harm, let alone with the **intention** to cause this harm. *See, State v. Esher*, 922 P.2d 123 (1996):

> The language of 21-3414(a)(1)(C) simply requires proof that the defendant *intentionally* caused physical contact with another person. The statute, thus, incorporates the general intent required by 21-3201. Notably, however, the statute does not identify or require a further particular intent which must accompany the prohibited acts. Esher contends that 21-3414(a)(1)(C) should be read to require

an "intent to injure." This contention is without merit. Although the pre-1993 version of the aggravated battery statute required proof of "the unlawful touching or application of force to the person of another *with intent to injure that person or another*," K.S.A. 21-3414 (Ensley 1988), the legislature deleted the "intent to injure" language when it adopted the current version of the statute. "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the Page 785 amendment." *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990). Moreover, when a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.

Not all "physical contact" is violence. In *U.S. v. Rodriguez-Guzman*, 56 F.3d 18, 20 n.8 (5th Cir. 1995), the Fifth Circuit defined the term "force" as used in 18 U.S.C. §16(b):

We perforce interpret "force" to mean more than the mere asportation of some property of the victim. The clear import of defining a "crime of violence" is that "force" as used in the definition is synonymous with destructive or violent force.

Therefore, it is not a "use of force" as used in 18 U.S.C. §16 for a medical technician to take a blood sample, or for a dentist to use a pick in cleaning someone's teeth But under the Kansas statute, it could be an offense if the medical technician, or the dentist knowingly used "dirty" equipment. In such cases, even if the accused did not know that the patient on whom the equipment had previously been used was HIV positive, and that equipment was contaminated with that person's blood, an offense would have been committed. The touching was intentional, the touching occurred in a "manner whereby great bodily harm, disfigurement or death [could] be inflicted," and "general" criminal intent was present.

Such a scenario would not constitute a "crime of violence" under *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001) ("substantial risk that physical force ... may be used" contemplates only reckless disregard for the probability that *intentional* force may be employed). In the above hypothetical, there would be "reckless disregard" for the possibility of serious injury, but not that "intentional force" would be employed. Under the categorical approach, 21-3414(a)(1)(C) is therefore not an aggravated felony.

2



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

_____

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**Brodyaga, Lisa S., Esquire**
**17891 Landrum Park Road,**
**San Benito, TX 78586-0000**

**Office of the District Counsel/Pi**
**P.O. Box 1711**
**Harlingen, TX 78551**

**Name: LARIN-ULLOA, JUAN**

**A92-800-131**

**Type of Proceeding: Removal**

**Date of this notice: 04/25/2003**

**Type of Appeal: Case Appeal**

**Appeal filed by: Alien**

**Date of Appeal: 06/10/2002**

### NOTICE -- BRIEFING SCHEDULE

- o   Enclosed is a copy of the decision of the Immigration Judge.
- o   Enclosed is a copy of the transcript of the testimony of record.
- o   Appealing party is granted until 05/16/2003 to submit a brief to the Board of Immigration Appeals. The brief must be **RECEIVED** at the Board on or before this date.
- o   Opposing party is granted until 05/16/2003 to submit a reply brief to the Board of Immigration Appeals . The brief must be **RECEIVED** at the Board on or before this date.

     **WARNING:**   If you indicated on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal. If you fail to file the brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal. *See* 8 C.F.R. § 1003.1(d)(2)(i)(E).

**FILING INSTRUCTIONS -- In General.**

**IMPORTANT: The Board of Immigration Appeals has included two copies of this notice. Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for records. Thank you for your cooperation.**

     A fee is not required for the filing of a brief. Your brief must be RECEIVED at the Clerk's Office at the Board of Immigration Appeals within the prescribed time limits. It is NOT sufficient simply to mail the brief and assume your brief will arrive on time. We strongly urge the use of an overnight courier service to ensure the timely filing of your brief

Use of an over-night courier service is strongly encouraged to ensure timely filing.

92-800-131

If the alien is represented by counsel at the appeal level, a Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals (Form EOIR-27) must be filed with the Board.

If you have any questions about how to file something at the Board, you should review the Board's Practice Manual and Questions and Answers at www.usdoj.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents.  If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the INS at the address shown above.  Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them.  Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

Filing Address:

To send by courier or overnight delivery service, or to deliver in person:
    Board of Immigration Appeals,
    Clerk's Office,
    5201 Leesburg Pike, Suite 1300,
    Falls Church, VA 22041

    Business hours:  Monday through Friday, 8:00 a.m. to 4:30 p.m.

To mail by regular first class mail:
    Board of Immigration Appeals
    Clerk's Office
    P.O. Box 8530
    Falls Church, VA  22041.


**FILING INSTRUCTIONS -- Extension Request.**

Unless you receive a Board Notice granting your extension request, your brief will remain due on the date stated above.

Extensions of briefing time will only be granted for good cause.  All extension requests must be in writing.  Telephonic or fax requests will not be accepted.

Extension requests must be **RECEIVED** at the Board on or before the expiration of the initial briefing schedule.  Requests for extension of briefing time received after expiration of the initial briefing period, will not be granted.

The Board does not grant extensions for more than 21 days.  If your request is granted, the brief will generally be due 21 days from the date the initial briefing schedule expires, not 21 days from the date of the request for an extension or the date of the Board response to the request.  The new due date will be stated on the notice granting the extension.

The policy of the Board is that no additional extensions will be granted.