IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 3 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JUAN LARIN-ULLOA | ) |
| Petitioner, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. B-02-107 |
| | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY, | ) |
| Respondent. | ) |

**GOVERNMENT'S RENEWED MOTION TO DISMISS FOR FAILURE TO EXHAUST REMEDIES AND ARGUMENT WITH RESPECT TO PETITIONER'S STATUS AS AN AGGRAVATED FELON**

On February 11, 2003, the Court denied without prejudice the Government's Motion to Dismiss for Failure to Exhaust Remedies, pending the outcome of litigation in the Fifth Circuit on the constitutionality of INA Section 236(c). On April 29, 2003, the Supreme Court found Section 236(c) constitutional in <u>DeMore v. Kim</u>, ___ U.S. ___, 2003 WL 1960607. On May 8, 2003, this Court terminated abeyance in the instant case and ordered the Government to present its views on the status of the Petitioner as an aggravated felon.

The government renews its argument that the Court lacks jurisdiction to determine the interlocutory determination of whether Petitioner is within the class of persons subject to mandatory detention under Section 236(c). Though Petitioner may challenge this assessment before an Immigration Judge and the BIA, <u>Matter of Joseph</u>, Interim Decision 22 I&N Decision 799 (BIA 1999), the BIA's determination under <u>Joseph</u> is not a final order of removal subject to judicial review. In adopting this position, the government concedes that, as an alien preliminarily designated as an aggravated felon, subject to mandatory detention under INA Sec. 236(c), Petitioner may not obtain judicial review of that determination pending a final order from the

Board of Immigration Appeals. He may, however, obtain review of the ultimate issue as to his removal, both before the BIA and the Court of Appeals.[1]

Furthermore, the Government renews its arguments heretofore presented that Petitioner is an aggravated felon by virtue of the fact that he was convicted of a crime of violence, to wit: aggravated battery committed with a firearm.

    1.    <u>Petitioner has Failed to Exhaust his Remedies.</u>

As is abundantly clear in the record, the merits of petitioner's removal case are before the BIA. Reading Exhibit C to Petitioner's Points and Authorities, Petitioner is making the exact same argument with respect to his removal that he is making in the present habeas corpus petition. However, Petitioner's attempt to bifurcate litigation on the same issue, in two different tribunals, runs afoul of the law and finds no support in precedent.

Section 242(b)(9) of the INA directs that judicial review of any legal or factual question is obtainable only in the Court of Appeals on a petition for review. The text of Section 242(b)(9) could scarcely be any clearer:

> Judicial review of <u>all questions of law and fact</u>, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this chapter shall be available only in <u>judicial review</u> of a <u>final order</u> under this section.

8 U.S.C. § 1252(b)(9)(Supp.1998)(emphasis added). In <u>Richardson v. Reno</u>, 162 F. 3d 1338 (11th Cir. 1998), the 11th Circuit held that INA § 242(b)(9) provides clear evidence of Congress' desire to "abbreviat[e] judicial review to one place and one time: only in the court of appeals and only after a final removal order and exhaustion of all administrative remedies."

---

[1] Petitioner is currently challenging his removal before the BIA and is raising the identical issues as he is here, i.e. he is in the process of exhausting his administrative remedy.

162 F.3d at 1354; <u>see also</u> 162 F.3d at 1373 ("In addition to retaining a mandatory exhaustion provision, IIRIRA added INA § 242(b)(9) which now expressly provides that judicial review is available of only 'a final order'"). <u>See also Lopez v. Heinauer</u> ___ F. 3d ___, 2003 WL 21347122 (8th Cir. 2003). (Alien contesting reinstatement of prior order of removal had adequate remedy by way petition for review in Court of Appeals, so that district court was not authorized to hear his habeas petition).[2] It is thus clear that, given the procedural posture of his case, Petitioner may only challenge the finding that he is an aggravated felon with a petition for review before the Court of Appeals. He is not barred from litigating his felon status in the Court of Appeals, as Petitioner's status as an aggravated felon is a threshold jurisdictional issue, and a court has jurisdiction to determine its own jurisdiction. <u>See, e.g.</u>, <u>Balogun v. Ashcroft</u>, 270 F.3d 274, 278 (5th Cir.2001).

Petitioner would argue that his case is different, because he cannot obtain review in Court of Appeals at this juncture, insofar as he has no final order of removal which is necessary for a petition for review to the Fifth Circuit. The flaw with Petitioner's argument is that it is based upon the unexamined assumption that he is somehow entitled to a Federal Article III Court to resolve the interlocutory issue of whether he is within the class of persons subject to

---

[2] Although the 11th Circuit's subsequent decision in <u>Bejacmar v. Ashcroft</u>, 291 F.3d 735 (11th Cir. 2002), provides that certain alien without access to review in the Court of Appeals need not exhaust remedies before obtaining habeas review, <u>Bejacmar</u> clearly does not apply here. If the Board issues a final order finding the petitioner removable on the ground charged by the agency, <u>i.e.</u>, that he was convicted of anaggravated felony, the Petitioner may obtain review in the Court of Appeals, of the determination that he was convicted of an aggravated felony. <u>Balogun v. Ashcroft, supra</u> (determination that an alien is an aggravated felon is a threshold jurisdictional issue reviewable in the Court of Appeals). Thus, as the petitioner is not without access to appellate review, <u>Bejacmar</u> is not applicable.

mandatory detention during the pendency of his removal proceedings. Without such review, he remains in detention. The government submits that there is no statutory authority or case law to support the position that at any and every stage of his removal proceedings, an aggravated felon must be granted unrestricted access to the Federal Courts for any claim he may have. Congress has explicitly provided a means and method for challenging detention and removal, and Petitioner is due only what Congress has provided, and has by statute, precluded review of all but a final order of removal. .

The fact remains that the ultimate issue in Petitioner's case is whether he is removable as an aggravated felon. And though he may have to wait to litigate that issue in the Fifth Circuit, he will nonetheless have review of that issue in Federal Court if the BIA ultimately finds him removable.

Furthermore, insofar as Petitioner is challenging the preliminary determination that he is subject to mandatory detention, there is no habeas jurisdiction over that issue. Petitioner in the instant habeas petition is challenging his pre-order detention via the argument that he is not an aggravated felon. Because this is not a final order of removal, Petitioner is essentially challenging an interlocutory, collateral order in habeas proceedings..

The Supreme Court in <u>Cohen v. Beneficial Industrial Loan Corporation</u>, 69 U.S. 1221 (1941), held that statutes - which permit appeals only from final decisions or from interlocutory orders having a final and irreparable effect on rights of parties - disallow other appeals from any decision which is tentative, informal or incomplete. The Court reasoned that certain appeals - which do not involve the ultimate merits of the case and which are irrevocably lost upon a final decision on the merits are not interlocutory appeals subject to the bar.

The Fifth Circuit has adopted the reasoning of <u>Cohen</u>. In <u>U.S. v Rey</u>, 641 F.2d 222 (5th Cir. 1981), the Court noted an exception to the general bar on interlocutory appeals in pending cases. The Court held:

> Collateral orders within the exception are those that <u>conclusively</u> determine the disputed question, resolve an important issue <u>completely separate from the merits</u> of the action, and are effectively <u>unreviewable on appeal from a final judgment</u>.
>
> 641 F.2d at 224, <u>citing</u> <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463

(1978)(emphasis added). Thus, under <u>Rey</u>, all three criteria must be met in order for such an interlocutory appeal to be taken. In the instant case, none of them are. Petitioner is raising the identical issue which is the subject matter of his appeal before the BIA. He is challenging a preliminary determination, not a final order, and when he does have a final order he will have an opportunity to challenge his final order in the Court of Appeals.

Against this backdrop, the Petitioner's case does not permit the type of appeal he is making. A determination by this Court that he is not an aggravated felon clearly involves the ultimate question at issue. Furthermore, it not only is not separate from the merits of the action, it is the *very* basis of his action. And Petitioner's status as an aggravated felon is a jurisdictional issue completely reviewable by the Court of Appeals.

Simply put, there is no basis in law for this Court to review, in a habeas petition, the preliminary determination that Petitioner is an aggravated felon.

2. <u>Even If This Court Had Jurisdiction to Hear the Merits of Petitioner's Case, Petitioner's Argument Lacks Merit Because His Conviction For Aggravated Battery Is A Crime Of Violence and He Remains Removable as an Aggravated Felon</u>

Petitioner is convicted of a Kansas aggravated battery statute. The relevant provisions of the Kansas aggravated battery statute are as follows:

**K.S.A. 21-3414 - Aggravated Battery**
(a) Aggravated battery is:
 (1) (A) Intentionally causing <u>great bodily harm</u> to another person or disfigurement of another person; or
 (B) intentionally causing <u>bodily harm</u> to another person <u>with a deadly weapon</u>, or in any manner whereby <u>great bodily harm</u>, disfigurement or death <u>can be inflicted</u>; or
 (C) intentionally causing <u>physical contact</u> with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted;. .

. . .

(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. . .

K.S.A. 21-3414. The Conviction documents show that Petitioner was convicted under K.S.A. 21-3414(a)(1)(A), with a severity level of 7.[3] A.R. 54, 57, 58, 60. The executed plea memorandum shows that the Petitioner pled guilty to K.S.A. 21-3414(a)(1)(B), also with a security level of 7 and also a "person felony" under Kansas law. A.R. 60. There is no reference in the record whatsoever that the petitioner was charged with, pled to, or convicted of K.S.A. 21-3414(a)(1)(C)[4].

---

[3] There *is* an ambiguity in the record regarding the exact nature of the conviction. The record reflects that petitioner is convicted of subsection (A) which is clearly a severity level 4 offense, but the record also indicates that Petitioner's conviction is a severity level 7 offense. This ambiguity is irrelevant. Petitioner is convicted of violating either subsection (A) or (B) with a firearm, and as is shown below, either is an aggravated felony as a crime of violence involving the use of force.

[4] Petitioner initially argued that he was convicted of the Class C offense. See Petitioner's First Amended Petition For Habeas Corpus. Despite an utter lack of record
(continued...)

Petitioner's first argument, as outlined in his "First Amended Petition for Habeas Corpus," is that, although he is guilty of "aggravated battery," in that he pled guilty to a statute titled "aggravated battery" appearing at K.S.A. 21-3414, he is not guilty of a crime of violence, because petitioner actually pled to and was convicted of a violation of K.S.A. 21-3414(a)(1)(C). This provision, as the petitioner's argument goes, is not a crime of violence because it only requires intentional physical contact, which is not the equivalent of actual force.

Petitioner's first argument fails. Petitioner was not convicted under subsection (C). There is no evidence whatsoever that Petitioner was convicted under subsection (C). Every reference in the administrative record to the statute to which the Petitioner pled guilty, refers to subsection (A), with the one exception of the plea agreement, which refers to subsection (B). A.R. 54, 57, 58, 60. Nowhere, except in his pleadings filed with the Court, is there the notion that Petitioner pled guilty to and was convicted of a violation of subsection (C). The record reflects that Petitioner was convicted under subsection (A), which requires intentional infliction of great bodily harm. The record also reflects that a firearm was used in the commission of his offense. Petitioner cannot collaterally attack his conviction in these proceedings, and he cannot avoid the fact that he is convicted pursuant to subsection (A).

Petitioner's second argument, outlined in his "Supplemental Points And Authorities" is that he is not convicted of subsection (A), but rather subsection (B). Even accepting the prospect that petitioner was convicted under a different statute - K.S.A. 21-3414(a)(1)(B) - the statute clearly shows that a crime charged under 21-3414(a)(1)(B) is as much a "crime of violence," which is an

---

[4](...continued)
evidence to support this assertion, is unclear whether Petitioner yet maintains that he was convicted of this class C offense.

"aggravated felony" as charged by the INS. Subsection (B) requires the intentional infliction of bodily harm, which, though not "great bodily harm," is bodily harm nonetheless and certainly well beyond the mere "physical contact" of which Petitioner alleges he is convicted.

Petitioner attempts to liken his situation to felony drunk driving, citing the Fifth Circuit's opinion in United States v. Chapa-Garza. 243 F.3d. 921 (5th Cir. 2001)  Petitioner misreads Chapa-Garza. In Chapa-Garza, the Fifth Circuit concluded that driving while intoxicated (DWI) is not a crime of violence because the commission of the crime (driving a motor vehicle while intoxicated) does not necessarily involve the use of force against a person in the commission of the crime.

> Accordingly, we. . . hold, consonant with the ordinary meaning of the word "use," that a crime of violence . . . requires recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense.

243 F. 3d at 927 (emphasis added). Chapa Garza did not draw its distinction upon the lack of specific intent to cause harm. Petitioner may argue that, because driving drunk does not *necessarily* entail harming someone else, therefore causing bodily harm (as referred to in K.S.A. 21-3414(a)(1)(B)) does not *necessarily* entail the use of force. That is true, if petitioner poisoned his neighbor or donated HIV-tainted blood. Unfortunately for this Petitioner, the reality is that he is convicted of intentionally causing bodily harm and using a firearm in its commission. To argue that this is not a crime of violence because it involves no specific intent is a misreading of Chapa-Garza, the statute, and the record as a whole.

Petitioner's reasoning - that he is not an aggravated felon because his crime may be committed by omission rather than commission - is flawed for the same reasons that he misreads United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001). Citing recent Fifth

Circuit law in the case of United States v. Gracia-Cantu, 302 F. 3d 308 (5th Cir. 2002), Petitioner again confuses the issue by speculating that his crime is not a crime of violence and cites to instances where aggravated battery can be committed without the use of force. In this instance, petitioner attempts to equate his Kansas conviction of aggravated battery with the Texas offense of injury to a child. Petitioner's argument in this regard is premised on the unsupported assumption that aggravated battery under Kansas criminal law is a "results-oriented" crime.

The Texas statute under which Gracia-Cantu was convicted for injury to a child provides in relevant part:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual:
>    (1) serious bodily injury;
>    (2) serious mental deficiency, impairment, or injury; or
>    (3) bodily injury.

Tex. Penal Code Ann. § 22.04(a) (Vernon 2002).[5] The court then concluded that "because an offense of injury to a child often stems from an omission rather than an intentional use of force, such offense is not, by its nature, a crime of violence within the meaning of 18 U.S.C. § 16(b)." Id. at *3. The Court then goes on to cite Chapa Garza, as authority for this proposition.[6]

---

[5] On its face, it is clear that the statute punishes conduct which involves negligence and omission. There is no such possibility with K.S.A. § 21-3414(A) or (B), which, again, requires the intentional infliction of bodily harm.

[6] As is noted earlier, although Chapa-Garza is relevant to the resolution of the issue in Gracia-Cantu, it is not relevant here because drunk driving does not necessarily entail the use
(continued...)

Petitioner also argues in his Supplemental Points and Authorities that the statute of which he is convicted - K.S.A. 21-3414(a)(1)(B) - is divisible, in that it punishes two offenses in the alternative. In this regard, Petitioner notes that the statute to which he pled guilty punishes:

1) those offenses intentionally causing bodily harm, committed with a deadly weapon; and, 2) those offenses committed in a manner whereby great bodily harm, disfigurement or death can be inflicted. Petitioner proceeds to argue that "from the language of the interlineated complaint, . . ' it is clear that the latter option is involved.'" Petitioner's Supplemental Points And Authorities at 1.

Looking at the actual records of conviction, it is abundantly obvious that the petitioner was convicted of the former offense - the use of a deadly weapon - because the record indicates that a firearm was used in the commission of the offense. A.R. 54, 57. To that extent, petitioner's argument about causing harm without force is ill-founded..

Furthermore, if in fact the aggravated battery statute *is* divisible, the inquiry does not stop upon finding it divisible. Rather, the Court must look beyond the statute itself to determine whether there is evidence in the record to establish that the punished conduct is in fact an aggravated felony. In Taylor v. United States, 495 U.S. 575 (1990), the U.S. Supreme Court articulated the governing analytical model to be used by a court construing a divisible statute. The Taylor analysis is a two-step inquiry. First, the court must review the statute at issue. If the statute facially punishes conduct that is not an aggravated felony, as well as that which is an

---

[6](...continued)
of force.

aggravated felony, then the next step is to determine whether other judicially noticeable facts exist in the record would nonetheless qualify the punished conduct as an aggravated felony. Taylor, supra; accord, Randhawa v. Ashcroft 298 F.3d.1148 (9th Cir. 2002).

Here again the Petitioner's argument fails. A perusal of the record clearly indicates that the petitioner committed his crime with a firearm. A.R. 54. It is also clear from the record that Petitioner was required to pay $3,000 restitution to the patient account of his victim to the Wesley Medical Center. A.R. 55. And unlike poisoning a beverage, practicing dentistry with dirty implements, refusing access to lifesaving medicine or driving a vehicle under the influence of alcohol, committing an aggravated battery by intentionally causing bodily harm with a firearm to such an extent that one's victim required medical attention clearly creates a substantial risk that force may be used.

Against this backdrop, it is indeed puzzling how a statute entitled "aggravated battery" to which the petitioner pled guilty, which involves "intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted" could not be a crime of violence. Petitioner's claim that intentionally causing bodily harm (in this case, the record shows the petitioner used a firearm, A.R. 54, 57, 58), for which the petitioner was sentenced to pay $3000 restitution to cover medical expenses on behalf of his victim, A.R. 55, is not a crime of violence, is not well-taken. The record simply does not support this novel argument.

## CONCLUSION

Because petitioner is seeking habeas review of an issue for which he admittedly has not yet exhausted remedies, and because petitioner's underlying argument with respect to his conviction of an aggravated felony has no support in the law or factual record, Petitioner's contentions are without merit and should be rejected.[7] The Court should therefore dismiss the Habeas Petition.

                Respectfully submitted,

                PETER D. KIESLER
                Assistant Attorney General
                Civil Division

                JEFFREY J. BERNSTEIN
                Senior Litigation Counsel

                *[signature]*

for   PAUL FIORINO, Attorney
      Office of Immigration Litigation
      Civil Division
      U.S. Department of Justice
      P.O. Box 878
      Ben Franklin Station
      Washington, D.C. 20044
      (202) 353-9986

---

[7] Furthermore, petitioner may not argue that the record incorrectly reflects his plea. Such an argument is a collateral attack on his state criminal conviction and may not be heard in a Federal civil court.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing Motion To Dismiss was mailed to Lisa Brodyaga, Attorney at Law, Landrum Park, San Benito, TX 78586 via first class mail, postage pre-paid, on July 3, 2003.

LISA M. PUTNAM
Special Assistant U.S. Attorney