35

United States District Court
Southern District of Texas
FILED

JUL 2 1 2003

Michael N. Milby
Clerk of Court

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

**JUAN LARIN-ULLOA,**

**v.** ) **C.A. B-02-107**

**JOHN ASHCROFT et al.** ) **WITH REQUEST FOR PROMPT HEARING**

**PETITIONER'S OPPOSITION TO RESPONDENTS' "RENEWED MOTION TO DISMISS FOR FAILURE TO EXHAUST REMEDIES," AND REBUTTAL TO THEIR "ARGUMENT WITH RESPECT TO PETITIONER'S STATUS AS AN AGGRAVATED FELON."**

**TABLE OF CONTENTS**

I. PROCEDURAL AND FACTUAL BACKGROUND ........................ 1

II. MR. LARIN HAS EXHAUSTED HIS REMEDIES WITH RESPECT TO THE BOARD'S DISMISSAL OF HIS APPEAL FROM THE IMMIGRATION JUDGE'S DETERMINATION THAT HE LACKED JURISDICTION OVER THE BOND REQUEST. 5

A. EVEN ASSUMING, *ARGUENDO*, THAT THIS COURT WOULD LACK JURISDICTION IF THE ISSUES WERE IDENTICAL IN THE BOND AND REMOVAL PROCEEDINGS, THOSE ISSUES ARE NOT IDENTICAL, AS THE DETERMINATION TO BE MADE IN A *JOSEPH* HEARING RELATES ONLY TO THE LIKELIHOOD THAT THE GOVERNMENT WILL PREVAIL ON THE ISSUE OF REMOVABILITY IN THE MERITS HEARING ...... 5

B. THE FACT THAT, FOLLOWING *DEMORE v. KIM*, MR. LARIN FILED TWO MORE REQUESTS FOR BOND HEARINGS, BASED ON CHANGED CIRCUMSTANCES, DOES NOT DESTROY THE FINALITY OF THE BIA'S ACTION IN DISMISSING HIS INITIAL BOND APPEAL .. 8

III. UNDER *DEMORE v. KIM, SUPRA*, MR. LARIN IS ENTITLED TO A *JOSEPH* HEARING IF THIS COURT AGREES THAT MR. LARIN HAS MADE NON-FRIVOLOUS ARGUMENTS THAT HE IS NOT INCLUDED IN 8 U.S.C. §1226(c) .................................................... 11

IV. CONCLUSION ........................................ 14

**PETITIONER'S EXHIBITS**

EXHIBIT G
Memorandum Decision of the Immigration Judge, April 18, 2002

EXHIBIT H
Documents from Other Recent Cases Where the Bia Mislaid Pleadings

EXHIBIT I
Pages 7 through 12 of the removal hearing, conducted March 14, 2002, wherein prior counsel "admitted" that Mr. Larin had been convicted under K.S.A. §21-3414(a)(1)(A), but denied that it was a crime of violence, and therefore, an aggravated felony, on the grounds that by denying the legal consequences of his admission, he thought he could thereby preserve Mr. Larin's eligibility for relief in the form of Temporary Protected Status.

EXHIBIT J
Pleadings relating to Mr. Larin's request for a *Joseph* bond hearing, based on the ineffective assistance of prior counsel.

EXHIBIT K
Pleadings relating to Mr. Larin's second request for a *Joseph* bond hearing, based on a change in the applicable law, to wit, the Fifth Circuit's June 26, 2003, decision to grant *en banc* reconsideration in *U.S. v. Vargas-Duran*, 319 F.3d 194 (5th Cir. 2003).

EXHIBIT L
Pleadings relating to Mr. Larin's difficulties in getting his appeal heard by the BIA in the case in chief. Almost a year after filing the notice of appeal, he had not received the transcript and briefing notice. In most detained cases, the transcript is provided within 2-3 months of the filing of the appeal. Therefore, on April 2, 2003, he filed a "Motion for Transcript and Briefing Schedule." The transcript was then prepared. It was served on April 25, 2003, and received on April 29, 2003.

**TABLE OF AUTHORITIES**

**CASES**

*Demore v. Kim*,
123 S. Ct. 1708 (2003) . . . . . . . . . . . . . . 1, 5-7, 11, 15

*Kansas v. Hall*,
793 P.2d 737 (S.Ct. Kans 1990) . . . . . . . . . . . . . . 3, 12

*Kansas v. Howell*,
601 P.2d 1141 (S. Ct. Kan. 1979) . . . . . . . . . . 10, 11, 13

*Molina v. Sewell*,
983 F.2d 676 (5th Cir. 1993) . . . . . . . . . . . . . . . . 4, 11

*State v. Esher*,
922 P.2d 123 (1996) . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Chapa-Garza*,
243 F.3d 921 (5th Cir. 2001) . . . . . . . . . . . . . . . . 13

*U.S. v. Gracia-Cantu*,
302 F.3d 308 (5th Cir. 2002) . . . . . . . . . . . . . . . . . 4

*U.S. v. Rodriguez-Guzman*,
56 F.3d 18 (5th Cir. 1995) . . . . . . . . . . . . . . . . . 13

*U.S. v. Vargas-Duran*,
319 F.3d 194 (5th Cir. 2003), *en banc* reconsideration granted, 2003 U.S. App. LEXIS 13232 (June 26, 2003) . 4, 9

**STATUTES**

5 U.S.C. §702 *et seq.*
Administrative Procedure Act, ("APA") . . . . . . . . . . . 2

5 U.S.C. §703 . . . . . . . . . . . . . . . . . . . . . . . . 2

8 U.S.C. §1101(a)(43)(F) . . . . . . . . . . . . . . . . . . . 6

8 U.S.C. §1226(c) . . . . . . . . . . . . . . . . . 1, 4, 6, 11

18 U.S.C. §16 . . . . . . . . . . . . . . . . . . 4, 6, 7, 13, 14

Case 1:02-cv-00107   Document 35   Filed in TXSD on 07/21/2003   Page 4 of 20

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . . . . . . 2

Kansas Statutes Annotated §21-3414 . . . . . . . . . . . . . . . 2

Kansas Statutes Annotated §21-3414(a)(1)(A) . . . . . . 2, 3, 7, 9

Kansas Statutes Annotated §21-3414(a)(1)(B) . . . . 3, 10, 12, 14

Kansas Statutes Annotated §21-3414(a)(1)(C) . . . . . . 4, 7, 12-14

**ADMINISTRATIVE DECISIONS**

*Matter of Adeniji*,
22 I&N Dec. 1102 (BIA 1999) . . . . . . . . . . . . . . . . 8, 9

*Matter of Joseph*,
22 I&N Dec 799 (BIA 1999) . . . . . . . . . . 1, 6, 8, 11, 15

*Matter of Lozada*,
19 I&N Dec. 637 (BIA 1988) . . . . . . . . . . . . . . . . . 9

*Matter of Madrigal-Calvo*,
21 I&N Dec. 323 (BIA 1996) . . . . . . . . . . . . . . . . . 3

*Matter of Rodriguez-Carrillo*,
22 I&N Dec. 1031 (BIA 1999) . . . . . . . . . . . . . . . . 3

*Matter of Valles-Perez*,
21 I&N Dec. 769 (BIA 1997) . . . . . . . . . . . . . . . . . 9

**REGULATIONS**

8 C.F.R. §1003.1(a)(7) . . . . . . . . . . . . . . . . . . 1, 8

8 C.F.R. §1003.1(a)(7)(iii) . . . . . . . . . . . . . . . . . . 2

8 C.F.R. §1003.19(d) . . . . . . . . . . . . . . . . . . . . . 1

8 C.F.R. §1003.19(d) . . . . . . . . . . . . . . . . . . . . . 5

8 C.F.R. §1003.19(e) . . . . . . . . . . . . . . . . . . . 8-10

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JUAN LARIN-ULLOA,** | ) | |
| | ) | |
| **v.** | ) | **C.A. B-02-107** |
| | ) | |
| **JOHN ASHCROFT et al.** | ) | **WITH REQUEST FOR PROMPT HEARING** |

**PETITIONER'S OPPOSITION TO RESPONDENTS' "RENEWED MOTION TO DISMISS FOR FAILURE TO EXHAUST REMEDIES," AND REBUTTAL TO THEIR "ARGUMENT WITH RESPECT TO PETITIONER'S STATUS AS AN AGGRAVATED FELON."**

Juan Larin-Ulloa, ("Mr. Larin"), opposes the "Government's Renewed Motion To Dismiss For Failure To Exhaust Remedies" and rebuts their "Argument with Respect to Petitioner's Status as an Aggravated Felon," cited herein as (INS:_). Mr. Larin further urges that he be given an immediate hearing, his petition be granted, and, given the eighteen months he has already been detained, that the Court either set a reasonable bond or remand with instructions that prompt a bond hearing be conducted, pursuant to *Matter of Joseph*, 22 I&N Dec 799 (BIA 1999) (alien is entitled to bond if the Immigration Judge or the BIA finds "on the basis of the bond record as a whole, that it is substantially unlikely" that the government will prevail on a charge of removability specified in 8 U.S.C. §1226(c)), cited with approval in *Demore v. Kim,* 123 S. Ct. 1708, 1713 (2003).

## I. PROCEDURAL AND FACTUAL BACKGROUND

Mr. Larin has been detained since January 24, 2002, without possibility of bond, allegedly pursuant to 8 U.S.C. §1226(c)(1). (REC:174) [1] He challenges the BIA's Order, issued under 8 C.F.R.

[1] The administrative record filed on August 15, 2002, relates to the removal proceeding, and contains no documents from the bond proceedings, which are separate and distinct. 8 C.F.R. §1003.19(d) On August 28, 2002, Mr. Larin filed a motion to strike the record, as unresponsive. [Dkt. 18]. Said motion was denied, without prejudice, on February 11, 2003. [Dkt. 30]. Petitioner renews said motion herewith, and also incorporates his reply to the response of the government. [Dkt.22]. However, in order to avoid further delay, he will cite the record as filed by Respondents, as (REC:__).

§1003.1(a)(7) [2] summarily affirming the Immigration Judge's denial of bond. [3] Under 8 C.F.R. §1003.1(a)(7)(iii), the Immigration Judge's decision thus becomes the "final agency determination." This is a final adverse agency action, reviewable in habeas corpus, 28 U.S.C. §2241, and, together with 28 U.S.C. §1331, through the Administrative Procedure Act, ("APA"), 5 U.S.C. §702 *et seq.* [4]

Unfortunately, prior counsel "admitted," (REC:171), that Mr. Larin was convicted under K.S.A. §21-3414(a)(1)(A), [5] although the record

---

[2] Renumbered, previously found at 8 C.F.R. §3.1(a)(7).

[3] *See,* Petitioner's Exhibit G, incorporated by reference.

[4] *See,* 5 U.S.C. §703 (emphasis added):

> The form of proceeding for judicial review [may be] any applicable form of legal action, **including actions for** declaratory judgments or writs of prohibitory or mandatory injunction or **habeas corpus**, ...

[5] K.S.A. §21-3414 provides, in totality, as follows:

21-3414. Aggravated battery.

(a) Aggravated battery is:
(1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
(B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
(2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or
(B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.
(b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A)

establishes, and Respondents concede, that this is incorrect. New counsel submitted a brief to the BIA in support of his appeal from the denial of bond, and a motion requesting leave to file it. [6] It was noted that the redacted Information failed to state what, if anything, he did. (Exh. C at 3-4). This renders the conviction void on its face, and amenable to a collateral attach before the BIA. [7] In the alternative, even if one reads the conviction documents with maximum liberality, [8] Mr. Larin showed that the only

---

> is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

[6] The Notice of Appeal from the removal order, and the bond pleadings submitted by current counsel, were mailed in the same envelope, and received by the BIA on June 10, 2002. (Exhibit D).

[7] *See, Matter of Rodriguez-Carrillo,* 22 I&N Dec. 1031, 1034 (BIA 1999) (emphasis added):

> [I]t is clear that an Immigration Judge and the Board cannot entertain a collateral attack on a judgment of conviction, **unless that judgment is void on its face**, and cannot go behind the judicial record to determine the guilt or innocence of an alien. See Matter of Madrigal, Interim Decision 3274 (BIA 1996).

The case at bar is one of those rare instances where that test is met. The amended Information fails to charge *anything*, much less an offense under 21-3414(a)(1)(A) or (B). Under Kansas law, this is a jurisdictional defect. Any conviction obtained thereunder is void.

[8] *See, Kansas v. Hall,* 793 P.2d 737, 764 (S.Ct. Kans 1990):

> Tardily challenged informations are to be construed liberally in favor of validity. The validity of an information is to be tested by reading the information as a whole. The elements of the offense may be gleaned from the information as a whole. **An information not challenged before verdict or finding of guilty or pursuant to K.S.A. 22-3502 by a motion for arrest of judgment will be upheld unless it is so defective that it**

offense of which he could plausibly have been convicted, K.S.A. §21-3414(a)(1)(C) was neither grounds for removal, nor for mandatory detention under §1226(c).[9] But without either adjudicating said motion, or mentioning the arguments presented in the brief, the BIA summarily affirmed the Judge's Order denying bond. In fact, although the pleadings submitted by new counsel reached the BIA more than two weeks prior to its decision, it is not clear that the single Board Member who adjudicated his appeal was even aware of their existence.[10]

In summarily affirming the Immigration Judge's decision, the BIA erred both procedurally, and on the merits. Procedurally, the Board should have adjudicated Mr. Larin's motion seeking leave to file a brief prior to issuing its decision. *See, Molina v. Sewell, supra.* Mr. Larin suffered prejudice, in that the result should have been different but for these errors. Having raised non-frivolous claims that he is not among the class of persons covered by §1226(c)(1), under *Demore v. Kim,* the Board should either have resolved those

---

> **does not, by any reasonable construction, charge an offense for which the defendant is convicted.** *United States* v. *Watkins*, 709 F.2d at 478.

[9] This argument was reinforced when the Fifth Circuit agreed to reconsider, en banc, their prior decision in *U.S. v. Vargas-Duran,* 319 F.3d 194 (5th Cir. 2003), *en banc* reconsideration granted, 2003 U.S. App. LEXIS 13232 (June 26, 2003). Therefore, the last word from the Fifth Circuit on the subject is *U.S. v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002), holding that "results-oriented" offenses are not crimes of violence under 18 U.S.C. §16, because they can be accomplished without forming an intent to use force.

[10] Given the lack of "docket sheets" or similar chronological records, the BIA has an abysmal history of such problems. *See, Molina v. Sewell,* 983 F.2d 676,681 (5th Cir. 1993) (BIA failed to rule on pending motion before dismissing appeal), and Petitioner's Exhibit H, incorporated by reference, showing egregious errors in maintaining the record which occurred twice in the just past few weeks, in cases where the alien was represented by the undersigned.

claims, or remanded the case for the Immigration Judge to do so.

**II. MR. LARIN HAS EXHAUSTED HIS REMEDIES WITH RESPECT TO THE BIA'S DISMISSAL OF HIS APPEAL FROM THE IMMIGRATION JUDGE'S DETERMINATION THAT HE LACKED JURISDICTION OVER THE BOND REQUEST.**

The claim that Mr. Larin had not exhausted his administrative remedies was first addressed at the Status Conference on July 23, 2002. Respondents conceded that the Immigration Judge had denied bond for lack of jurisdiction, and that Mr. Larin appealed to the BIA, which summarily affirmed the Judge's Order on June 25, 2002. (Petitioner's Exhibit B). Since the instant petition challenges only the BIA's dismissal of his bond appeal, he argued that he had exhausted his administrative remedies with respect to that Order.

The issue was again raised in Respondents' first motion to dismiss, [Dkt. 17]. Mr. Larin filed a detailed rebuttal, [Dkt. 19]. [11] Without so much as acknowledging his arguments, Respondents again assert that this Court lacks jurisdiction. Since the "ultimate issue" is allegedly identical in the removal and bond proceedings, they urge that there is no exhaustion of remedies with respect to bond, until the underlying removal proceedings are resolved. Respondents present no authority whatsoever for this proposition, and none is known to the undersigned. As discussed below, this is both patently incorrect, and inconsistent with the Supreme Court's recent ruling in *Demore v. Kim, supra*.

**A. EVEN ASSUMING, *ARGUENDO*, THAT THIS COURT WOULD LACK JURISDICTION IF THE ISSUES WERE IDENTICAL IN THE BOND AND REMOVAL PROCEEDINGS, THOSE ISSUES ARE NOT IDENTICAL, AS THE DETERMINATION TO BE MADE IN A *JOSEPH* HEARING RELATES ONLY TO THE LIKELIHOOD THAT THE GOVERNMENT WILL PREVAIL ON THE ISSUE OF REMOVABILITY IN THE MERITS HEARING.**

In addition to the fact that bond and removal proceedings are procedurally distinct, [12] there is a significant difference between

[11] To avoid burdening the record, Mr. Larin would incorporate, rather than repeat, the arguments made therein.

[12] *See*, 8 C.F.R. §3.19(d) (now, 8 C.F.R. §1003.19(d)).

the issues addressed. Removal proceedings determine, on the merits, whether one is removable as charged. By contrast, a *Joseph* hearing provides for **preliminary determination** of the merits, so that LPRs may be released on bond, where the case in chief is weak.

The finding to be made in a *Joseph* hearing is not whether Mr. Larin is, or is not, subject to removal. Rather, under *Joseph* and *Demore* Mr. Larin is entitled to bond, if, following such a hearing, the IJ finds "on the basis of the bond record as a whole, that it is substantially unlikely" that DHS [13] will prevail on the charge of removability laid herein, to wit, that he was convicted of an aggravated felony, as defined by 8 U.S.C. §1101(a)(43)(F): a crime of violence under 18 U.S.C. §16, for which a sentence of one year or more was imposed. If, as DHS claims, the issues were identical, there would rarely be any need for a *Joseph* hearing, as the issues in the bond and merits would collapse into the same proceeding.

That would be inimical to the holding of *Joseph,* and to the Supreme Court's rationale in upholding §1226(c). In *Demore,* the Court found said statute constitutional as applied to LPRs, precisely because *Joseph* provides an escape hatch where removability is unclear. In fact, the government assured the Court that *Joseph* hearings were, in effect, automatic. *See,* 123 S.Ct. at 1713 (emphasis added):

> **This "*Joseph* hearing" is immediately provided to a detainee who claims that he is not covered by § 1226(c).** Tr. of Oral Arg. 22. At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. See 8 CFR § 3.19(h)(2)(ii) (2002); *In re Joseph*, 22 I. & N. Dec. 799 (1999).

---

[13] The prosecuting agency, formerly the Immigration and Naturalization Service has been incorporated into the Department of Homeland Security, which will be referred to herin as "DHS."

Unfortunately, the assurances given the Supreme Court are not always fulfilled. It is just such a preliminary determination that Mr. Larin seeks. On entering the case, current counsel immediately asserted that Mr. Larin was not covered by §1226(c), and has made non-frivolous arguments in support thereof. [14] In the pleading filed with the BIA on June 10, 2002, Mr. Larin argued that the Information "is a grammatical non sequitur," as it "has no verb, and does not say **what** it was that [he] did, 'in a manner which could have ... cause[d] great bodily harm or disfigurement...'". (Exhibit C, at p.2). He also argued that subsection (C) was the only offense under K.S.A. §21-3414(a)(1) which could plausibly be derived from the redacted Information, and that said offense was not a "crime of violence" under 18 U.S.C. §16, as interpreted by the Fifth Circuit. The BIA never ruled on the motion seeking leave to present this claim, much less address it, or "immediately" remand the case for a *Joseph* hearing, at which its merits could be preliminarily determined, as contemplated by *Demore v. Kim*.

Rather, on June 25, 2002, a single Board Member affirmed without opinion the result of the decision below. (Exhibit B). Since Respondents chose to provide this Court with the record of the **merits hearing**, rather than of the **bond proceedings,** one is left to wonder whether the brief, (Exhibit C), was even in the record when the decision was made. This doubt is reinforced by the fact that various documents, including one issued by the BIA in June, 2002, were omitted from the "Certified Administrative Record," which was

---

[14] Without he record of the bond proceedings, it is unknown what arguments prior counsel made regarding Mr. Larin's eligibility for bond. In the transcript of the removal hearing, the only reason given was that counsel wanted to argue that Mr. Larin was eligible to TPS, (temporary protected status), and he was "not sure he would be eligible to make that argument" if he admitted that K.S.A. §21-3414(a)(1)(A) was a crime of violence. (Petitioner's Exhibit I, incorporated by reference), at pp. 10-11. The Judge was rightfully confused, and held it to be a crime of violence. *Id.*

prepared August 1, 2002, and filed August 15, 2002. [Dkt. 16]. [15]

**B. THE FACT THAT, FOLLOWING *DEMORE v. KIM*, MR. LARIN FILED TWO MORE REQUESTS FOR BOND HEARINGS, BASED ON CHANGED CIRCUMSTANCES, DOES NOT DESTROY THE FINALITY OF THE BIA'S ACTION IN DISMISSING HIS INITIAL BOND APPEAL.**

With new counsel, Mr. Larin has done everything possible to obtain a *Joseph* hearing. He requested a hearing in his appeal of the Judge's finding that he lacked jurisdiction to set a bond. [16] The summary affirmance of the Judge's decision made that decision the final agency determination. 8 C.F.R. §1003.1(a)(7). By definition, that decision does not address the claims urged in Mr. Larin's appeal to the BIA. They were made only after the IJ's decision.

He then challenged the "final agency determination" in this Court, but the case was stayed until *Demore* was decided. After receiving the transcript of the removal proceedings in late April, 2003, Mr. Larin has filed two motions asserting changed circumstances, and requesting a second bond hearing. [17] The first was based on the

[15] Also missing is any record of the hearing and the Judge's decision. No transcript was prepared, and no mention was made of those proceedings when the "certified" record was filed. Also absent are the notice of appeal from the removal order, the receipt for said appeal, mailed by the BIA on June 11, 2002, and the decision on the bond appeal, issued June 25, 2002. *See,* Exhibits B, C, D and E, filed July 1, 2002. [Dkt.5]. *See also,* Exhibit H.

[16] Again, absent the bond record, one can only surmise that the Judge concluded he lacked jurisdiction on the grounds that K.S.A. §21-3414(a)(1)(A) was an aggravated felony. This may well be true. But Mr. Larin was not convicted under §21-3414(a)(1)(A).

[17] *See, Matter of Adeniji,* 22 I&N Dec. 1102 (BIA 1999), codified at 8 C.F.R. §3.19(e) (now, §1003.19(e)), which reads as follows:

> (e) After an initial bond redetermination, a request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.

ineffective assistance of prior counsel, who improperly "admitted" that Mr. Larin had been convicted under K.S.A. §21-3414(a)(1)(A). He sought to convince the Immigration Judge that it was unlikely that DHS would prevail in the case in chief because the conviction was void on its face, or, in the alternative, that the offense was not a crime of violence and therefore, not an aggravated felony.

The Judge stated that he tended to agree that the conviction was facially void, and opined that he would have set a bond if prior counsel had made that argument. By this, he effectively found that prior counsel **had** been ineffective. But instead of granting a *Joseph* hearing, the Judge held that even though Mr. Larin had complied with the requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988),[18] ineffective assistance of counsel was **not** a changed circumstance for purposes of 8 C.F.R. §1003.19(e). For that reason alone, he denied the request. Mr. Larin again appealed. *See*, Petitioner's Exhibit J, herein incorporated by reference.

The second request, filed July 9, 2003, urged changed circumstances in light of recent changes[19] in the law, specifically, that the Fifth Circuit had granted rehearing en banc in *Vargas-Duran*, *supra*. This re-invigorates his claim that even if the Information could be

---

[18] As required by *Lozada*, Mr. Larin wrote prior counsel, Mr. Phillips, seeking an explanation of his conduct. He advised the BIA that Mr. Phillips did not respond. A declaration under penalty of perjury was attached to his brief, stating that Mr. Larin paid a substantial fee for his representation. Also, a grievance was filed with the State Bar of Kansas, where Mr. Phillips is licensed.

[19] *See, Matter of Adeniji, supra*, where the Board found "a material change in circumstances," based on its new interpretation of the applicable law. *See also, Matter of Valles-Perez*, 21 I&N Dec. 769 (BIA 1997), where the changed circumstance was the fact that INS had abandoned one charge of deportability, and leveled another, which the Judge found not to have been sustained.

read as charging an offense under §21-3414(a)(1)(B), which he disputes, it would not be a "crime of violence" because it would have been under the clause involving bodily injury, accomplished in a manner which could have resulted in **serious** injury, rather than having used a "deadly weapon." [20] But the Immigration Judge also found this not to be a "changed circumstance." Mr. Larin again appealed. (Petitioner's Exhibit K incorporated by reference).

Because he has not yet exhausted his administrative remedies with respect to these requests, Mr. Larin is not presently arguing that ineffective assistance of counsel, or these developments in the law, constitute changed circumstances for purposes of §1003.19(e). However, he does urge that the pendency of these appeals does not destroy the Court's jurisdiction over his challenge to the initial

---

[20] The redacted Information reads, in pertinent part:

> ... MARGARET A. MCINTIRE, ... gives the court to understand and be informed that ... on or about the 22nd day of August, 1999, A.D., one JUAN * LARIN did then and there unlawfully, intentionally, in a manner whereby [he] could have [?] cause great bodily harm or disfigurement to another person, to wit, Isarael Rosas;
>
> Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 7, Person Felony.

Since there is no mention of any "deadly weapon" in the redacted Information, the conviction could not have been under that clause. *See, Kansas v. Howell,* 601 P.2d 1141, 1143 (S. Ct. Kan. 1979):

> A conviction based upon an information which does not sufficiently charge the offense for which the person is convicted is void. *State v. Daniels,* 223 Kan. 266, Syl. para. 4, 573 P.2d 607 (1977); *State v. Minor,* 197 Kan. 296.
>
> If the facts alleged in a complaint or information do not constitute an offense in the terms and meaning of the statute upon which it is based, a complaint or information is fatally defective.

denial of bond. It is a final adverse agency action under 5 U.S.C. §702 et seq. It addressed neither the motion by new counsel to submit a brief, (which, under *Molina v. Sewell, supra,* is error in and of itself), nor the arguments made therein. Mr. Larin claims herein that, at that time, the BIA erred in not remanding the case for a *Joseph* hearing, at which, as was conceded in *Demore, supra*:

> [H]e would [be] entitled to raise any nonfrivolous argument available to demonstrate that he was not properly included in a mandatory detention category. See 8 CFR § 3.19(h)(2)(ii) (2002); *In re Joseph,* 22 I. & N. Dec. 799 (1999). n3.

If this Honorable Court finds that this should have occurred, and remands for this purpose, the later bond appeals would be moot, as the remand will ensure that the Immigration Judge has jurisdiction to entertain Mr. Larin's arguments. But it is patently incorrect that the issues in the bond and removal proceedings are identical, and their similarity does not result in a failure to exhaust his administrative remedies because the BIA has not made a decision on the merits. Such a conclusion would render *Joseph* a nullity, and would be inconsistent with the rationale of *Demore v. Kim.* [21]

**III. UNDER *DEMORE v. KIM, SUPRA,* MR. LARIN IS ENTITLED TO A *JOSEPH* HEARING IF THIS COURT AGREES THAT MR. LARIN HAS MADE NON-FRIVOLOUS ARGUMENTS THAT HE IS NOT INCLUDED IN 8 U.S.C. §1226(c).**

Respondents fare no better on the merits. They claim that there is an "ambiguity" in the conviction records, (INS:6,n.3), but attempt to cure that ambiguity **without** reference to the Information. Mr. Larin cannot be convicted of an offense, unless the essential elements were charged in the Information. *Kansas v. Howell, supra.* Respondents' attempt to prove the nature of the conviction through

---

[21] Respondents consider that a habeas action challenging the denial of bond is an "interlocutory" action. (INS:4). This ignores the fact that *Demore v. Kim* itself involved a challenge to the denial of bond, and the Court specifically held therein that habeas jurisdiction existed over said challenge. 123 S.Ct. at 1713-1714.

other documents ignores the fact that, as Mr. Larin urged to the BIA, (Exhibit C), the redacted Information is so deficient that it fails to charge any offense, or, in the alternative, that the only offenses it could conceivably be read to charge would be §21-3414(a)(1)(C), which clearly is not a crime of violence. [22]

Giving an extremely liberal interpretation to the Information, as required by *Kansas v. Hall, supra,* one might add a generic missing verb to the Information, such as "act." Since said "act" must have been performed in a manner which could have caused great bodily harm, one could infer that there must have been physical contact. In such a case, the portion of the statute implicated would be the second clause of K.S.A. §21-3414(a)(1)(C). However, it is clear that §21-3414(a)(1)(C) is a not crime of violence, and Respondents do not claim otherwise. Under the portion of §21-3414(a)(1)(C) which could conceivably be extracted from the Information, [23] all that would be required was that he "intentionally caus[e] physical contact" in a manner which **could have** caused "great bodily harm."

---

[22] Even assuming, *arguendo*, that he was convicted under that portion of §21-3414(a)(1)(B) which entails causing bodily harm to another person "in any manner whereby great bodily harm, disfigurement or death can be inflicted," it would not be a crime of violence, because, as Respondents concede, it could be committed "if petitioner poisoned his neighbor or donated HIV-tainted blood." (INS:8). Respondents urge that the conviction was under the other subclause of §21-3414(a)(1)(B), involving a "deadly weapon." They rely on the fact that some of the documents indicate that a weapon was involved, but ignore the Information, which makes no mention of a weapon, but does include the language that whatever unspecified act was taken, was accomplished in a "manner whereby great bodily harm, disfigurement or death [could] be inflicted." Therefore, even under subsection (B), it would not be a crime of violence.

[23] Like subsection (B), §21-3414(a)(1)(C) is also divisible. It can be invoked either where the physical contact was done "in a rude, insulting or angry manner with a deadly weapon," or when it was done "in any manner whereby great bodily harm, disfigurement or death can be inflicted." The Information contains language which would support the latter, but not the former, subclause.

*See, State* v. *Esher,* 922 P.2d 123 (1996):

> The language of 21-3414(a)(1)(C) simply requires proof that the defendant *intentionally* caused physical contact with another person. The statute, thus, incorporates the general intent required by 21-3201. Notably, however, the statute does not identify or require a further particular intent which must accompany the prohibited acts. Esher contends that 21-3414(a)(1)(C) should be read to require an "intent to injure." This contention is without merit.

Not all "physical contact" involves the use of force. In *U.S.* v. *Rodriguez-Guzman*, 56 F.3d 18,20 n.8 (5th Cir. 1995), the Fifth Circuit defined the term "force" as used in 18 U.S.C. §16(b):

> We perforce interpret "force" to mean more than the mere asportation of some property of the victim. The clear import of defining a "crime of violence" is that "force" as used in the definition is synonymous with destructive or violent force.

As Respondents concede, (INS:8), it is not a "use of force" as used in 18 U.S.C. §16 for a medical technician to take a blood sample, or for a dentist to use a pick in cleaning someone's teeth. But under §21-3414(a)(1)(C), it could be an offense if the technician or dentist knowingly, or negligently, used "dirty" equipment. The touching was intentional, and occurred in a "manner whereby great bodily harm, disfigurement or death [could have been] inflicted." This would not constitute a "crime of violence" under *U.S.* v. *Chapa-Garza,* 243 F.3d 921 (5th Cir. 2001). Under the categorical approach, 21-3414(a)(1)(C) is therefore not an aggravated felony.

Respondents claim that there is "an utter lack of record evidence to support [the] assertion" that the conviction was under clause (C). (INS:6,n.4). As seen from *Kansas* v. *Howell, supra,* the nature of the conviction is determined by the Information. One cannot be convicted of an offense if the charging document does not allege the elements of that offense. So assuming, *arguendo*, that the

redacted Information charges any offense at all, and is not, as the Immigration Judge stated he was "inclined to agree," so deficient that it is void on its face, the only offense of which he could be convicted would be one which, under exceptionally liberal interpretation, could be extracted from the Information, to wit, an offense under 21-3414(a)(1)(C) (a level 7 offense), which is simply not a crime of violence as defined by 18 U.S.C. §16. [24]

## IV. CONCLUSION

In conclusion, Mr. Larin urges that the BIA erred in summarily affirming the Immigration Judge's denial of bond, and in not giving any consideration, much less meaningful consideration, to his arguments on appeal. Although he acknowledges that he has found no Fifth Circuit authority permitting this Court to set a bond, Respondents have likewise cited none that would preclude it. And, as previously indicated, there is authority from other circuits holding that the Court does possess such inherent authority.

Furthermore, Mr. Larin has already been unlawfully detained since January, 2002. The transcript in the underlying appeal was not prepared until April of 2003: almost a year after he filed his appeal. (Petitioner's Exhibit L, herein incorporated by reference). It may well be many more months, if not years, before the issue is finally resolved. Forcing him to remain in detention, with no possibility of bond, where it is highly unlikely that he will be found to be removable as charged is simply unconscionable.

There is absolutely no reason why this Court cannot rectify the situation by ordering Respondents to grant Mr. Larin a prompt bond hearing, at which the Immigration Judge can make the kind of

---

[24] As previously noted, the Information simply cannot support a conviction under either subclause of K.S.A. §21-3414(a)(1)(B). It mentions neither the use of a "deadly weapon," nor that any "bodily harm" actually occurred.

determination envisioned by *Joseph,* and ratified by *Demore v. Kim.* If, as the Judge already stated he was inclined to do, the Judge concludes that it is substantially unlikely that the government will ultimately prevail on the charge of removability, the Judge can then set a bond, based on considerations of whether Mr. Larin presents a danger to society, and/or a risk of absconding.

After eighteen months in detention, it is respectfully urged that he is entitled to no less.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID. 1178
Texas Bar 03052800

**CERTIFICATE OF SERVICE**

I certify that on July 21, 2003, a copy of the foregoing was mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878 Ben Franklin Sta., Washington, D.C. 20044.