UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 30 2003

Michael N. Milby
Clerk of Court

JUAN LARIN-ULLOA,                    )
                                     )
v.                                   )    C.A. B-02-107
                                     )
JOHN ASHCROFT et al.                 )    WITH RENEWED REQUEST FOR
_____)         PROMPT HEARING

PETITIONER'S SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF HIS OPPOSITION TO RESPONDENTS' "RENEWED MOTION TO DISMISS FOR FAILURE TO EXHAUST REMEDIES," AND REBUTTAL TO THEIR "ARGUMENT WITH RESPECT TO PETITIONER'S STATUS AS AN AGGRAVATED FELON."

TABLE OF CONTENTS

I. THE BIA'S DISMISSAL OF THE APPEAL FROM HIS FIRST REQUEST FOR A *JOSEPH* BOND HEARING, BASED ON CHANGED CIRCUMSTANCES, RENDERS THAT REQUEST RIPE FOR REVIEW .................................. 1

II. UNDER KANSAS LAW, THE INSTANT CONVICTION IS VOID........ 4

III. IN THE ALTERNATIVE IT IS CLEAR THAT MR. LARIN WAS NOT CONVICTED UNDER KANSAS STATUTES ANNOTATED 21-3414(a)(1)(A), AND THE REDACTED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO DETERMINE THAT HE WAS CONVICTED UNDER ANY STATUTE CONSTITUTING A CRIME OF VIOLENCE........................................ 10

IV. CONCLUSION............................................ 14

TABLE OF AUTHORITIES
CASES

*Demore v. Kim*,
    123 S. Ct. 1708 (2003) . . . . . . . . . . . . . . . . 1, 15

*Dong Sik Kwon v. INS*,
    646 F.2d 909 (5th Cir.1981) (en banc) . . . . . . . . . . 3

*Ghassan v. INS*,
    972 F.2d 631 (5th Cir. 1992) . . . . . . . . . . . . . . 3

*Kansas v. Bird*,
    708 P.2d 946 (1985) . . . . . . . . . . . . . . . . . . . 8

*Kansas v. Cook*,
    193 Kan. 541 (S.Ct. Kansas 1964) . . . . . . . . . . . . . 8

*Kansas v. Daniels*,
    573 P.2d 607 (1977) . . . . . . . . . . . . . . . . . . . 6

*Kansas v. Esher*,
    922 P.2d 1123 (1996) . . . . . . . . . . . . . . . 11, 12

*Kansas v. Hall*,
    793 P.2d 737 (S.Ct.Kans 1990) . . . . . . . . . . . . . . 5

*Kansas v. Howell*,
    601 P.2d 1141 (S. Ct. Kan. 1979) . . . . . . . . . . . . . 6

*Kansas v. Long*,
    58 P.3d 706 (S.Ct. Kansas 2002) . . . . . . . . . . . . . 6

*Kansas v. Marshall*,
    577 P.2d 803 (Kansas App. 1978) . . . . . . . . . . . . . 7

*Kansas v. Schultz*,
    252 Kan. 819 (S.Ct. Kansas 1993) . . . . . . . . . . . . . 8

*Kansas v. Smith*,
    993 P.2d 1213 (1999) . . . . . . . . . . . . . . . . . . . 7

*Newton v. Apfel*,
    209 F.3d 448 (5th Cir. 2002) . . . . . . . . . . . . . . 3

*State v. Minor*,
    416 P.2d 724 (1966) . . . . . . . . . . . . . . . . . . . 6

*U.S. v. Chapa-Garza*,
    243 F.3d 921 (5th Cir. 2001) . . . . . . . . . . . . 13, 14

*U.S. v. Gracia-Cantu*,
    302 F.3d 308 (5th Cir. 2002) . . . . . . . . . . . . 13, 14

*U.S. v. Rodriguez-Guzman*,
    56 F.3d 18 (5th Cir. 1995) . . . . . . . . . . . . . . 12, 13

*Wolfe v. North Carolina,*
    364 U.S. 177 (1960) . . . . . . . . . . . . . . . . . . . . 8

## STATUTES

18 U.S.C. §16 . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §16(a) . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. §16(b) . . . . . . . . . . . . . . . . . . . . . 12

8 U.S.C. §1226(c) . . . . . . . . . . . . . . . . . . . . . 1

Kansas Statutes Annotated ("K.S.A.")

    K.S.A. §21-3414 . . . . . . . . . . . . . . . . . . . . 4, 5

K.S.A. §21-3414(a)(1)(A) . . . . . . . . . . . . . . . 2, 5, 10

K.S.A. §21-3414(a)(1)(B) . . . . . . . . . . . . . . . . 5, 11

K.S.A. §21-3414(a)(1)(C) . . . . . . . . . . . . . 5, 10, 11, 14

K.S.A. §22-3208(4) . . . . . . . . . . . . . . . . . . . 7, 8

## ADMINISTRATIVE DECISIONS

*Matter of Adeniji,*
    22 I&N Dec. 1102 (BIA 1999) . . . . . . . . . . . . . . . 1

*Matter of Joseph,*
    22 I&N Dec 799 (BIA 1999) . . . . . . . . . . . . . 1, 2, 15

*Matter of Lozada,*
    19 I&N Dec. 637 (BIA 1988) . . . . . . . . . . . . . . . 2

*Matter of Rodriguez-Carrillo,*
    22 I& N Dec. 1031 (BIA 1999) . . . . . . . . . . . . . . 3

## REGULATIONS

8 C.F.R. §1003.19(e) . . . . . . . . . . . . . . . . . . 1-3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JUAN LARIN-ULLOA, | ) |
| | ) |
| v. | ) C.A. B-02-107 |
| | ) |
| JOHN ASHCROFT et al. | ) WITH RENEWED REQUEST FOR |
| | ) PROMPT HEARING |

**PETITIONER'S SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF HIS OPPOSITION TO RESPONDENTS' "RENEWED MOTION TO DISMISS FOR FAILURE TO EXHAUST REMEDIES," AND REBUTTAL TO THEIR "ARGUMENT WITH RESPECT TO PETITIONER'S STATUS AS AN AGGRAVATED FELON."**

Juan Larin-Ulloa, ("Mr. Larin"), files the instant supplemental points and authorities in support of his opposition to Respondents' "Renewed Motion To Dismiss For Failure To Exhaust Remedies" and rebuttal to their "Argument with Respect to Petitioner's Status as an Aggravated Felon," cited herein as (INS:_), and request for a prompt a bond hearing, pursuant to *Matter of Joseph*, 22 I&N Dec 799 (BIA 1999) (alien is entitled to bond if the Immigration Judge or the BIA finds "on the basis of the bond record as a whole, that it is substantially unlikely" that the government will prevail on a charge of removability specified in 8 U.S.C. §1226(c)), cited with approval in *Demore v. Kim*, 123 S. Ct. 1708, 1713 (2003).

### I. THE BIA'S DISMISSAL OF MR. LARIN'S APPEAL FROM HIS FIRST REQUEST FOR A *JOSEPH* BOND HEARING BASED ON CHANGED CIRCUMSTANCES, RENDERS THAT REQUEST RIPE FOR REVIEW.

In his initial opposition, filed July 21, 2003 [Dkt.35], Mr. Larin noted that after he received the transcript of the removal proceedings, he filed two motions asserting changed circumstances, and requesting a second bond hearing. [1] The first was based on

---

[1] *See, Matter of Adeniji,* 22 I&N Dec. 1102 (BIA 1999), codified at 8 C.F.R. §3.19(e) (now, §1003.19(e)), which reads as follows:

> (e) After an initial bond redetermination, a request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination.

the ineffective assistance of prior counsel, who improperly "admitted" that Mr. Larin had been convicted under K.S.A. §21-3414(a)(1)(A),. He sought to convince the Immigration Judge that it was unlikely that DHS would prevail in the case in chief because the conviction was void on its face, or, in the alternative, that the offense was not a crime of violence and therefore, not an aggravated felony. The Judge stated that he tended to agree that the conviction was facially void, and opined that he would have set a bond if prior counsel had made that argument. By this, he effectively found that prior counsel **had** been ineffective. But instead of granting a *Joseph* hearing, the Judge held that even though Mr. Larin had complied with *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), ineffective assistance of counsel was **not** a changed circumstance for purposes of 8 C.F.R. §1003.19(e), and denied the request. Mr. Larin again appealed. (Exhibit J).

On July 23, 2003, the BIA dismissed that appeal. (Petitioner's Exhibit M, incorporated by reference). Without discussing whether ineffective assistance of counsel is a changed circumstance for purposes of 8 C.F.R. §1003.19(e), the BIA affirmed the denial, on a different basis. Specifically, the BIA concluded as follows:

> In light of the fact that the respondent has not asserted that he has sought relief in the criminal proceedings, [2] his assertions that his conviction is not valid or is not the conviction alleged is insufficient to show that the Department of Homeland Security ... is substantially unlikely to establish that the respondent has been convicted of an aggravated felony.

Mr. Larin has thus exhausted his administrative remedies with respect to his first request for a *Joseph* hearing, which is ripe for review by this Honorable Court.

---

[2] Actually, Mr. Larin has initiated such proceedings. Given his incarceration, and other factors, it was difficult for him to find someone to press this claim in Kansas.

2

Significantly, the BIA did not mention the arguments presented in Mr. Larin's appeal to the BIA, [3] showing that he can collaterally attack a conviction where, as here, the conviction documents show, on their face, that he has not been convicted of the offense alleged. Nor, even more to the point, did the BIA attempt to determine whether said documents are, as he alleges, void on their face. This alone constitutes a denial of Due Process. Although the BIA need not "write an exegesis on every contention.... its opinion must reflect that it has heard and thought and not merely reacted." *Opie v. INS*, 66 F.3d 737, 740, (5th Cir. 1995), quoting *Ghassan v. INS*, 972 F.2d 631,636 (5th Cir. 1992). Here, it is clear that the BIA gave no thought whatsoever to Mr. Larin's claims.

This Court can only sustain the BIA's action on the basis invoked. *Newton v. Apfel*, 209 F.3d 448,455 (5th Cir. 2002), citing *Dong Sik Kwon v. INS*, 646 F.2d 909, 916 (5th Cir.1981) (en banc) (agency decision must be sustained, if at all, on the basis of the reasons given by the agency). Therefore, the dismissal of Mr. Larin's second bond appeal could be sustained only if it were the law that he was required to "assert[] that he ha[d] sought relief in the criminal proceedings" before collaterally attacking the conviction. This is not the current state of law. As held in *Matter of Rodriguez-Carrillo*, 22 I& N Dec. 1031 (BIA 1999) (emphasis added):

> [I]t is clear that an Immigration Judge and the Board cannot entertain a collateral attack on a judgment of conviction, **unless that judgment is void on its face**, and cannot go behind the judicial record to determine the guilt or innocence of an alien. See Matter of Madrigal, Interim Decision 3274 (BIA 1996).

Mr. Larin urged to the BIA, and presses his claim as well before this Court, that the case at bar is one of those rare instances

---

[3] *See,* Petitioner's Exhibit J, Document 4 (Appeal from denial of bond, and brief in support thereof), at page 6, *et seq.*

3

where that test is met. The Information is fatally defective. It fails to charge *anything*, much less an offense under KSA 21-3414.

Under Kansas law, this is a jurisdictional defect, and any conviction obtained thereunder is void. And, as he also argued to the BIA, under Kansas law, the purported conviction is void on its face. It thus cannot support a charge of removability, regardless of whether Mr. Larin had previously challenged it in Kansas.

## II. UNDER KANSAS LAW, THE INSTANT CONVICTION IS VOID.

The redacted Complaint/Information, reads in its entirety:

> **COMES NOW** MARGARET A. MCINTIRE, a duly appointed, qualified and acting Assistant District Attorney of the 18th Judicial District of the State of Kansas, and for and on behalf of said State gives the court to understand and be informed that in the County of Sedgwick, and State of Kansas, and on or about the 22nd day of August, 1999, A.D., one JUAN * LARIN did then and there unlawfully, intentionally, in a manner whereby [he] could have [?] cause great bodily harm or disfigurement to another person, to wit, Isarael Rosas;
>
> Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A), Aggravated Battery, Severity Level 7, Person Felony.

The large blank space in the Complaint should have contained a statement of what Mr. did then and there DO. It does not.

K.S.A. §21-3414 provides, in totality, as follows:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) (A) Intentionally causing great bodily harm to another person or disfigurement of another person; or
> (B) intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or
> (C) intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted; or

> (2) (A) recklessly causing great bodily harm to another person or disfigurement of another person; or
> (B) recklessly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.
> (b) Aggravated battery as described in subsection (a)(1)(A) is a severity level 4, person felony. Aggravated battery as described in subsections (a)(1)(B) and (a)(1)(C) is a severity level 7, person felony. Aggravated battery as described in subsection (a)(2)(A) is a severity level 5, person felony. Aggravated battery as described in subsection (a)(2)(B) is a severity level 8, person felony. A person convicted of aggravated battery shall be subject to the provisions of subsection (h) of K.S.A. 21-4704 and amendments thereto.

Even though the statutory section of the printed form was not amended, when the Information is viewed in the context of K.S.A. §21-3414, it is clear that it initially charged a violation of §21-3414(a)(1)(A), intentionally causing great bodily harm, (a level 4 offense), and was amended by interlineation, in an attempt to charge a level 7 offense. However, the language of the Information, as amended, is a grammatical non sequitur. It has no verb, and does not say **what** it was that the Respondent did, "in a manner which could have... cause[d] greatly bodily harm or disfigurement" to Mr. Rosas. It is therefore fatally defective.

As amended, the Information not only fails to charge an offense under §21-3414(a)(1)(A), it fails to charge **anything.** It does not charge an offense under the first clause of §21-3414(a)(1)(B), because it neither states that he caused bodily harm, nor that he did so with a deadly weapon. Likewise, it does not charge an offense under the second clause of §21-3414(a)(1)(B), because it does not allege that he actually caused bodily harm. Similarly, it fails under both subclauses of §21-3414(a)(1)(C), because it does not allege that there was physical contact. No degree of liberal construction can save it. As held in *Kansas v. Hall*, 793 P.2d 737, 764 (S.Ct.Kans 1990) (emphasis added):

> Tardily challenged informations are to be construed liberally in favor of validity. The validity of an information is to be tested by reading the information as a whole. The elements of the offense may be gleaned from the information as a whole. **An information not challenged before verdict or finding of guilty or pursuant to K.S.A. 22-3502 by a motion for arrest of judgment will be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.** *United States v. Watkins*, 709 F.2d at 478.

Even more to the point is *Kansas v. Howell*, 601 P.2d 1141, 1143 (S. Ct. Kan. 1979) (emphasis added):

> In a felony action, the indictment or information is the jurisdictional instrument upon which the accused stands trial. *State v. Minor*, 197 Kan. 296, Syl. para. 5, 416 P.2d 724 (1966).
>
> **A conviction based upon an information which does not sufficiently charge the offense for which the person is convicted is void.** *State v. Daniels*, 223 Kan. 266, Syl. para. 4, 573 P.2d 607 (1977); *State v. Minor*, 197 Kan. 296.
>
> If the facts alleged in a complaint or information do not constitute an offense in the terms and meaning of the statute upon which it is based, a complaint or information is fatally defective.

The most recent restatement by the Supreme Court of Kansas was apparently in *Kansas v. Long*, 58 P.3d 706 (S.Ct. Kansas 2002). In that case, among several traffic citations, the defendant was charged with having no liability insurance in violation of Kan. Stat. Ann. §40-3104 while driving a car he did not own. With the understanding that he was charged with violating subsection (d) of that statute, the trial court dismissed the charge. The State appealed. In dismissing the State's appeal, the Supreme Court of Kansas explained, 58 P.3d at 710 (emphasis added):

6

>Instead of designating the specific subsection under K.S.A. 40-3104 that Long was charged with, the officer cited only the statute 40-3104. The failure to designate the specific subsection helped create some of the confusion that later developed when the citation was filed with the court. This case illustrates the necessity of specifying in the citation the exact subsection the defendant is charged with violating.
>
>**"The sufficiency of the charging document is measured by whether it contains the elements of the offense intended to be charged, sufficiently apprizes the defendant of what he or she must be prepared to meet, and is specific enough to make a subsequent plea of double jeopardy possible.** The charging document is sufficient if it substantially follows the language of the statute or charges the offense in equivalent words or words of the same import." *State v. Smith*, 268 Kan. 222, 226-27, 993 P.2d 1213 (1999).
>
>**While the officer referred to the statute without citing the specific subsection, he described the charge as having no liability insurance. Thus, the charging document was sufficient to charge Long, who was not the owner of the vehicle, with a violation of K.S.A. 40-3104(c).** The facts surrounding the issuance of the citation support this conclusion, for Long handed the officer a document indicating that the insurance on the vehicle had expired 3 weeks before. K.S.A. 40-3104(d), involving the failure to display, was not charged in this case.
>
>The questions reserved by the prosecution in this appeal assume that Long was charged under the provisions of K.S.A. 40-3104(d), when in fact he was charged with a violation of K.S.A. 40-3104(c). Both questions reserved require answers involving a charge not involved in this case....
>
>... We therefore decline to answer the questions reserved and dismiss the appeal.

The failure to state an offense is jurisdictional, and cannot be waived. *See, Kansas v. Marshall,* 2 Kan. App. 2d 182, 194; 577 P.2d 803 (Kansas App. 1978), citing K.S.A. §22-3208(4) (emphasis added):

7

> K.S.A. 22-3208(4) provides that "[a] plea of guilty or a consent to trial upon a complaint, information or indictment shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint, information or indictment **other than it fails to show jurisdiction in the court or to charge a crime**." If defendants had any meritorious objections to personal jurisdiction, they were waived by the entry of plea, posting of bond and submission to the jurisdiction of the trial court without assertion of such objections until after trial.

To the contrary, a conviction obtained under a fatally defective information is void: not *voidable*, but *void*. *Kansas v. Schultz*, 252 Kan. 819, 835-836 (S.Ct. Kansas 1993) (emphasis added):

> In State v. Bird, 238 Kan. 160, 166, 708 P.2d 946 (1985), this court reviewed the principles governing sufficiency of the charge:
>
> "In a felony action, the **indictment or information is the jurisdictional instrument** upon which the accused stands trial. [Citation omitted.] **A conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is void.** Failure of an information to sufficiently state an offense is a fundamental defect which can be raised at any time, even on appeal. [Citations omitted.] **Sufficiency of the indictment or information is to be measured by whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and by whether it is specific enough to make a plea of double jeopardy possible.** [Citation omitted.]"

Finally, the sufficiency of a Complaint/Information is judged from the "four corners" of the document, without resort to extrinsic evidence. *Kansas v. Cook*, 193 Kan. 541, 543 (S.Ct. Kansas 1964):

> Extraneous evidence cannot be resorted to for the purpose of establishing the insufficiency of an information. (42 C. J. S., p. 1212.) In *Wolfe v. North Carolina*, 364 U.S. 177, 4 L. Ed. 2d 1650, 80 S. Ct. 1482, the Supreme Court

8

> of the United States recognized the rights of the state, in ruling on a motion to quash, to follow its established rule that matters of defense are not grounds for quashing an information and that a trial court, in ruling on a motion to quash, cannot consider extraneous evidence nor rest on matters dehors the record proper; therefore, when the defect must be established by evidence aliunde the record, the motion must be denied.

As applied to the case at bar, the following points emerge:

1) The Information is a jurisdictional document, and if it is insufficient on its face, any conviction obtained thereunder is void. Because a valid charging document is a jurisdictional requirement, such fundamental flaws cannot be waived by a guilty plea, or by the failure to mount a timely challenge.

2) The fact that an Information cites an incorrect subsection would not be fatal, if the facts as alleged actually stated an offense.

3) Since no timely challenge was raised, in deciding whether the Information herein was sufficient to vest the Court with jurisdiction, it will be construed liberally, within the four corners of the document, and will be found deficient only if it is "so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted."

An Information which is grammatically incoherent, and does not even contain a verb, stating what the defendant **did**, is "so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." Since it does not charge an offense, under Kansas law, it is void. Not *voidable*, but **void**. Moreover, it is void *on its face*, as it is impermissible to examine anything other than the Information itself to determine its sufficiency. The failure of the BIA to address this claim constitutes a virtual admission of its validity.

### III. IN THE ALTERNATIVE IT IS CLEAR THAT MR. LARIN WAS NOT CONVICTED UNDER KANSAS STATUTES ANNOTATED §21-3414(a)(1)(A), AND THE REDACTED COMPLAINT DOES NOT ALLEGE SUFFICIENT FACTS TO DETERMINE THAT HE WAS CONVICTED UNDER ANY STATUTE CONSTITUTING A CRIME OF VIOLENCE.

Mr. Larin further urged to the BIA that, in the alternative, and assuming, *arguendo*, that an exceptionally "liberal" reading of the redacted Information can be construed as charging some offense, it does not charge a crime of violence. Starting from the premise that the Court would only have had jurisdiction over an offense whose elements were stated in the Information, one cannot go beyond that document to determine that he was convicted of an offense which, under no stretch of the imagination, could flow therefrom.

The pertinent portion of the Information charges that Mr. Larin:

> did then and there unlawfully, intentionally, in a manner whereby [he] could have [?] cause great bodily harm or disfigurement to another person, to wit, Isarael Rosas...

Assuming, *arguendo*, that one could supply a generic missing verb, *e.g.*, "act," since said "act" must have been performed in a manner which could have caused great bodily harm, one could, *arguendo*, infer that there must have been some physical contact. In such a case, the only portion of the statute which could conceivable be implicated would be the second clause of §21-3414(a)(1)(C), to wit:

> 21-3414. Aggravated battery.
> (a) Aggravated battery is:
> (1) ...
> (C) intentionally causing physical contact with another person when done ... in any manner whereby great bodily harm, disfigurement or death can be inflicted ...

Note that this is subtly, but crucially distinct, from an analysis involving a "divisible statute," whereby it is permissible to go beyond the four corners of the document to determine under which subsection he was convicted. Rather, it is a question of making the absolutely most liberal reading possible of the charging

document itself, to determine what offense it could conceivably charge. Particularly since the phrase regarding the potential for causing great bodily harm, or disfigurement is handwritten into the document, it would have to be a subclause involving that phrase. However, one could not plausibly extract an offense under §21-3414(a)(1)(B). That would entail the addition of an entire phrase, to wit, "causing bodily harm." The phrase "cause great bodily harm" follows the redaction, "in a manner whereby [the defendant] could have []." To charge an offense under subsection (B), the Information would have to allege that he caused bodily harm. That phrase is not present, and no allegation that bodily harm occurred can be inferred from anything else in the redacted Information.

Further, even assuming, *arguendo*, that the redacted Information, if read with extreme liberality, levels a valid charge under K.S.A. §21-3414(a)(1)(C), Mr. Larin submits that it would not constitute a crime of violence within the meaning of 18 U.S.C. §16. Under Kansas law, all that is required to constitute an offense under §21-3414(a)(1)(C) is that one "intentionally caus[e] physical contact" in a manner which could have caused great harm. However, the statute does not require (and the Information does not allege), that such harm ever materialized. Therefore, the offense does not require that force have been used, as would be necessary for it to constitute a crime of violence under 18 U.S.C. §16(a).

Nor is it required that the intentional physical contact have been performed with the **knowledge** that it might cause such harm, or even that he was reckless with respect to the fact that such harm might occur, let alone with the **intention** to cause this harm. *See, Kansas v. Esher,* 922 P.2d 1123 (1996):

> The language of 21-3414(a)(1)(C) simply requires proof that the defendant *intentionally* caused physical contact with another person. The statute, thus, incorporates the general intent required by 21-3201. Notably, however, the

11

>statute does not identify or require a further particular intent which must accompany the prohibited acts. Esher contends that 21-3414(a)(1)(C) should be read to require an "intent to injure." This contention is without merit. Although the pre-1993 version of the aggravated battery statute required proof of "the unlawful touching or application of force to the person of another *with intent to injure* that person or another," K.S.A. 21-3414 (Ensley 1988), the legislature deleted the "intent to injure" language when it adopted the current version of the statute. "When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the Page 785 amendment." *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990). Moreover, when a statute is plain and unambiguous, an appellate court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be.

Kansas v. Esher is also significant for its discussion of the prior history of the statute, which demonstrates that the Kansas legislature distinguished between unlawful touching, (contact), and the use of force. *Id.* at 1127 (emphasis added):

>Contrary to Esher's contention that the current version of 21-3414(a)(1)(C) should be construed like the pre-1993 aggravated battery statute, the reference to "intentionally causing physical contact" in the current statute more closely parallels the language of the pre-1993 battery statute, K.S.A. 21-3412 (Ensley 1988). Battery under that statute was the "unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." The Supreme Court has concluded that battery under the pre-1993 statute does not require proof of the specific intent to injure. See *State v. Seely*, 212 Kan. 195, 203, 510 P.2d 115 (1973).

The Fifth Circuit has also held that not all "physical contact" involves the use of force. In *U.S. v. Rodriguez-Guzman*, 56 F.3d 18, 20 n.8 (5th Cir. 1995), the Fifth Circuit defined the term "force" as used in 18 U.S.C. §16(b):

> We perforce interpret "force" to mean more than the mere asportation of some property of the victim. The clear import of defining a "crime of violence" is that "force" as used in the definition is synonymous with destructive or violent force.

Therefore, it is not a "use of force" as used in 18 U.S.C. §16 for a medical technician to take a blood sample, for a dentist to use a pick in cleaning someone's teeth, or to kiss or make love to a willing partner. But under the Kansas statute, it could be an offense if the technician or dentist re-used "dirty" equipment, which was contaminated with HIV virus.

In such cases, even if the accused did not know that the equipment was tainted with HIV positive blood, an offense would have been committed. The touching was intentional, and it occurred in a "manner whereby great bodily harm, disfigurement or death [could] be inflicted." Similarly, consensual sexual relations, where one partner is infected with HIV, would constitute such an offense, even if the infected partner took precautionary measures. The contact was intentional, and since such devices sometimes fail, "great bodily harm, disfigurement or death" could have resulted.

Such scenarios would not constitute crimes of violence under *U.S. v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001) ("substantial risk that physical force... may be used" contemplates only reckless disregard for the probability that *intentional* force may be employed). In the above hypotheticals, there might be "reckless disregard" for the possibility of injury, but not that "intentional force" would be employed. Similarly, they would fail the "results-oriented" test of *U.S. v. Gracia-Cantu*, 302 F.3d 308,312-13 (5th Cir. 2002):

> Utilizing the categorical approach endorsed by this court in *Chapa-Garza* and other cases, we focus only on the offense of injury to a child as defined under Texas law and not on the particular facts of Gracia-Cantu's conviction. Section 22.04(a) criminalizes acts or omissions that intentionally, knowingly, recklessly, or

>negligently result in injury to a child. *See* Tex. Penal Code Ann. § 22.04(a). Thus, as noted above, the culpable mental state relates to the result of a defendant's conduct rather than to the conduct itself. *See Patterson*, 46 S.W.3d at 301.
>
>Because the offense of injury to a child is results-oriented, many convictions for this offense involve an omission rather than an intentional use of force. *See Chapa-Garza*, 243 F.3d at 926 (noting that "a parent who leaves a young child unattended near a pool may risk serious injury to the child, but the action does not involve an intent to use force or otherwise harm the child") (internal citation and quotation omitted).

Under the categorical approach, §21-3414(a)(1)(C) is therefore not an aggravated felony, and from the face of the Information, even if construed so liberally that an offense under that section can be inferred, Mr. Larin has not been convicted of an aggravated felony.

Therefore, Mr. Larin's appeal from the Judge's conclusion that he lacks jurisdiction over his request for a second bond hearing should have been sustained, and the case remanded for a hearing on whether he constitutes a flight risk, or danger to the community. Ultimately, Mr. Larin urges that his claim will be sustained, and that removal proceedings will be terminated. Holding him without bond, for years, while he presses that claim is unconscionable.

### IV. CONCLUSION

In conclusion, Mr. Larin urges that the BIA erred in dismissing his second appeal from the Immigration Judge's denial of bond, and in not giving any consideration, much less meaningful consideration, to his arguments on appeal. Although he acknowledges that he has found no Fifth Circuit authority permitting this Court to set a bond, Respondents have likewise cited none that would preclude it. And, as previously shown, there is authority from other circuits holding that the Court does possess such inherent authority.

Furthermore, Mr. Larin has already been unlawfully detained since

January, 2002. The transcript in the underlying appeal was only prepared in April, 2003: almost a year after he filed his appeal. (Exhibit L). It may well be many more months, if not years, before the issue is finally resolved. Forcing him to remain in detention, with no possibility of bond, where it is highly unlikely that he will be found to be removable as charged is simply unconscionable.

There is absolutely no reason why this Court cannot rectify the situation by ordering Respondents to grant Mr. Larin a prompt bond hearing, at which the Immigration Judge can make the kind of determination envisioned by *Joseph,* and ratified by *Demore v. Kim.* If, as the Judge already stated he was inclined to do, the Judge concludes that it is substantially unlikely that the government will ultimately prevail on the charge of removability, the Judge can then set a bond, based on considerations of whether Mr. Larin presents a danger to society, and/or a risk of absconding.

After eighteen months in detention, it is respectfully urged that he is entitled to no less.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID. 1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I certify that on July 29, 2003, a copy of the foregoing was mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878 Ben Franklin Sta., Washington, D.C. 20044.