54

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 0 8 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUAN LARIN-ULLOA, | ) | |
|    Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. B-02-107 |
| | ) | |
| JOHN ASHCROFT, et al. | ) | |

EXHIBIT "R" IN SUPPORT OF
PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, through counsel, respectfully submits the following:

1) A copy of the decision of the Board of Immigration Appeals, dated January 2, 2004, denying his motion to reopen.

2) A copy of Mr. Larin's Motion to Reconsider said denial.

3) A copy of a letter dated February 27, 2004, from the Fifth Circuit, advising counsel that the appeals will now move forward.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)

Fed. ID.  1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I certify that on March 8, 2004, a copy of the foregoing with attachments was mailed first-class postage prepaid to Paul Fiorino, Attorney, OIL, Box 878, Ben Franklin Sta., Washington, D.C. 20044.

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Brodyaga, Lisa S., Esquire
17891 Landrum Park Road,
San Benito, TX 78586-0000

Office of the District Counsel/PI
P.O. Box 1711
Harlingen, TX 78551

Name: LARIN-ULLOA, JUAN                          A92-800-131

Date of this notice: 01/02/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
    HESS, FRED

**U.S. Department of Justice**                           Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:  A92 800 131 - Los Fresnos                    Date:

In re:  JUAN LARIN-ULLOA                                 JAN 0 2 2004

IN REMOVAL PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:   Lisa S. Brodyaga, Esquire

ON BEHALF OF DHS:        Sean D. Clancy
                         Assistant District Counsel

APPLICATION:  Reopening


This case was last before the Board on August 20, 2003, when we dismissed the respondent's appeal. The respondent has now filed a motion to reopen. The motion will be denied.

The respondent's motion asserts that his case should be reopened and proceedings terminated. Specifically, the respondent argues that he has complied with the requirements to establish ineffective assistance of counsel set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), and, thus, his previous pleading admitting his conviction for aggravated battery is essentially not binding on the respondent. Secondly, the respondent asserts that he is not removable pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), because the Eighteenth Judicial District, District Court, of Sedgwick County, Kansas has amended his judgment *nunc pro tunc* to reflect a conviction under Kansas Statutes Annotated (K.S.A.) section 21-3414(a)(1)(C) rather than his original conviction under K.S.A. section 21-3414(a)(1)(A).

A motion to reopen based upon a claim of ineffective assistance of counsel requires: (1) that the motion be supported by an affidavit of the allegedly aggrieved respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representation counsel did or did not make to the respondent in this regard; (2) that counsel whose integrity or competence is being impugned be informed of the allegations leveled against him and given an opportunity to respond; and, (3) that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not. *See Matter of Assaad*, 23 I&N Dec. 553, 556 (BIA 2003); *cf. Matter of Lozada, supra, see also Lara v. Trominski*, 216 F.3d 487 (5th Cir. 2000). Furthermore, the respondent must show that he was prejudiced by his representative's performance. *See Matter of Assaad, supra.*

A92 800 131

In this case, the respondent failed to comply with the requirements set forth in *Matter of Lozada, supra*. While the respondent submitted an affidavit, the affidavit fails to set forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representation counsel did or did not make to the respondent. The affidavit merely asserts that the respondent had limited English language abilities and that he lacked knowledge of K.S.A. section 21-3414. As such, the affidavit does not comply with the requirements of the first prong of the *Lozada* requirements.

The respondent also claims that he complied with the second prong of the *Lozada* requirements and notified prior counsel of the allegations leveled against him and gave him an opportunity to respond. However, the record does not support this assertion. The respondent's letter to prior counsel was drafted on May 20, 2003. It was mailed to the Board on May 22, 2003, and received at the Board on May 27, 2003. As such, prior counsel was not afforded an opportunity to respond to the allegations before the Board was provided a copy of the letter. Furthermore, the respondent's allegation that counsel admitted that the respondent had been convicted under K.S.A. section 21-3414(a)(1)(A) was erroneous is without merit. At the time of respondent's immigration hearing, the respondent had been convicted under K.S.A. section 21-3414(a)(1)(A) as reflected in the certified judgment (Exh. 2). The respondent had not appealed the judgment and, thus, it was a conviction for immigration purposes. Moreover, the respondent cannot collaterally attack his conviction in immigration proceedings. *See Zinnanti v. INS*, 651 F.2d 420 (5th Cir. 1981) (immigration authorities have no power to adjudicate the validity of state convictions underlying deportation proceedings). Thus, the respondent's letter to prior counsel fails to satisfy the requirements of the second prong of the *Lozada* requirements.

Additionally, the respondent has not demonstrated that he was prejudiced by his prior counsel's admission of the conviction. The conviction was independently established when the Department of Homeland Security ("the DHS," formerly the Immigration and Naturalization Service) offered into the record a certified copy of the judgment (Exh. 2). The respondent did not appeal the conviction. In addition, a state conviction may not be collaterally attacked in immigration proceedings. *See Zinnanti, supra*. Thus, counsel for the respondent did not prejudice the respondent by admitting to the state conviction. Consequently, the respondent has failed to comply with the requirements of *Lozada*. *See Matter of Assaad, supra*. Accordingly, the respondent's claim of ineffective assistance of counsel fails as a basis for reopening proceedings.

The respondent also asserts that the motion should be granted because the respondent's prior conviction has been amended *nunc pro tunc* and his conviction under K.S.A. section 21-3414(a)(1)(C) is not an aggravated felony as defined under section 101(a)(43(F) of the Act, 8 U.S.C. § 1101(a)(43)(F). The respondent's argument is without merit.

While the respondent has submitted a copy of the amended judgment *nunc pro tunc*, the amended conviction constitutes a crime of violence under section 101(a)(43)(F) of the Act, and thus, an aggravated felony. An aggravated felony is defined in section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F), as a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment is at least 1 year. Section 16 of Title 18 of the United States Code defines "crime of violence" to mean (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person

2

A92 800 131

or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The judgment *nunc pro tunc* reflects that the respondent was convicted of aggravated battery under K.S.A. section 21-3414(a)(1)(C). Specifically, K.S.A. section 21-3414(a)(1)(C) provides that aggravated battery is "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Furthermore, aggravated battery as described in K.S.A. section 21-3414(a)(1)(C) is a felony. *See* K.S.A. § 21-3414(b). While the respondent argues that the respondent's conviction falls under the latter part of K.S.A. section 21-3414(a)(1)(C), "or in any manner whereby great bodily harm, disfigurement or death can be inflicted," the judgment *nunc pro tunc* clearly reflects that the respondent committed the aggravated battery with a firearm. *See Matter of Sweetser*, 22 I&N Dec. 709 (BIA 1999) (court may look to conviction records when statute is divisible). Thus, the respondent's conviction falls under the part of the statute stating that "intentionally causing physical contact with another when done in a rude, insulting or angry manner with a deadly weapon." Use of a deadly weapon while intentionally causing physical contact clearly involves a substantial risk that physical force against another person may be used. Consequently, the respondent's conviction for aggravated battery is a crime of violence as defined under 18 U.S.C. §16(b). Furthermore, the respondent was sentenced to a term of imprisonment of at least 1 year as reflected in the judgment *nunc pro tunc*. Therefore, the respondent's conviction constitutes an aggravated felony as defined under section 101(a)(43)(F) of the Act and he is removable pursuant to section 237(a)(2)(A)(iii) of the Act.

ORDER:   The respondent's motion to reopen is denied.

FOR THE BOARD

3

**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**BEFORE THE BOARD OF IMMIGRATION APPEALS**

In re
**JUAN LARIN-ULLOA**
**A92 800 131**

**RESPONDENT'S MOTION TO RECONSIDER AND TERMINATE PROCEEDINGS**

Respondent, through the undersigned, files the instant motion to reconsider, and to terminate proceedings.   He continues to urge that in accordance with the Order Nunc Pro Tunc filed November 14, 2003, specifying that his conviction was under K.S.A. §21-3414(a)(1)(C), he is not removable as charged.   The criminal Information demonstrates that he was charged with violating the subsection of that statute which prohibits physical contact when done in a manner "whereby great bodily harm, disfigurement or death can be inflicted," not that committed in a "rude, insulting or angry manner with a deadly weapon," as opined the denial of his motion to reopen.   Under Kansas law, he can only be convicted of the offense of which he was charged.  [1]   Although prior counsel "admitted" that the conviction was under K.S.A. §21-3414(a)(1)(A), the face of the record shows that this was not the case.   Mr. Larin asserted ineffective assistance of counsel to ensure that he would not be bound by this "admission;" not as an independent claim, as indicated by the decision denying his motion to reopen.

**I.  BACKGROUND**

By decision dated August 20, 2003, the Board rejected Mr. Larin's initial claim that the prior Judgment was void on its face.   In said Decision, the BIA read the information as charging that he had committed an "aggravated battery" in a manner whereby great bodily harm could have been inflicted.   The Board did not, however, address Mr. Larin's argument that in order for the "aggravated

---

[1]    The petition for review of the BIA's decision of August 20, 2003, is still pending the Fifth Circuit, No. 03-60721.  Mr. Larin also filed for review of the January 2, 2004, denial of his motion to reopen, but does not yet have a case number.

battery" to have been under §21-3414(a)(1)(B), the Information would also have had to allege that Mr. Larin had "caus[ed] bodily harm" to the victim, and that it included no such allegation. Absent such an allegation in the Information, Mr. Larin asserted, the conviction could not be under §21-3414(a)(1)(B). This is the primary argument he intends to raise in his petition for review of the August 20, 2003 decision, pending before the Fifth Circuit.

Mr. Larin also mounted a successful effort to reform the Judgment. He argued that even under the most liberal interpretation of the Information, since it contains no allegation of bodily injury, it cannot allege any offense under K.S.A. §21-3414 other than that of K.S.A. §21-3414(a)(1)(C), also a level 7 offense, which requires only "physical contact," i.e. touching. As a result, the Judgment was reformed *nunc pro tunc*. Since this action was based on the infirmity in the initial Judgment, rather then a rehabilitative statute, or for equitable reasons, it is cognizable under *Matter of Pickering,* 23 I&N Dec. 621 (BIA 2003). *See also, Matter of Song,* 23 I&N Dec. 173 (BIA 2001) (giving effect to a judgment re-sentencing an immigrant from one year to 360 days, as removing offense from category of "aggravated felony.").

Mr. Larin therefore filed a timely motion to reopen and terminate proceedings, noting, *inter alia,* that because the determination of whether the offense is a crime of violence is a categorical one, the finding that it was committed with a firearm, as a "special rule applicable to sentence," does not change the character of the offense. *See, U.S. v. Gracia-Cantu,* 302 F.3d 308, 312 (5th Cir. 2002), quoting *U.S. v. Chapa-Garza,* 243 F.3d 921 (5th Cir. 2001):

> The words "by its nature" [in 18 U.S.C. §§ 16(b)] require us to employ a categorical approach when determining whether an offense is a crime of violence. This means that the particular facts of the defendant's prior

2

conviction do not matter, e.g. [,] whether the defendant actually did use force against the person or property of another to commit the offense. The proper inquiry is whether a particular defined offense, in the abstract, is a crime of violence under 18 U.S.C. §§ 16(b).

Prior counsel had "admitted" that the conviction was under K.S.A. §21-3414(a)(1)(A), a level 4 offense. To ensure that he would not be bound by the erroneous "admission" of counsel, Mr. Larin argued ineffective assistance of counsel, and fulfilled the criteria of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988). On May 20, 2003, he wrote prior counsel, asking for an explanation of his conduct. A grievance was filed with the State Bar of Kansas, where Mr. Phillips is licensed. On June 9, 2003, counsel advised the Board that Mr. Phillips had not responded to the letter. *See,* Exhibit "B" In Support of Brief On Appeal, a copy of which is attached hereto. [2]   A declaration under penalty of perjury was also submitted, in which Mr. Larin stated: [3]

> I, Juan Larin-Ulloa, hereby state under penalty of perjury that I hired attorney James Phillips, Jr., to represent me in my removal proceedings. I paid a substantial amount for this representation, to wit, at least $3,000.
>
> I fully cooperated with attorney Phillips, in terms of providing all the information he requested, and relied on him to exercise his skills in such matters as pleading to the allegations of the Notice to Appear. I had no

---

[2]  No further advisal of his failure to respond was submitted. Counsel considered that twenty days was a reasonable period of time to await a response. Since she would have had an ethical duty to notify the BIA if he responded later, she considered it unnecessary to file periodic statements, asserting that he had not done so. To the extent the Board wishes a more explicit statement, counsel would hereby declare under penalty of perjury that Mr. Phillips never responded to her letter of May 20, 2003 about the case.

[3]   *See,* Exhibit A, attached to Respondent's Brief on Appeal.

3

independent knowledge of Kansas Statutes Annotated §31-
3414, and insufficient English or legal skills to know
whether the Complaint/Information in my criminal case was
so defective that it could be challenged in Immigration
Court.  These were matters entrusted to the attorney.

The foregoing was read and translated into Spanish by
Attorney Lisa Brodyaga on May 22, 2003, and is true and
correct to the best of my knowledge and belief.

On January 2, 2004, the Board denied Mr. Larin's motion to reopen.
The reasons given for denying the motion were as follows:

A.  Ineffective assistance of counsel does not provide a basis for
reopening because:

> 1.   The letter to prior counsel was submitted to the
> Board before Mr. Phillips had an opportunity to respond;
> 2.   The declaration of Mr. Larin "fails to set forth in
> detail the agreement that was entered into with counsel
> with respect to the actions to be taken and what
> representation counsel did or did not make to the
> respondent;" and
> 3.   Mr. Larin was not "prejudiced" by prior counsel's
> admission of the conviction, because the conviction was
> proven by independent evidence, and under *Zinnanti v.
> INS*, 651 F.2d 420 (5th Cir. 1981), the BIA cannot
> "adjudicate the validity of state convictions."

B.  The Board also denied reopening on the basis that the reformed
Judgment constituted new evidence, on the grounds that because the
reformed judgment "clearly reflects that the respondent committed
the aggravated battery with a firearm," the conviction had to have
been under the subsection of K.S.A. 21-3414(a)(1)(C) which
criminalizes "physical contact" when done in a "rude, insulting or
angry manner with a deadly weapon," rather than the subsection
which penalizes "physical contact" when done "in any manner whereby
great bodily harm, disfigurement or death can be inflicted."

As will be demonstrated below, this is incorrect.

4

## II.  ISSUES PRESENTED

A.   AS THE BOARD CONCLUDED IN ITS DECISION OF AUGUST 20, 2003, THE INFORMATION SHOWS THAT MR. LARIN WAS CONVICTED UNDER A SUBSECTION OF K.S.A. §21-3414(a)(1) RELATING TO CONDUCT COMMITTED "IN ANY MANNER WHEREBY GREAT BODILY HARM, DISFIGUREMENT OR DEATH CAN BE INFLICTED," WHICH FACT WAS NOT AFFECTED BY THE REFORMED JUDGMENT.

B. ALTHOUGH NOT PERTINENT HEREIN, MR. LARIN FULLY COMPLIED WITH THE CRITERIA FOR SHOWING INEFFECTIVE ASSISTANCE OF COUNSEL.

## III.  ARGUMENT

**A.   AS THE BOARD CONCLUDED IN ITS DECISION OF AUGUST 20, 2003, THE INFORMATION SHOWS THAT MR. LARIN WAS CONVICTED UNDER A SUBSECTION OF K.S.A. §21-3414(a)(1) RELATING TO CONDUCT COMMITTED "IN ANY MANNER WHEREBY GREAT BODILY HARM, DISFIGUREMENT OR DEATH CAN BE INFLICTED," WHICH FACT WAS NOT AFFECTED BY THE REFORMED JUDGMENT.**

In his initial appeal, Mr. Larin urged that the conviction was void on its face, [4] because the Information was so defective that it failed to state an offense under any subsection of §21-3414. As he noted, the redacted Complaint/Information, reads in its entirety:

> **COMES NOW** MARGARET A. MCINTIRE, a duly appointed, qualified and acting Assistant District Attorney of the 18th Judicial District of the State of Kansas, and for

---

[4] Contrary to the Board's recent assertion, *Zinnanti v. INS,* 651 F.2d 420 (5th Cir. 1981) does not preclude the Board from making a determination that a conviction is "void on its face." That case involved a claim of ineffective assistance of counsel, and would have required the Board to go behind the documents to "adjudicate" the invalidity of the conviction, something which the Board, and the courts, have consistently held to be impermissible. This is the very distinction drawn by Mr. Larin in his appeal. *See, Matter of Rodriguez-Carrillo,* 22 I&N Dec. 1031 (BIA 1999)(emphasis added):

> [I]t is clear that an Immigration Judge and the Board cannot entertain a collateral attack on a judgment of conviction, **unless that judgment is void on its face,** and **cannot go behind the judicial record** to determine the guilt or innocence of an alien. See Matter of Madrigal, Interim Decision 3274 (BIA 1996).

and on behalf of said State gives the court to understand
and be informed that in the County of Sedgwick, and State
of Kansas, and on or about the 22nd day of August, 1999,
A.D., one JUAN * LARIN did then and there unlawfully,
intentionally, in a manner whereby [he] could have [?]
cause great bodily harm or disfigurement to another
person, to wit, Isarael Rosas;

Contrary to Kansas Statutes Annotated 21-3414(a)(1)(A),
Aggravated Battery, Severity Level 7, Person Felony.

Because the Information contains no verb, and fails to state *what*
he alleged did in a manner "whereby [he] could have [?] cause great
bodily harm or disfigurement to another person," he argued that the
conviction was void on its face under Kansas law.    In the
alternative, he urged that under the most liberal possible
interpretation of the Information, it could only charge an offense
under that portion of K.S.A. §21-3414(a)(1)(C), criminalizing
"physical contact" when accomplished "in any manner whereby great
bodily harm, disfigurement or death can be inflicted."    This
subsection, he argued, was not a crime of violence, because the
Fifth Circuit has held that the phrase "use of force" in 18 U.S.C.
§16 contemplates "violent force," not mere contact.    *U.S. v.
Rodriguez-Guzman*, 56 F.3d 18,20 n.8 (5th Cir. 1995).

In rejecting this argument, the Board asserted as follows:

[W]e cannot conclude that the respondent's conviction is
"void on its face."  In particular, we point out that the
information charges the respondent with having
"unlawfully, intentionally, in a manner whereby [he]
could have ... cause[d] great bodily harm, disfigurement
or death can be inflicted" (Exh. 2 at 13).  *See Kansas v.
Long*, 58 P.3d 706 (Kan. 2002)(finding information
sufficient if it "substantially follows the language of
the statute or charges the offense in equivalent words or
words of same import").

6

The Board rejected Mr. Larin's alternative argument by referring to documents indicating that the conviction had been obtained under K.S.A. §21-3414(a)(1)(B), and ignoring the fact that the Information did not charge that he had caused "bodily injury."

In its decision of January 2, 2004, the BIA *completely* ignores the Information, and concludes that because the reformed Judgment "clearly reflects that the respondent committed the aggravated battery with a firearm," the conviction had to have been under the subsection of K.S.A. §21-3414(a)(1)(C) which criminalizes "physical contact" when done in a "rude, insulting or angry manner with a deadly weapon," rather than the subsection which penalizes "physical contact" when done "in any manner whereby great bodily harm, disfigurement or death can be inflicted."

This is patently untrue. There was a reformed Judgment, but no amended or superceding Information. As argued by Mr. Larin, an Information which does not allege bodily injury, cannot support a conviction under K.S.A. 21-3414(a)(1)(B). Hence the sentencing Court reformed the Judgement to conform to the Information, which, as the Board previously acknowledged, specifies that the conduct occurred "in a manner whereby [he] could have ... cause[d] great bodily harm, disfigurement or death can be inflicted."

As noted in Mr. Larin's motion to reopen, the mention of a firearm in the reformed Judgment was a *sentencing factor*. Notably, the original Judgment also noted that the offense was committed with a firearm. This does not, and cannot, override the specific language of the Information charging an offense under a different subsection. As the BIA previously recognized, *Kansas v. Long,* 58 P.3d 706 (Kan. 2002), holds an information to be sufficient if it "substantially follows the language of the statute or charges the offense in equivalent words or words of same import." An

7

.

Information which specifies that the battery occurred "in a manner whereby [he] could have ... cause[d] great bodily harm, disfigurement or death can be inflicted" neither "substantially follows the language of the statute [nor] charges the offense in equivalent words or words of same import" as that subsection of which criminalizes physical contact accomplished in a "rude, insulting or angry manner with a deadly weapon."

The determination of whether an offense is a crime of violence is a categorical one, under which the elements of the offense are determinative, not the specific conduct. *U.S. v. Gracia-Cantu, supra.* It is therefore irrelevant whether a weapon was involved. It was not *an element* of the offense, which would have to have been charged in the Information. As the Board previously recognized, he was not *charged* with any portion of K.S.A. 21-3414(a)(1) involving a battery done in a "rude, insulting or angry manner with a deadly weapon." And not having been charged with such conduct, it simply cannot be said that he was convicted of it. *Kansas v. Long, supra.*

## B. ALTHOUGH NOT PERTINENT HEREIN, MR. LARIN FULLY COMPLIED WITH THE CRITERIA FOR SHOWING INEFFECTIVE ASSISTANCE OF COUNSEL.

The BIA also appears to have misconstrued Mr. Larin's claim of ineffective assistance of counsel. He was not urging, as the Board seemed to understand, that proceedings should be reopened on the basis of ineffective assistance of counsel *per se.* Rather, he argued that he could not be bound by prior counsel's "admission" that he had been convicted under K.S.A. §21-3414(a)(1)(A), because counsel was "ineffective" in making that admission.

Furthermore, Mr. Larin *has* complied with the requirements of *Lozada.* The focus of his Declaration related to the specific error alleged. What other arrangements were, or were not made, is irrelevant. This is not a claim that counsel was ineffective for failing to file a brief on appeal. If so, he would have to specify

that there was a specific agreement as to how the appeal would be handled.    Similarly, if he were asserting that counsel was ineffective for not timely filing an application for relief, he would have to allege facts sufficient to determine that counsel had undertaken to do so, and provided the requisite documents, fees, etc.    But where, as here, the allegation is that counsel was negligent in examining the conviction documents, and made admissions that a competent attorney would not have made, [5] the purpose, and the requirements, of *Lozada* are fulfilled if the Declaration sets forth the facts pertinent to that claim.    As stated therein, 19 I&N Dec at 639 (emphasis added):

> A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent *attesting to the relevant facts*. **In the case before us,** that affidavit should include a statement that sets forth in detail the agreement that was entered into with former counsel with **respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard.**

Mr. Larin's Declaration did "attest[] to the relevant facts," which related solely to counsel's error in admitting that the conviction was under K.S.A. §21-3414(a)(1)(A).    This was clearly not the case, since that section is a level 4 offense, and the documents showed on their face that Mr. Larin was convicted of a level 7 offense. This is precisely the type of question that an immigrant entrusts to counsel.    Mr. Larin could not be expected to know that the Judgment was internally inconsistent, or that the Information did not state an offense, because it neither contained a verb, stating

---

[5] *See also, Paul v. INS,* 521 F.2d 194, 199 (5th Cir. 1975) ("A claim of the denial of due process because of ineffective assistance of counsel must allege sufficient facts to allow this court to infer that competent counsel would have acted otherwise.")

*what* he did "in a manner whereby [he] could have ... cause[d] great
bodily harm, disfigurement or death can be inflicted," nor alleged
that he had caused bodily injury, as would have been required under
either K.S.A. §21-3414(a)(1)(A) or K.S.A. §21-3414(a)(1)(B).

And the prejudice involved is simply Mr. Larin's concern that he
would not be able to show that the conviction was not under K.S.A.
§21-3414(a)(1)(A), because his counsel had "admitted" it.
Competent counsel would not have made such an "admission," because
it was not true.  And the sentencing Court has now reformed the
Judgment, *nunc pro tunc,* to show the statute under which Mr. Larin
was, in fact, convicted: K.S.A. §21-3414(a)(1)(C).  The Information
alleges that he did whatever he did "in a manner whereby [he] could
have ... cause[d] great bodily harm, disfigurement or death can be
inflicted," clearly this is the portion of §21-3414(a)(1)(C) under
which he was convicted, not that relating to physical contact done
in a "rude, insulting or angry manner with a deadly weapon."  The
Information contains no language which would support this charge.

Finally, the fact that the pleadings were filed shortly after the
letter was sent to prior counsel does not mean that he was not
given a chance to respond.  As previously noted, counsel filed a
statement 20 days later, advising the Board that no response had
been received.  In fact, no response was ever received.

*Lozada* was decided before time limits were placed on motions to
reopen.  Moreover, it involved failure to file a brief in support
of appeal: something that might have an "explanation," and with
respect to which it therefore makes sense to await a response
before making accusations which might turn out to be unfounded.
Here, the error was clear on the face of the record.  Particularly
when viewed in the context of the *reasons* given by prior counsel
for refusing to concede that the conviction was an aggravated

10

felony, (to wit, that it might prejudice a proposed application for TPS status: see attached), it is clear that there would, and *could* be no adequate explanation for the error.  Under the circumstances, to hold that the mere fact that Mr. Larin set forth the irrefutable allegations against prior counsel before he had an opportunity to respond to them was a failure to comply with *Lozada* would be to elevate form above substance, to a degree that reveals that the true purpose of doing so is simply to find some pretext for denying Mr. Larin's motion.  This would be fundamentally unfair.

Moreover, as previously explained, Mr. Larin's motion to reopen was not based on ineffective assistance of counsel, *per se*.  Rather, it rested on the new evidence obtained, to wit, the reformed Judgment, showing that, as previously argued, the conviction was not under K.S.A. §21-3414(a)(1)(B), but under a subsection of K.S.A. §21-3414(a)(1)(C) which is not a crime of violence, and therefore, not an aggravated felony under 8 U.S.C. §1101(a)(F).

Therefore, the Board's decision of January 2, 2004 should be reconsidered, the instant proceedings be reopened, and terminated.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing, with attachments, was mailed, first-class postage prepaid, to DHS District Counsel, P.O. Box 1711, Harlingen, Texas 78551, on January 12, 2004.

11

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BEFORE THE BOARD OF IMMIGRATION APPEALS


In re

JUAN LARIN-ULLOA
A92 800 131


EXHIBIT "B" IN SUPPORT OF
BRIEF ON APPEAL AND MOTION TO TERMINATE

In support of his showing that he has complied with *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1988), the undersigned would hereby advise the Board that prior counsel, James Phillips, Jr., has not responded to the letter which the undersigned sent to him on May 20, 2003, advising him of the allegations against him.


Respectfully Submitted,

Lisa S. Brodyaga, Attorney
REFUGIO DEL RIO GRANDE
17891 Landrum Park Road
San Benito, Texas 78586
(956) 421-3226
May 22, 2003


CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was mailed, first-class postage prepaid, to DHS District Counsel at P.O. Box 1711, Harlingen, Texas 78551, on June 9, 2003.

U.S. Department of Justice
Executive Office for Immigration Review
Immigration Court


Matter of                                    File No.:  A 92 800 131


                                   )
JUAN LARIN-ULLOA,                  )          IN REMOVAL PROCEEDINGS
                                   )
        Respondent                 )          Transcript of Hearing
                                   )


Before ELEAZAR TOVAR, Immigration Judge


Date: March 14, 2002                    Place: Los Fresnos, Texas


Transcribed by DEPOSITION SERVICES, INC. At Rockville, Maryland


Official Interpreter: Noelia Jenkins


Language: Spanish


Appearances:

        For the Immigration and      For the Respondent:
        Naturalization Service:

                                      James S. Phillips, Jr.,
                                 Esquire

bjs

1    JUDGE FOR THE RECORD

2           Today's date is March 14, 2002.  It's Immigration Judge

3    Eleazar Tovar in Los Fresnos, Texas presiding over the matter of

4    Juan Larin-Ulloa, file A 92 800 131.

5  · JUDGE TO MR. LARIN

6           Q.   Mr. Larin, what language do you understand and

7    speak the best, sir?

8           A.   Spanish.

9    JUDGE FOR THE RECORD

10          Therefore, we'll proceed with the benefit of the EOIR

11   Spanish interpreter.

12   JUDGE TO INTERPRETER

13          Q.   Whose name is?

14          A.   Noelia Jenkins.

15   JUDGE TO MR. PHILLIPS

16          Q.   Representing the respondent?

17          A.   James S. Phillips, Jr., for the respondent.

18   JUDGE TO INS ATTORNEY

19          Q.   And for the Service?

20          A.   (Indiscernible.)

21   JUDGE TO MR. PHILLIPS

22          Q.   Mr. Phillips, is the respondent ready to pled to

23   the charges on the Notice to Appear?

24          A.   He's ready to go ahead with this hearing, Your

25   Honor, yes.

A 92 800 131                    7                    March 14, 2002

ɔjs

1          Q.    How does he plead to the six factual allegations?

2    Let's go down --

3          A.    All right, as to number 1 that is agreed to.

4          Q.    He's not a citizen or national of the United

5    ⋅ States?

6          A.    Right.

7          Q.    He's a native of El Salvador, citizen of El

8    Salvador?

9          A.    Yes, that is admitted.

10         Q.    And did he entered the United States at or near El

11   Paso, Texas on or May 11, 1981?

12         A.    That is admitted.

13         Q.    At that time, is it true that he entered without

14   inspection?

15         A.    That is admitted.

16         Q.    And number 5, is it true that he was adjusted to a

17   lawful permanent resident on November 20, 1989, under 245(a) of

18   the Act?

19         A.    Yes, that is admitted.

20         Q.    Okay.  And was he on March 20, 2000, convicted in

21   the District Court of Sedgwick County at Wichita, Kansas for the

22   offense of aggravated battery in violation of KSA21-3414A1A for

23   which a 12-month sentence was imposed?

24         A.    That is admitted.

25         Q.    Okay.  And does respondent concede that pursuant

A 92 800 131                        8                    March 14, 2002

bjs

1      to Section to 237(a)(2)(A)(iii) of the Immigration and

2      Nationality Act, as amended, in that at any time after admission

3      he's been convicted of an aggravated felony as defined in Section

4      101(a)(43)(F) of the Act and, therefore, he's subject to removal?

5              A.    He's going to deny that, Your Honor.

6              Q.    Okay.  The Service has submitted to the Court

7      conviction documents, and those are marked as Exhibit 2.  Any

8      objection to the conviction documents, Mr. --

9              A.    I have reviewed it, Your Honor, it appears to be a

10     certified copy --

11             Q.    Yes.  And --

12             A.    -- (indiscernible).

13             Q.    And I paginated them at the last hearing, 1

14     through 15, any objection to the documents in Exhibit 2?

15             A.    What's that, Your Honor?

16             Q.    Any objection to its admission?

17             A.    No objection.

18     JUDGE FOR THE RECORD

19             So Exhibit 2, pages 1 through 15, are hereby admitted

20     into the record.

21     JUDGE TO MR. PHILLIPS

22             Q.    Now the issue is is this conviction an aggravated

23     felony as respondent is denying that it's an aggravated felony.

24     And the basis for that Mr. --

25             A.    Well, our argument, Your Honor, is that, one

A 92 800 131                    9                    March 14, 2002

ɔjs

1    reason we don't want to make this admission is because, one

2    argument we want to make is that he may be eligible for TPS,

3    temporary protective status, since he's from El Salvador.

4               Q.   Presently he's a permanent resident.

5               A.   Yes, I understand.  But I mean, he also may be

6    eligible for TPS even if he's deportable.  That's our position.

7               Q.   Okay.

8               A.   Even if he would be deported or removed or have a

9    removal order --

10              A.   Okay.

11              Q.   -- that he's eligible for TPS.  Now we recognize

12   as the grant of TPS refers to felonies, it applies the asylum

13   standards for pretty serious exception, pretty serious offense,

14   and it's our position that whether this was constituted pretty

15   serious offense maybe depend on the particular facts because this

16   was a sentence less than five years.  He was given --

17              A.   (Indiscernible.)  Right now what we're dealing

18   with, I understand you're talking about relief, and right now

19   we're --

20              Q.   Well --

21              A.   I'm putting the cart before the horse, we haven't

22   gotten to whether or not he's subject to removal.

23              Q.   Well, I understand.  I'm just arguing that

24   although the felony itself may be evidence of a pretty serious

25   crime --

A 92 800 131                    10                  March 14, 2002

bjs

1          A.    Well, right now what I'm dealing with, later on we

2    can deal with whether or not it's particularly serious crime or

3    not.  Right now what we're dealing with is is this or not an

4    aggravated felony and does it fit within the definition of an

5    aggravated felony.  I believe the Service is proceeding under

6    101(a)(43)(F) which is --

7    JUDGE TO INS ATTORNEY

8          Q.    Is that a crime of violence, Ms. --

9          A.    I believe so, Your Honor.

10   JUDGE TO MR. PHILLIPS

11         Q.    It's a crime of violence.  So they're proceeding

12   under a crime of violence, aggravated battery, is that a crime of

13   violence because it fits within that category.  And so,

14   therefore, I was asking what's your argument as to why it's not a

15   crime of violence under 101(a)(43)(F)?

16         A.    Well, as I say, I don't really want to make that

17   admission because I'm not sure he would be eligible to make that

18   argument for TPS if he makes that admission.

19   JUDGE FOR THE RECORD

20         Hold on, let me go get my (indiscernible).  Off the

21   record.

22                         (OFF THE RECORD)

23                         (ON THE RECORD)

24   JUDGE FOR THE RECORD

25         Back on the record.

A 92 800 131                    11              March 14, 2002

bjs

1          The 101(a)(43)(F) is a crime of violence

2     (indiscernible) is it or is it not a crime of violence then.  I

3     think based on what I'm reading here that the documents submitted

4     which are Exhibit 2, unless there's something that I'm seeing,

5     I'm going to find that it is a crime of violence, Mr. Phillips.

6     MR. PHILLIPS TO JUDGE

7          Q.   All right.

8          A.   So, therefore --

9     JUDGE FOR THE RECORD

10         Off the record.

11                    (OFF THE RECORD)

12                    (ON THE RECORD)

13    JUDGE FOR THE RECORD

14         Based on Exhibit 2, the Court finds the respondent is

15    subject to removal as the respondent has been convicted with

16    aggravated battery which is a crime of violence.

17    JUDGE TO MR. PHILLIPS

18         Q.   Does your client wish to designate a country for

19    removal in case it becomes necessary?

20         A.   He'll decline, Your Honor.

21         Q.   Okay.

22    JUDGE FOR THE RECORD

23         Therefore, the Court will designate El Salvador if

24    removal is necessary.

25    JUDGE TO MR. PHILLIPS

A 92 800 131                    12                    March 14, 2002